UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 3:21CR87(VAB) |
| v. | |
| DENNIS A. BRADLEY, JR., and<br>JESSICA MARTINEZ | May 16, 2022 |

## **GOVERNMENT'S TRIAL MEMORANDUM**

The Government submits this trial memorandum pursuant to the Court's May 2, 2022 order, to summarize its anticipated case-in-chief evidence, and alert the Court to certain legal and evidentiary issues.

### I. Procedural Background and Anticipated Trial Length

On May 24, 2021, a grand jury returned an indictment charging both Dennis A. Bradley, Jr., and Jessica Martinez with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1) and five counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 2-6), and charging Martinez alone with one count of making false statements in violation of 18 U.S.C. § 1001(a)(2) (Count 7) and one count of making a false declaration before the grand jury in violation of 18 U.S.C. § 1623 (Count 8).

On May 4, 2022, a grand jury returned a superseding indictment, substantively identical to the original indictment, except in two respects: first, the superseding indictment corrects four words in the charging language of Counts Three and Four (*i.e.*, "electronically submitted to SEEC via eCRIS" now reads "electronically posted on eCRIS"); and second, the superseding indictment refers to co-conspirator Tina Manus by name (since she pled guilty on October 19, 2021 to conspiracy to commit wire fraud).

Jury selection is scheduled for May 31, 2022, with evidence to begin thereafter. Building

in reasonable time for cross examination, the Government currently estimates that its case-in-chief will last approximately 10 trial days.

## II. Evidence to be Presented at Trial

The Government's evidence will prove that, in connection with Bradley's 2018 State Senate campaign, he and Martinez conspired and entered into a scheme to dupe the State Election Enforcement Commission ("SEEC") into awarding his campaign $179,850 in undeserved Citizens' Election Program ("CEP") grants by making material misrepresentations and omissions to hide prohibited campaign activities. The Government will also prove that, in an attempt to conceal their prior misstatements and omissions, in 2020, Martinez made false statements to the Federal Bureau of Investigation and the investigating grand jury.

The Government expects that its case-in-chief will include testimony by Bradley campaign consultants and volunteers, campaign donors, employees of Bradley's law firm, SEEC employees, FBI agents and analysts, the grand jury court reporter, and at least one of Bradley and Martinez's co-conspirators. The Government will also introduce recordings of the March 15, 2018 campaign launch party about which Bradley and Martinez lied to SEEC, electronic communications among the campaign staff (including Bradley and Martinez) before and after that event, Bradley's campaign filings, Bradley's and his campaign's bank records, Bradley's August 2018 false letter to SEEC, a recording of Martinez's September 2018 false oral statements to SEEC, a recording of Bradley's false October 2018 false oral statements to SEEC, Martinez's 2020 false statements to the FBI and Grand Jury, and her 2020 confession. Taken together, this evidence will prove beyond a reasonable doubt that Bradley and Martinez engaged in a conspiracy and scheme to commit wire fraud, which then led Martinez to lie to the FBI and the Grand Jury.

### A. The 2018 Conspiracy and Scheme to Defraud

The evidence will show beyond a reasonable doubt that from March to October 2018,

Bradley and Martinez conspired and schemed to fraudulently obtain public campaign finance grants from the State of Connecticut. The defendants executed this scheme by making false statements and omissions to SEEC to conceal that Bradley had violated the CEP rules and requirements for candidates.

To summarize: Bradley held a campaign launch party on March 15, 2018 at Dolphin's Cove restaurant in Bridgeport. In advance, Bradley widely promoted the fact that he would use this party to announce his candidacy for State Senate. During the party, Bradley announced his candidacy and had campaign staffers collect donations from voters. Bradley knew that this party violated the CEP rules because it cost well in excess of the $2,000 limit on a candidate's use of personal funds. In order to remain eligible for nearly $180,000 in campaign grants from SEEC, Bradley and Martinez took various steps to conceal this violation: first, co-conspirator Tina Manus[1] altered the dates on donor's contribution forms; second, Bradley and Martinez had the campaign submit false filings to SEEC omitting the launch party's expenses or campaign contributions; and third, both Bradley and Martinez eventually lied directly to SEEC. The effect was to fool SEEC, which awarded Bradley a $84,140 primary grant before discovering the fraud and disqualifying his campaign from the CEP.

B. **Martinez's 2020 criminal cover-up**

Having lied to SEEC, Martinez told similar lies in the federal investigation, first to FBI agents in March 2020 and later to the Grand Jury in September 2020. Afterwards, Martinez and her attorney sat for two FBI interviews (without proffer protection), during which she made various admissions. As is relevant to the charged conspiracy and fraud (Counts 1-6), Martinez admitted that the Dolphin's Cove launch party was a campaign event, that money had been collected during

---

[1] On October 19, 2021, Manus pled guilty to conspiracy to commit wire fraud and entered into a cooperation agreement in open court. *United States v. Manus*, 3:21CR174 (VAB), Dkt. #6.

it, that she had counted that money at Dolphin's Cove, that those contributions were concealed from SEEC, that she knew she had broken the rules, and that she had repeatedly lied to SEEC because she feared the consequences. With respect to the § 1001 charge (Count 7), Martinez admitted that she had lied to the FBI. And with respect to the charged perjury (Count 8), Martinez admitted that she had repeatedly lied to the Grand Jury knowing her testimony to be false.

### III. Pretrial Conference Issues

The Government believes the Court should be aware of and, where appropriate, resolve the following issues before trial.[2]

#### A. Motion for Opening Statements

The Government moves for opening statements of no more than 20 minutes for each party.

As the Court knows, whether to permit "[a]n opening statement is a matter for the discretion of the court." *United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 352 (D. Conn 1990); *see also United States v. Salovitz*, 701 F.2d 17, 20 (2d Cir. 1983). Here, as in any trial, opening statements would provide the jury with a "table of contents" or a "road map" that succinctly sets forth each party's view of the evidence, the witnesses to be called, the charges against the defendants, and the defenses (if any) that they should keep in mind throughout the presentation of the evidence. *See United States v. Dinitz*, 424 U.S. 600, 612 (1976) (purposes of an opening statement are "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole . . . .") (Burger, C.J., concurring).

---

[2] The defendants have declined to identify any witnesses other than their clients, and have likewise not provided exhibit lists. Thus, the Government is at a disadvantage in identifying potential motions *in limine* and objections at this stage that may save time during trial. While it is certainly the defendants' prerogative to rely on the presumption of innocence and test the Government's case, to the extent that the defendants do offer witnesses and exhibits at trial, the Government may need to seek in-trial delays to address objections to testimony and/or exhibits from the defendants.

Here, opening statements would be particularly useful to the jury and to an efficient trial. This is a relatively long trial—including the anticipated trial days for the Government (approximately 10) and defense (as many as 3), evidence may last more than two weeks. The factual narrative is a lengthy one, and most witnesses will fit into one or more pieces of that narrative. There are several different types of evidence (recordings, electronic evidence, state records, business records, witness testimony), some of which will need technical witnesses to introduce. There are two defendants here, each who played a distinct role in the charged offenses, and both defendants are not charged in all counts. Launching directly into the narrative of this case with no roadmap of the evidence to come would present an entirely unnecessary challenge for the jury in understanding the importance of each piece of evidence from the beginning of the trial. A carefully delivered, non-argumentative opening would allow the parties to provide an overview of the anticipated evidence, the charges, and how the evidence will fit into the different aspects of proving or defending the case. It would increase the jury's understanding of the evidence, and better the likelihood that the jury will appreciate the witness's testimony as it is given (rather than requiring time-consuming readback later on). While it may be sufficient in a shorter or less complex case, simply reading the indictment or summarizing the allegations for the jury is an inadequate substitute for opening statements here. It addresses only the charges against the defendants, but not the evidence that will be the jury's focus at trial.

Moreover, both parties have experienced trial counsel who are capable of abiding by the limited, non-argumentative, purposes of an opening statement.

Accordingly, the Government requests that the Court exercise its discretion to permit the parties brief opening statements.

  **B.** **Summary Charts**

The Government is likely to seek admission of summary charts.

"The Second Circuit has long approved the use of summary charts for assistance in complex matters." *United States v. Jasper*, 2003 WL 221740 (S.D.N.Y. 2003). Summary charts, of the type that may be offered by the Government, are admissible at trial pursuant to Rule 1006, which provides:

> [t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Thus, Rule 1006 allows a party to "prove the contents of voluminous writing that cannot be examined in court without causing inconvenience and waste of time by presenting evidence of their contents in abbreviated form." 6 Weinstein's Federal Evidence § 1006.02 (2021); *Fagiola v. National Gypsum Co. AC & S, Inc.*, 906 F.2d 53, 57 (2d Cir. 1990) (affirming the admission of a summary chart which "contained totals derived through the simple addition of sales . . . . used to avoid forcing the jury to examine boxes of documents in order to make simple calculations"). The proponent of a summary chart need not demonstrate that it would be impossible for the jury to examine all of the underlying records, but only that such in-court examination would be inconvenient. *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988); *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991). As such, the materials "underlying the Rule 1006 summaries need not be admitted into evidence." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 7 n.14 (1st Cir. 1996); *citing Bakker*, 925 F.2d at 736-37.

Although a Rule 1006 summary must fairly and accurately represent the data that it purports to summarize, it need not address all of the records that bear on the matter at issue and may summarize a specific portion of those records to demonstrate a particular relevant fact. *Fagiola*, 906 F.2d at 57 (affirming a summary of incomplete business sales records of asbestos

products to demonstrate low absolute volume); *Bakker*, 925 F.2d at 737 (rejecting the claim that composite tape was not fairly representative: "Once the [district] court properly determined that the tapes were admissible, Bakker had ample opportunity to demonstrate to the jury the proper weight that it should attach to the composites.").

In affirming the admission of a summary chart of phone calls and text messages, the Second Circuit has held that "even eight pages of phone bills can contain hundreds of calls and text messages, and this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary." *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020). Moreover, such a summary chart "need not include all the information that appears on a phone bill, such as the duration of each call, if particular kinds of information are not relevant and are either uniformly included or uniformly excluded." *Id*. The court specifically affirmed the use of a summary chart that included only the calls of selected individuals, and permitted the Government to include other information (*e.g.*, the names of the callers) not in the phone records but which had been separately proven. *Id*.

### C. Defendant's Hearsay

Defendants often attempt to improperly introduce their own self-serving hearsay. Consistent with Rules 801 and 803, the Court should not permit Bradley or Martinez to introduce any of their own prior statements—including through witness testimony, group chats, text messages, and recorded or transcribed testimony—because it is inadmissible hearsay not subject to an exception.

The Government is entitled to introduce each defendant's own prior statements as evidence against the speaker under Rule 801 as statements made in an individual capacity offered against an opposing party. *See* Fed. R. Evid. 801(d)(2)(A). Moreover, the Government may offer certain of Bradley's 2018 statements against Martinez, and *vice versa*, as the statement of a party's co-

conspirator made during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). In both instances, the Government may also introduce surrounding or responsive statements because they provide context for the defendants' or co-conspirators' statements and are not offered for the truth of the matter asserted. *See United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (non-witnesses' emails "provide context for defendants' messages sent in response to them, messages whose admissibility is not contested. *See* Fed. R. Evid. 801(d)(2)."); *United States v. Paulino*, 445 F.3d 211, 216 (2d Cir. 2006) ("It has long been the rule that '[s]o long as…statements are not presented for the truth of the matter asserted, but only to establish a context…, the defendant's Sixth Amendment rights are not transgressed.'") (*quoting United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990)).

In contrast, a defendant may not introduce her own out-of-court statements. *See United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are 'hearsay, and . . . not admissible.'") (citation omitted). Rule 801(d)(2)(A) excludes an opposing party's statement from the definition of hearsay only where it is offered against that party. 5 Weinstein's Federal Evidence § 801.3 ("To be admissible under this rule, the party's statements must be offered against that party. A party cannot use this provision to offer his or her own statements into evidence."). Thus, allowing Bradley and Martinez to introduce their own prior statements through witnesses or exhibits would provide an end-run around the adversarial process by allowing each an opportunity to "testify" without being subject to "the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine." *Williamson v. United States*, 512 U.S. 594, 598 (1994).

Accordingly, the Court should preclude the defendants from offering their own out-of-

court statements.

### D. Request That the Court Distribute the Indictment with Limiting Instructions

The Government respectfully requests that the Court distribute copies of the Indictment to jurors for reference during their deliberations, with limiting instructions. An appropriate limiting instruction charging the jury that the Indictment lacks any evidentiary value would minimize the risk of prejudice from allowing the jury to review the Government's accusations against each defendant. *United States v. Esso,* 684 F.3d 347, 350-51 (2d Cir. 2012) (Second Circuit has "long recognized" discretionary authority of trial courts to "permit[ ] the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment [is] not to be considered evidence." (internal quotation marks omitted)).

### E. Social Media Review

If necessary, the Government will call a witness to testify about information obtained by the FBI from the defendants' or other witnesses' social media accounts. We anticipate that we would call FBI Staff Operations Specialist Kristen Light and/or Special Agent Paul Takla to testify that they captured certain data from social media accounts such as Facebook and prepared the report on this subject that was previously produced to the defense.

## IV. Other Submissions

In accordance with the Court's May 2, 2022 order, the Government submits the following attached documents:

1. proposed *voir dire* questions;
2. proposed jury instructions;
3. proposed verdict form;

4. current exhibit list.[3]

By agreement of the parties, the Government has provided its witness list to the defendants by letter, which the Government will submit to chambers upon the Court's request.

**V.     Conclusion**

The Government respectfully reserves the right to raise and respond to any additional issues as they arise.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov
DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv02874
david.novick@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

---

[3] The defendants each plan to submit their own objections to the Government's exhibits.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY