### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| |
|---|
| UNITED STATES OF AMERICA,<br>       *Plaintiff*,<br><br>       v.<br><br>DENNIS A. BRADLEY, JR., and JESSICA<br>MARTINEZ,<br>       *Defendants.* |

No. 3:21-cr-00087 (VAB)

### RULING AND ORDER ON MOTIONS *IN LIMINE*

Following an indictment, Dennis A. Bradley and Jessica Martinez ("Defendants") have been charged with wire fraud and conspiracy to commit wire fraud, and, with respect to Ms. Martinez, false statements and false declaration before the grand jury, arising from Defendants' alleged scheme to defraud the Connecticut State Election Enforcement Commission ("SEEC"), allegedly by making misrepresentations concerning Mr. Bradley's compliance with state election law and regulations. *See* Superseding Indictment, ECF No. 50 (May 4, 2022) ("Superseding Indictment").

On May 16, 2022, Mr. Bradley and Ms. Martinez filed motions *in limine* seeking to exclude any testimony or exhibits regarding the meaning and interpretation of Connecticut election statutes and regulations and their applicability to the facts of this case. *See* Def. Dennis Bradley's Mot. in Limine to Exclude Evid. Regarding Connecticut Law, ECF No. 61 (May 16, 2022) ("Bradley Mot. *in Limine* Re: Connecticut Law"); Mot. in Limine to Preclude Government's SEEC Witnesses From Offering Legal Opinions and Legal Conclusions, ECF No. 67 (May 16, 2022) ("Martinez Mot. *in Limine* Re: Connecticut Law").

Mr. Bradley also has moved *in limine* to exclude testimony regarding SEEC's factual and legal bases for denying his general grant application to SEEC. *See* Def. Dennis Bradley's Mot. in

1

Limine to Exclude Testimony Regarding SEEC's Investigation and Conclusions, ECF No. 62 (May 16, 2022) ("Mot. *in Limine* Re: SEEC").

Ms. Martinez separately has filed motions *in limine* to exclude: (1) certain text messages that reference "Jessica Campaign," *see* Jessica Martinez's Mot. *in Limine* [to] Exclude Test. and[/]or Any Reference to "Jessica Campaign" in Text Messages, ECF No. 63 (May 16, 2022) ("Mot. *in Limine* Re: Text Messages"); (2) a blog post purportedly about the Bradley campaign by Leonard Grimaldi, *see* Jessica Martinez's Mot. in Limine to Exclude Blog Post, ECF No. 68 (May 16, 2022) ("Mot. *in Limine* Re: Blog Post"); and (3) certain Facebook posts allegedly posted by Ms. Martinez, *see* Mot. in Limine to Exclude Specific Government Exs., ECF No. 71 (May 16, 2022) ("Mot. *in Limine* Re: Facebook Posts").

In addition, Ms. Martinez has moved *in limine* to exclude the nature of her previously resolved court cases. *See* Mot. in Limine to Exclude the Government from Disclosing the Nature of Def.'s Resolved Ct. Cases, ECF No. 70 (May 16, 2022) ("Mot. *in Limine* Re: Court Cases").

For the following reasons, Defendants' motions *in limine* to exclude any testimony or exhibits regarding the meaning and interpretation of Connecticut election law and regulations **[ECF Nos. 61 and 67]** are **GRANTED in part** and **DENIED in part**.

Mr. Bradley's motion *in limine* to exclude testimony regarding SEEC's factual and legal bases for denying his grant application **[ECF No. 62]** is **GRANTED in part** and **DENIED in part**.

Ms. Martinez's motion *in limine* to exclude text messages that refer to "Jessica Campaign" **[ECF No. 63]** is **DENIED as moot**, and the motions *in limine* to exclude the blog post by Leonard Grimaldi **[ECF No. 68]** and Facebook posts allegedly attributed to her **[ECF**

**No. 71]** are **DENIED**, although their admission is contingent on the proper evidentiary foundation being laid by appropriate witnesses.

Ms. Martinez's motion *in limine* to exclude the nature of her prior resolved court cases **[ECF No. 70]** is **DENIED as moot**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural history of the case, and only includes events relevant to the motions *in limine*. *See* Ruling and Order on Mot. to Sever and Mot. for Bill of Particulars, ECF No. 101 (May 26, 2022).

On May 16, 2022, Mr. Bradley and Ms. Martinez filed motions *in limine* seeking to exclude any testimony or exhibits regarding the meaning and interpretation of the Connecticut election statutes and regulations and their applicability to the facts of this case. *See* Bradley Mot. *in Limine* Re: Connecticut Law; Martinez Mot. *in Limine* Re: Connecticut Law. In response, on May 20, 2022, the Government filed a memorandum in opposition to the motions. *See* Government's Omnibus Opp'n to Defs.' Mots. *in Limine* to Exclude Evid. Regarding Connecticut Law, ECF No. 80 (May 20, 2022) ("Opp'n to Mots. *in Limine* Re: Connecticut Law").

On May 16, 2022, Mr. Bradley also moved *in limine* to exclude testimony regarding SEEC's factual and legal bases for denying his application for a general grant from the Citizens' Election Program ("CEP"). *See* Mot. *in Limine* Re: SEEC. The Government filed a response to the motion on May 20, 2022. Government's Opp'n to Def. Dennis Bradley's Mot. in Limine to Exclude Test. Regarding SEEC's Investigation and Conclusions, ECF No. 81 (May 20, 2022) ("Opp'n to Mot. *in Limine* Re: SEEC").

On May 16, 2022, Ms. Martinez moved *in limine* to exclude certain text messages that referred to her as "Jessica Campaign." *See* Mot. *in Limine* Re: Text Messages. The Government opposed the motion on May 20, 2022. Government's Opp'n to Def. Jessica Martinez's Mot. in Limine to Exclude Test. and/or Any Reference to "Jessica Campaign" in Text Messages, ECF No. 82 (May 20, 2022) ("Opp'n to Mot. *in Limine* Re: Text Messages").

Ms. Martinez also moved *in limine* to exclude certain Facebook posts allegedly attributed to her, *see* Mot. *in Limine* Re: Facebook Posts, as well as a blog post purportedly about the Bradley campaign by Mr. Grimaldi, *see* Mot. *in Limine* Re: Blog Post. In response, the Government filed memoranda in opposition to the motions on May 20, 2022. *See* Government's Opp'n to Def. Jessica Martinez's Mot. in Limine to Exclude Specific Government Exs., ECF No. 85 (May 20, 2022) ("Opp'n to Mot. *in Limine* Re: Facebook Posts"); Government's Opp'n to Def. Jessica Martinez's Mot. *in Limine* to Exclude "Blog Posts," ECF No. 83 (May 20, 2022) ("Opp'n to Mot. *in Limine* Re: Blog Post").

On May 16, 2022, Ms. Martinez further moved to exclude the nature of her resolved domestic violence court cases. *See* Mot. *in Limine* Re: Court Cases. The Government filed a response to the motion on May 20, 2022. *See* Government's Resp. to Def. Jessica Martinez's Mot. in Limine to Exclude the Government from Disclosing the Nature of Def.'s Resolved Ct. Cases, ECF No. 84 (May 20, 2022) ("Resp. to Mot. *in Limine* Re: Court Cases").

On May 25, 2022, the Court held a final pre-trial conference with the parties, during which the parties addressed, *inter alia*, the pending motions *in limine*. *See* Min. Entry, ECF No. 93 (May 25, 2022).

## II.      STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial

on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469

U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's

inherent authority to manage the course of its trials encompasses the right to rule on motions *in*

*limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)

(internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly

inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955

(VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks

omitted). The court also retains discretion to reserve judgment on some or all motions *in limine*

until trial so that the motions are placed in the appropriate factual context. *See In re Methyl*

*Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see*

*also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 286–

87 (S.D.N.Y. 1996).

## III.     DISCUSSION

### A.   Motion *in Limine* to Exclude Evidence Regarding SEEC Conclusions [ECF No. 62]

"Witnesses may not present testimony in the form of legal conclusions." *Roguz v. Walsh*,

No. 09-1052 (TLM), 2013 WL 1498126, at *9 (D. Conn. Apr. 5, 2013) (internal quotation marks

omitted) (quoting *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010)). "This rule

applies to both expert and lay witnesses, and prohibits explicit legal conclusions and any

testimony that implicitly communicates a legal standard to the jury." *Id.* (internal citation

omitted) (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)).

In addition, all testimony "is subject to the general balancing rule of [Federal Rule of Evidence] 403, which provides that 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Cameron*, 598 F.3d at 62 (quoting Fed. R. Evid. 403)).

Mr. Bradley moves *in limine* to exclude any testimony or exhibits "pertaining to SEEC's conclusions with respect to its denial of Mr. Bradley's application for a general-election grant" from the CEP. Mot. *in Limine* Re: SEEC at 8. Specifically, Mr. Bradley "anticipates that the government will . . . elicit testimony—and/or introduce exhibits—regarding SEEC's factual conclusions and legal reasons for denying Mr. Bradley's application," which Mr. Bradley argues "will necessarily require SEEC [w]itnesses to testify about factual and legal determinations made by SEEC as to whether the Bradley campaign's financial disclosures violated Connecticut law." *Id.* at 3. Mr. Bradley argues that the introduction of this evidence "creates a substantial risk that the jury will simply defer to the (apparent) factual determination and legal conclusions reached by SEEC and deprive Mr. Bradley of his right to have the jury determine the facts and apply the law." *Id.* at 5.

In response, the Government proposes to limit its evidence regarding the SEEC investigation to "(1) the fact of the investigation, that it involved Dolphin's Cove at least in part, and the [D]efendants' statements to SEEC in response, along with necessary context, and (2) the fact that SEEC denied the grant following its Dolphin's Cove investigation." Opp'n to Mot. *in Limine* Re: SEEC at 1. Under this proposal, the Government "would agree not to introduce evidence of 'the reasons why SEEC denied Mr. Bradley's application for a general election

grant,' including any testimony about SEEC's factual or legal analysis." *Id.* (quoting Mot. *in Limine* Re: SEEC at 5).

During the final pre-trial conference, Mr. Bradley objected to the Government's proposal to the extent that the SEEC witnesses will testify that SEEC denied Mr. Bradley's application for a general election grant. Mr. Bradley argued that this testimony would necessarily imply that SEEC determined that he violated Connecticut election law. In Mr. Bradley's view, this testimony is both misleading, as SEEC considered other factors in addition to the Dolphin's Cove event in denying the grant, and inadmissible expert testimony.

The Court agrees, in part.

To the extent Mr. Bradley seeks to preclude the Government from introducing the fact of SEEC's investigation into the event at Dolphin's Cove and Defendants' statements to SEEC, the motion is denied, and the Government will be permitted to introduce this evidence at trial.

The Court will not, however, permit SEEC witness testimony that following its investigation into the Bradley campaign, SEEC denied Mr. Bradley's application for a general election grant. While this testimony is not expert testimony, as it is grounded in the SEEC witnesses' investigation of Mr. Bradley, *see Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181–82 (2d Cir. 2004), it strongly implies that SEEC determined that Mr. Bradley violated state election law and therefore was not eligible for the grant. As a result, there is a substantial risk that a jury will be misled as to the appropriate standard under which Mr. Bradley may be found guilty of the charges, or that it will defer to the SEEC witnesses' apparent conclusion that Mr. Bradley was not eligible for the general election grant due to misrepresentations in his campaign filings. *See Chalco v. Belair*, No. 3:15-CV-340 (VLB), 2019 WL 456162, at *4 (D. Conn. Feb. 5, 2019) (holding, in excessive force case, that evidence in criminal and internal

investigations stating that the defendant engaged in an "unreasonable use of force" and "violated Danbury Police Department Rules and Regulations" was "based on a standard other than that applicable at trial and [is] inadmissible"); *Roguz*, 2013 WL 1498126, at *11 ("Any legal conclusions made by the [internal] investigation will not be allowed into evidence nor are they to be referred to.").

Accordingly, Mr. Bradley's motion to exclude testimony or exhibits relating to SEEC's factual and legal conclusions resulting from its investigation into the Bradley campaign will be granted in part, and denied in part.

### B. Motions *in Limine* to Exclude Evidence Regarding Connecticut Law [ECF Nos. 61 and 67]

The Federal Rules of Evidence permit "the admission of fact testimony so long as the witness has personal knowledge, *see* Fed. R. Evid. 602, while opinion testimony can be presented by either a lay or expert witness, *see* Fed. R. Evid. 701 & 702." *United States v. Cuti*, 720 F.3d 453, 457–58 (2d Cir. 2013).

Under Federal Rules of Evidence 701 and 702, "[a] witness's specialized knowledge, or the fact that he was chosen to carry out his investigation because of this knowledge, does not render his testimony 'expert' as long as it [is] based on his 'investigation and reflect[s] his investigatory findings and conclusions, and [is] not rooted exclusively in his expertise . . . .'" *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (quoting *Bank of China*, 359 F.3d at 181); *see also* Fed. R. Evid. 701(c) (testimony is lay opinion testimony if it is, *inter alia*, "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). "If, however, the witness's testimony [is] 'not a product of his investigation, but rather reflect[s] [his] specialized knowledge,' then it [is] . . . expert testimony." *Id*. (quoting *Bank of China*, 359 F.3d at 182).

8

"It is well-established that the 'trial judge has broad discretion in the matter of the admission or exclusion of expert evidence.'" *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) (quoting *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)).

"[A]n expert should not be permitted," however, "to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court." *Id.* (internal quotation marks and citation omitted)).

Mr. Bradley and Ms. Martinez move *in limine* to exclude any testimony or exhibits regarding the meaning and interpretation of the Connecticut election statutes and regulations and their applicability to the facts of this case. *See* Bradley Mot. *in Limine* Re: Connecticut Law at 1; Martinez Mot. *in Limine* Re: Connecticut Law at 1.

On May 9, 2022, the Government provided Mr. Bradley and Ms. Martinez with notice of its intent to introduce testimony by SEEC employees "concerning Chapters 155 and 157 of the Connecticut General Statutes, as well as CEP's rules and restrictions, consistent with ¶¶ 8–20 of the Superseding Indictment" ("Notice"). Ex. A to Def. Dennis Bradley's Mot. *in Limine* to Exclude Evid. Regarding Connecticut Law at 2, ECF No. 61-1 (May 16, 2022) ("Notice"). The Government's exhibit list also includes as proposed exhibits copies of Chapter 155 and Chapter 157 of the Connecticut General Statutes. *See* Government's Revised Ex. List at 7, ECF No. 73-4 (May 16, 2022).

Mr. Bradley and Ms. Martinez argue that this evidence is inadmissible under Federal Rules of Evidence 403 and 702, on the grounds that the testimony and exhibits will confuse the jury by providing competing interpretations of the applicable law. Bradley Mot. *in Limine* Re:

Connecticut Law at 2–6; Martinez Mot. *in Limine* Re: Connecticut Law at 2. According to Mr. Bradley,

> whether the money spent on the Dolphin's Cove event should in fact have been characterized as a campaign expense under Connecticut law turns on (1) the meaning of the relevant Connecticut laws and (2) how those laws should be applied to the Dolphin's Cove event. The first is a matter for the Court, which will instruct the jury on the meaning of the relevant law. And the second is a matter for the jury, which will decide how to apply that law to the facts it finds based on the Court's instruction. Neither is an appropriate topic for witness testimony.

*Id.* at 5.

In addition, Mr. Bradley argues that the Government failed to timely or adequately disclose the proposed SEEC witness testimony. *Id.* at 7–8. Although the Notice states that the proposed testimony does not "necessarily constitute[] expert testimony," Notice at 1, Mr. Bradley argues that "testimony about the details of Connecticut law plainly calls for specialized knowledge and education, making it a matter for expert witnesses," who should have been disclosed "nearly a year ago," Bradley Mot. *in Limine* Re: Connecticut Law at 7.

In response, the Government argues that "[a] significant portion of the testimony about the CEP program to be elicited from a SEEC witness . . . will concern materials provided by SEEC to [Mr.] Bradley and [Ms.] Martinez, and thus is fact (and not opinion) testimony relevant to prove their knowledge, intent, and lack of mistake in [allegedly] repeatedly lying to SEEC." Opp'n to Mots. *in Limine* re: Connecticut Law at 8. In the Government's view, "there is no risk of juror confusion in admitting this evidence," as it is "the same, accurate recitation of the law that was available to [Mr.] Bradley and [Ms.] Martinez in 2018." *Id.* at 10.

In addition, the Government asserts that it will "elicit fact testimony" from an SEEC witness, SEEC Elections Officer Sheri-Lyn Lagueux, "to establish the materiality of the

[D]efendants' [alleged] lies to SEEC," including why the information provided by Mr. Bradley and Ms. Martinez in their grant application and other documents "was important to SEEC, that SEEC relied upon [this information's] validity, and why [this information] mattered to SEEC." *Id.* at 10. According to the Government, Ms. Lagueux also will explain "in general terms the process by which [SEEC] investigations occur;" the context of SEEC's investigative interview of Ms. Martinez and Mr. Bradley's meeting with SEEC members; and the "consequences that can flow from a violation of CEP rules." *Id.* at 11.

None of this testimony, the Government argues, constitutes expert testimony but rather "is a combination of (1) [Ms.] Lagueux's percipient recollections of her interactions with the Bradley campaign, including providing them with relevant resources regarding the program rules; (2) testimony based on official records of SEEC, of which [Ms.] Lagueux is the Clerk; and (3) testimony by [Ms.] Lagueux as a representative of the [alleged] victim agency about why the information about which the [D]efendants [allegedly] lied mattered to SEEC." *Id.* at 12.

Even if the SEEC testimony constitutes opinion evidence, the Government asserts, this evidence would still be admissible to "establish[] the regulations that SEEC applied." *Id.* at 13.

Finally, the Government argues that its provision of Notice to Defendants was timely, as the SEEC witness testimony is not expert testimony "and thus no notice was necessary." *Id.* at 14.

The Court agrees, in part.

Insofar as the Government seeks to introduce testimony by SEEC employees that they provided to Mr. Bradley and Ms. Martinez agency resources outlining SEEC and CEP rules, and that Mr. Bradley and Ms. Martinez signed certain SEEC documents, this evidence is fact testimony and is therefore admissible, subject to the laying of a proper foundation. *See* Fed. R.

Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . .").

The Court also will permit testimony regarding SEEC's review of Mr. Bradley's CEP grant applications and subsequent investigation of Mr. Bradley and Ms. Martinez, insofar as this testimony is consistent with the Government's concessions with respect to Mr. Bradley's separate motion *in limine*, *see supra* Section III.A, is "rationally based on the perception of the [SEEC] witness," and is not "rooted exclusively in [the SEEC witness's] expertise," *Bank of China*, 359 F.3d at 181; *id.* at 181–82 ("[T]o the extent [the witness's] testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible [under] Rule 702 of the Federal Rules of Evidence because it was based on his perceptions." (emphasis omitted); *see also United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) ("[A] lay opinion must be rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation." (internal quotation marks omitted) (quoting Fed. R. Evid. 701(a))). Thus, the SEEC witnesses may testify, for example, about their receipt of the CEP grant applications and related documentation from Mr. Bradley and Ms. Martinez, the content of these applications, the process by which the SEEC witnesses reviewed Mr. Bradley's applications for CEP grants, and their interactions with Mr. Bradley and Ms. Martinez.

Any testimony regarding the SEEC witnesses' interpretation of the relevant Connecticut election statutes and regulations, however—including SEEC's definitions of legal terms, the policies or criteria by which, under Connecticut law, SEEC awards CEP grants, and how SEEC

12

generally applies Connecticut election statutes and regulations—is inadmissible as expert testimony that was not timely disclosed.[1]

Although this testimony is based on the SEEC witness's experience, it is not, as the Government argues, fact testimony, but rather "reflect[s] [the SEEC employee's] specialized knowledge" about SEEC and its evaluation of applications for CEP grants, and therefore is "impermissible expert testimony." *Rigas*, 490 F.3d at 224 (internal quotation marks and citation omitted); *id*. ("Rule 701(c), which prohibits testimony from a lay witness that is 'based on scientific, technical, or other specialized knowledge,' is intended 'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" (internal citation omitted)); *see also Bank of China*, 359 F.3d at 182 ("[T]o the extent [the Bank of China employee's] testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission [under] Rule 701 was error.").

The Government argues that testimony by the SEEC witnesses regarding their understanding or application of Connecticut election law and regulations is admissible, even as opinion testimony, because "[m]uch of the SEEC-witness testimony constitutes 'the policies and practices of their employers,' and was 'rationally based on their perceptions as longtime' SEEC employees, and thus could be classified as lay testimony." Opp'n to Mots. *in Limine* re: Connecticut Law at 13 (quoting *United States v. Estrada*, 969 F.3d 1245, 1271 (11th Cir. 2020)).

---

[1] During the final pre-trial conference, the Government argued that SEEC witnesses should be permitted to read aloud the definitions of certain terms in agency resources allegedly provided to Defendants during the Bradley campaign. The Court will reserve judgment on whether the SEEC witnesses may read aloud, verbatim, specific definitions or other passages from these documents, until this issue is raised at trial. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (internal quotation marks and citation omitted)).

But the Government fails to point to a case in this Circuit in which a court has permitted an employee to testify generally about the "policies and practices of their employer[]" as a lay, rather than expert, witness. Indeed, the Government's rationale arguably conflicts with the Second Circuit's reasoning in *Rigas* and *Bank of China*, in which the court concluded that a witness's specialized knowledge does not render his testimony "expert" so long "as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .'" *Rigas*, 490 F.3d at 224 (quoting *Bank of China*, 359 F.3d at 181); *see also Bank of China*, 359 F.3d at 181 (district court abused its discretion "to the extent it admitted the testimony [of the Bank of China employee] based on [the employee's] experience and specialized knowledge in international banking").

To the extent the Government argues that the SEEC witness testimony is nevertheless admissible as expert opinion testimony, the Government has failed to satisfy the requirements for the timely disclosure of expert witnesses under this District's Standing Order on Criminal Discovery. *See* Standing Order on Disc. ¶ (A)(1)(h) ("Within 14 days after the arraignment or within the period established by the discovery conference or otherwise established by the court, . . . the attorney for the government shall furnish to defense counsel . . . a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary must describe the witness's opinions, the bases and reasons for those opinions and the witness's qualifications[.]").

Moreover, even if the SEEC witnesses had been timely disclosed as experts, any testimony purporting to interpret the applicable state law and regulations will "necessarily confuse the jury by providing competing interpretations of the law," and therefore is inadmissible under Rule 403. *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 265 (D. Conn. 2017)

(internal quotation marks and citation omitted); *see also United States v. Hoskins*, No. 3:12-CR-238 (JBA), 2019 WL 5556092, at *2 (D. Conn. Oct. 8, 2019) ("[W]here expert testimony deliberately track[s] the language of the relevant regulation and statutes, [is] not couched in even conclusory factual statements, and [is] not helpful to the jury in carrying out its legitimate function, it should not be admitted" (internal quotation marks and citation omitted)); *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) ("[A]n expert should not be permitted to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court." (internal quotation marks and citation omitted)).

Accordingly, Defendants' motion *in limine* to exclude testimony regarding the SEEC witnesses' interpretation of the relevant Connecticut election statutes and regulations will be granted in part, and denied in part. The SEEC witnesses may not testify generally about their understanding of Connecticut election law and applicable regulations. The Court will, however, permit these witnesses to testify about their review of Mr. Bradley's CEP grant applications and subsequent investigation of Mr. Bradley and Ms. Martinez, insofar as this testimony is "rationally based on the perceptions of the witness." *Bank of China*, 359 F.3d at 181.

### C.  Motions *in Limine* to Exclude Text Messages [ECF No. 63], Blog Posts [ECF No. 68], and Facebook Posts [ECF No. 71]

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence that is relevant, however, still may be excluded, for example, in the case of inadmissible hearsay. *See* Fed. R. Evid. 802.

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v.*

*Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id*. (citing Fed. R. Evid. 802).

At all times, this analysis is subject to Federal Rule of Evidence 403, which provides that, although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 1.  Motion *in Limine* to Exclude Text Messages

Ms. Martinez moves *in limine* to exclude text messages that refer to her by the nickname "Jessica Campaign" on the grounds that the text messages are inadmissible hearsay and, under Rule 403, carry a substantial risk of unfair prejudice to her right to a fair trial. Mot. *in Limine* Re: Text Messages at 1. In Ms. Martinez's view, the introduction of text messages with the phrase, "Jessica Campaign," "risks permitting emotion to influence the jury's verdict rather than reason." *Id*. at 2.

During the final pre-trial conference, the Government conceded that it will redact references to "Jessica Campaign" in the disputed exhibits. Accordingly, Ms. Martinez's motion to exclude references to "Jessica Campaign" will be denied as moot.

### 2.  Motion *in Limine* to Exclude Blog Post

Ms. Martinez moves *in limine* to exclude a February 26, 2018 blog post,[2] entitled "Book It: Dennis Bradley's Ides of March State Senate Moment," on the online blog, "Only in Bridgeport," on the grounds that it is inadmissible hearsay, is irrelevant, and risks unfair

---

[2] Ms. Martinez's motion states that the blog post was published on February 28, 2018. *See* Mot. *in Limine* Re: Blog Post at 1. The blog post at issue, however, is dated February 26, 2018. *See* Ex. A to Government's Opp'n to Def. Jessica Martinez's Mot. *in Limine* to Exclude "Blog Post" at 1, ECF No. 83-1 (May 20, 2022).

prejudice to Ms. Martinez. Mot. *in Limine* Re: Blog Post at 1. To the extent the blog post's

author, Leonard Grimaldi, possesses relevant information, Ms. Martinez agues, "such

information should come in through his testimony, not an out-of-court statement." *Id*. at 2.

In addition, Ms. Martinez argues that the blog post should be excluded as

"inflammatory," and therefore unfairly prejudicial, because it refers to Julius Caesar in the

context of Mr. Bradley's campaign and characterizes politics in Bridgeport as "play[ing] hand

grenades." *Id*.

In response, the Government argues that the blog post[3] by Mr. Grimaldi is not

inadmissible hearsay because should it seek to admit all or part of the posts, "it will do so

through the testimony of [Mr.] Grimaldi," who allegedly quoted Mr. Bradley from a text

message exchange with Mr. Bradley. Opp'n to Mot. *in Limine* Re: Blog Post at 3. Moreover, the

Government argues, the blog post is "principally offered for purposes other than to prove the

truth of what was asserted." *Id*. at 5. Even if the blog posts falls within the definition of hearsay,

the Government argues that Mr. Grimaldi's testimony about Mr. Bradley's statements to him are

separately admissible as party admissions under Federal Rule of Evidence 801(d). *Id*. at 7.

In addition, the Government argues that the February 26 post's "isolated hyperbolic

comments, which do not implicate the [D]efendants in any wrongdoing, pose little risk of

improperly prejudicing either defendant," and, at most, should be redacted rather than excluded

under Rule 403. *Id*.

The Court agrees, in part.

---

[3] In opposition to Ms. Martinez's motion, the Government argues that both Mr. Bradley's February 26, 2018 and March 16, 2018 posts are admissible. In her motion, Ms. Martinez moves to exclude, however, only the February 26, 2018 post. As a result, the Court limits its analysis to the admissibility of the February 26, 2018 post.

Newspaper articles generally are inadmissible as hearsay. *See Mandal v. City of New York*, No. 02-CV-1234 (WHP), 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006) ("Newspaper articles are usually inadmissible hearsay." (collecting cases)). A statement is not hearsay, however, if it is an admission of a party opponent; that is, if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity . . . ." Fed. R. Evid. 801(d)(2)(A). "A statement qualifies as a party admission even though the party denies having made it, if the statement's proponent provides adequate proof to support a finding that the statement was made by the party." *Mandal*, 2006 WL 3405005, at *2 (internal quotation marks and citation omitted).

As an initial matter, the Government argues that it will not offer the blog post for the truth of the matter asserted—*e.g.*, that Mr. Bradley planned to announce his candidacy at the March 15, 2018 event at Dolphin's Cove—but as evidence that the March 15, 2018 event promoted Mr. Bradley's candidacy, and that Mr. Bradley knew the event promoted his campaign. Opp'n to Mot. *in Limine* Re: Blog Post at 6.

Even if the blog post is offered for the truth of the matter asserted, Mr. Grimaldi's testimony regarding the portion of the February 26 post that attributes specific statements to Mr. Bradley is not hearsay because it is an admission by a party opponent, and Mr. Bradley does not deny having made the statements attributed to him. *See* Fed. R. Evid. 801(d)(2); *Mandal*, 2006 WL 3405005, at *2 (holding that "[t]hose portions of the Rashbaum Articles and Notes that contain direct quotations or attribute specific statements to individual Defendants or their agents are not hearsay because they are admissions by party opponents under Rule 801(d)(1)").

With respect to the February 26 post's references to Julius Caesar, these portions of the blog post are not unduly prejudicial, particularly given that the statements attributed to Mr.

18

Bradley refer to "the day marked by history as Caesar's pride and destruction . . . ." Ex. A to Government's Opp'n to Def. Jessica Martinez's Mot. *in Limine* to Exclude "Blog Post" at 2, ECF No. 83-1 (May 20, 2022). To the extent the Government seeks to admit the February 26 post in full, however, the Court will order the redaction of the reference to "hand grenades" to describe Bridgeport politics, *see id.* at 1 ("Some towns play political softball, other towns play hardball . . . in Bridgeport they play hand grenades."), as the quote risks unfair prejudice to Defendants and has limited relevance to the Government's case.[4]

Accordingly, Ms. Martinez's motion to exclude Mr. Grimaldi's blog post will be denied, except to the extent discussed above, as long as Mr. Grimaldi testifies.

### 3.  Motion *in Limine* to Exclude Facebook Posts

Ms. Martinez moves *in limine* to exclude as exhibits two of Ms. Martinez's purported Facebook posts on the grounds that (1) the Facebook posts are inadmissible unless properly authenticated under Federal Rule of Evidence 901, Mot. *in Limine* Re: Facebook Posts at 1; and (2) the Facebook posts' probative value is substantially outweighed by the risk of unfair prejudice, *id.* at 2–3.

In response, the Government asserts that, insofar as the parties are not able to reach an agreement as to authenticity, the Government will offer testimony from an FBI employee who visited Ms. Martinez's Facebook page and observed the disputed exhibits. Opp'n to Mot. *in Limine* Re: Facebook Posts at 3.

In addition, the Government argues that the proposed exhibits are relevant to its case because they "establish that [Ms.] Martinez attended the Dolphin's Cove party," "was the Bradley campaign treasurer," "took an active role in campaign fundraising," and "had knowledge

---

[4] During the final pre-trial conference, the Government indicated that it does not object to the redaction of the reference to "hand grenades" in the February 26, 2018 post.

of the SEEC rules regarding contribution forms and fundraising, generally." *Id*. at 4. Moreover, the Government argues, Ms. Martinez has failed to show a risk of unfair prejudice, as she "does not claim that the content of [the] exhibits is prejudicial, [but only] that it is wrong to attribute them to her." *Id*.

The Court agrees.

"The requirement of authentication is . . . a condition precedent to admitting evidence." *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014) (internal quotation marks and citations omitted). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Among the examples of authentication provided in Rule 901 is the "[t]estimony of a [w]itness with [k]nowledge" that an "item is what it is claimed to be." Fed. R. Evid. 901(b)(1); *Vayner*, 769 F.2d at 130 ("The simplest (and likely most common) form of authentication is through 'the testimony of a witness with knowledge that a matter is what it is claimed to be.'" (internal quotation marks omitted) (quoting *United States v. Rommy*, 506 F.3d 108, 138 (2d Cir. 2007))).

Assuming the Government offers testimony from a witness who visited Ms. Martinez's Facebook page and observed the Facebook posts, this testimony is sufficient to authenticate the exhibits as Ms. Martinez's Facebook posts. Ms. Martinez suggests that this testimony would not "prove helpful" to a jury for authentication purposes, Mot. *in Limine* Re: Facebook Posts at 2, but the Government "need only provide a rational basis from which the jury could infer that the [Facebook posts] did, in fact, belong to [Ms. Martinez]," *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990). Here, the "appearance, contents, substance, timing, and provenance" of the Facebook posts—including that the exhibits were posted by "Jessica Muniz-

Martinez" in March 2018 and state that this individual is Mr. Bradley's "campaign treasurer"—
"together with other evidence," suggest that Ms. Martinez authored the posts. *Id*. at 957; *see also*
Opp'n to Mot. *in Limine* Re: Facebook Posts at 2 (depicting excerpted screenshots of the
disputed Facebook posts).

Ms. Martinez also has not shown that the exhibits are irrelevant or warrant exclusion
under Rule 403. The exhibits are relevant to the Government's case, as they suggest that Ms.
Martinez was Mr. Bradley's campaign treasurer and solicited contributions on his behalf. *See*
Opp'n to Mot. *in Limine* Re: Facebook Posts at 2. Apart from her contentions with respect to the
authentication of the exhibits, Ms. Martinez has not identified, moreover, any prejudice arising
from the admission of the Facebook posts at trial. To the extent Ms. Martinez argues that the
Facebook posts were not created or posted by her, this argument goes to the weight, not the
admissibility, of the evidence. *See Maldonado-Rivera*, 922 F.2d at 958 ("Defendants' challenges
to the authenticity of the communiqué, such as their argument that the 'logo could have been
constructed by someone outside the Macheteros organization,' go more to the weight of the
evidence than to its admissibility." (internal citation omitted)).

Accordingly, Ms. Martinez's motion to exclude the Facebook posts will be denied, as
long as a witness who has seen the Facebook posts testifies as to having seen them.

### D.  Motion *in Limine* to Exclude Nature of Prior Court Cases [ECF No. 70]

Ms. Martinez moves *in limine* to preclude the Government from disclosing "the nature of
[her] resolved court cases," including two in which Mr. Bradley represented Ms. Martinez. Mot.
*in Limine* Re: Court Cases at 1.

In response, the Government indicates that it does not intend to introduce evidence of Ms. Martinez's resolved domestic violence cases in its case-in-chief. Resp. to Mot. *in Limine* Re: Court Cases at 1.

As the Government does not intend to introduce evidence of Ms. Martinez's prior domestic violence cases, Ms. Martinez's motion will be denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions *in limine* to exclude any testimony or exhibits regarding the meaning and interpretation of Connecticut election law and regulations **[ECF Nos. 61 and 67]** are **GRANTED in part** and **DENIED in part**.

Mr. Bradley's motion *in limine* to exclude testimony regarding SEEC's factual and legal bases for denying his grant application **[ECF No. 62]** is **GRANTED in part** and **DENIED in part**.

Ms. Martinez's motion *in limine* to exclude text messages that refer to "Jessica Campaign" **[ECF No. 63]** is **DENIED as moot**, and the motions *in limine* to exclude the blog post by Leonard Grimaldi **[ECF No. 68]** and Facebook posts allegedly attributed to her **[ECF No. 71]** are **DENIED**, although their admission is contingent on the proper evidentiary foundation being laid by appropriate witnesses.

Ms. Martinez's motion *in limine* to exclude the nature of her prior resolved court cases **[ECF No. 70]** is **DENIED as moot**.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of May, 2022.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge