IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**UNITED STATES OF AMERICA,**

    *Plaintiff*

*vs*.

**DENNIS A. BRADLEY, JR.**

    *Defendant*

Case No. No. 3:21-cr-00087 (VAB)

Dated: April 16, 2025

## MOTION TO DISMISS INDICTMENT

Defendant, Dennis A. Bradley, Jr., by and through undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), to dismiss the Superseding Indictment (ECF No. 50) in its entirety, or in the alternative, to strike portions that fail to state an offense under federal law.

The Superseding Indictment charges Mr. Bradley with one count of conspiracy to commit wire fraud (18 U.S.C. § 1349) and five counts of wire fraud (18 U.S.C. § 1343), arising from alleged misrepresentations to the Connecticut State Election Enforcement Commission (SEEC) to obtain state campaign grants.

As set forth below, the indictment fails to state a federal offense for five primary reasons: (1) it improperly relies on an invalid "right-to-control" theory, unanimously foreclosed by the Supreme Court in *Ciminelli v. United States*, 598 U.S. 306 (2023); (2) the alleged conduct involves purely state election matters, lacking the requisite federal property interest, per *Cleveland v. United States*, 531 U.S. 12 (2000); (3) the indictment insufficiently alleges materiality under *Neder v. United States*, 527 U.S. 1 (1999); (4) it fails to adequately plead the

interstate commerce element required for wire fraud; and (5) applying the wire fraud statute here raises significant federalism concerns by intruding on state sovereignty over election regulation.

## FACTUAL BACKGROUND

The Superseding Indictment, filed May 4, 2022, alleges that Mr. Bradley, during his 2018 Connecticut State Senate campaign, conspired with Jessica Martinez to defraud the SEEC, the Citizens' Election Fund, and the State of Connecticut by making material misrepresentations to obtain $179,850 in campaign grants under Connecticut's Citizens' Election Program (CEP). Superseding Indictment, ECF No. 50, ¶¶ 1, 29–30. It claims Mr. Bradley used personal funds exceeding CEP limits for a campaign event on March 15, 2018, and submitted false filings, including a CEP Affidavit and Itemized Campaign Finance Disclosure Statements, to conceal this violation. *Id.* ¶¶ 34–79. The alleged wire communications include text messages, emails, and electronic postings on SEEC's eCRIS system. *Id.* ¶¶ 87–89.

The conduct pertains exclusively to state election laws and a state-funded program, with no allegations of federal funds, elections, or oversight. Notably, the indictment alleges the scheme "**deprived SEEC, the Citizens' Election Fund, and the State of Connecticut of economically valuable information**" relevant to allocating public funds, invoking a "right-to-control" theory. *Id.* 31.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment for failure to state an offense. The Court evaluates the indictment's facial validity, accepting factual allegations as true but determining whether they constitute a federal crime. *United States v. Pirro*, 212 F.3d 86, 91–92 (2d Cir. 2000). An indictment must allege each element of the offense with sufficient detail to ensure fair notice. *United States v. Aleynikov*, 676

F.3d 71, 75–76 (2d Cir. 2012). Dismissal is warranted if the charged conduct falls outside the statute's scope or relies on an invalid legal theory. *See Ciminelli v. United States*, 598 U.S. 306, 316–17 (2023) (vacating conviction based on invalid wire fraud theory); *United States v. Litvak*, No. 3:13-CR-19, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013).

## ARGUMENT

**I. THE INDICTMENT RELIES ON AN INVALID "RIGHT-TO-CONTROL" THEORY, UNANIMOUSLY FORECLOSED BY *CIMINELLI V. UNITED STATES*.**

The wire fraud statute, 18 U.S.C. § 1343, and its conspiracy counterpart, 18 U.S.C. § 1349, require a scheme to obtain "money or property" through false pretenses, transmitted via interstate wires. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996). In a unanimous decision, the Supreme Court in *Ciminelli v. United States*, 598 U.S. 306 (2023), clarified that wire fraud does not encompass schemes to deprive victims of "potentially valuable economic information" needed for economic decisions—so-called "right-to-control" theories. *Id.* at 314–16. The Court held that, at the time of the statute's enactment, the "common understanding" of fraud referred to "wronging one in his property rights," limiting wire fraud to traditional property interests like money or tangible assets, not intangible information. *Id.* at 312–13. This ruling explicitly rejected the Second Circuit's prior right-to-control framework, which allowed convictions based on depriving victims of information necessary for discretionary economic decisions. *Id.* at 316.

The Superseding Indictment invokes this defunct theory, alleging that Mr. Bradley's scheme "denied SEEC, the Citizens' Election Fund, and the State of Connecticut the right to control their assets by using false and fraudulent documents and filings to deprive them of economically valuable information relevant to the decision of whether and how to allocate public

election funds." Superseding Indictment 31. This language directly mirrors the right-to-control theory rejected in *Ciminelli*, rendering the indictment defective.

Post-*Ciminelli*, courts have dismissed charges relying on information deprivation. In *United States v. Nordlicht*, No. 1:16-cr-00640 (E.D.N.Y. July 12, 2023), the Eastern District of New York dismissed wire fraud counts where defendants failed to disclose bondholder control, finding no intent to defraud of actual money or property, only information. Similarly, in *United States v. Kousisis*, No. 19-1434, 2023 WL 8622347, at *3 (3d Cir. Dec. 13, 2023), the Third Circuit remanded for reconsideration of wire fraud convictions post-*Ciminelli*. Although the indictment alleges a scheme to obtain money (campaign grants), the inclusion of the right-to-control theory risks misleading juries, warranting dismissal or severance. *See United States v. Shellef*, 507 F.3d 82, 97–98 (2d Cir. 2007) (vacating conviction where improper theory was presented).

At minimum, the Court should strike paragraphs like Paragraph 31 and dismiss counts (*e.g.*, Counts Two through Six) that hinge on information deprivation rather than obtaining money. *See Ciminelli*, 598 U.S. at 317 (directing alignment with statutory limits).

## II. THE INDICTMENT FAILS TO ALLEGE A FEDERAL PROPERTY INTEREST, AS THE CONDUCT INVOLVES PURELY STATE ELECTION MATTERS.

Even absent the right-to-control theory, the indictment fails to state a federal offense because the alleged scheme targets a state regulatory program, lacking a sufficient federal property interest. Wire fraud requires that the scheme's object be "money or property" in a context implicating federal jurisdiction. *Cleveland v. United States*, 531 U.S. 12, 18–20 (2000). In *Cleveland*, the Supreme Court held that state-issued licenses are not "property" under the mail fraud statute (18 U.S.C. § 1341, analogous to § 1343), as the state's interest is regulatory, not proprietary. *Id.* at 20–23. The Court cautioned that federal fraud statutes should not extend to

state regulatory schemes absent a clear federal interest, to avoid overstepping state authority. *Id.* at 24–25. As the *Cleveland* court explicitly stated: "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in prosecution of crimes" refusing to overstep traditional regulatory schemes relating to "false statements on license applications." *Id*.

Here, the Citizens' Election Fund is a state-administered program, funded by state resources, to promote fair state elections. Superseding Indictment ¶¶ 12–13. The alleged misrepresentations—omitting personal fund expenditures and falsifying contribution dates—were made to SEEC, a state agency, to secure state grants. *Id.* ¶¶ 63–79. No federal funds, elections, or oversight are implicated. While the grants are monetary, their disbursement is a regulatory function, akin to the licenses in *Cleveland*, aimed at ensuring election integrity rather than proprietary ownership until misappropriated through traditional theft. *See Cleveland*, 531 U.S. at 26–27 (distinguishing regulatory disbursements from proprietary interests).

Even if the funds at issue qualify as "money" in the traditional property sense, the origin and nature of the Citizens' Election Fund (CEF) merit closer scrutiny. According to Connecticut law, the CEF is not funded through general state appropriations or federal funds. Rather, it is funded by proceeds from unclaimed or escheated property, voluntary contributions made by individual taxpayers through a state income tax check-off, and interest accrued on those proceeds. Or as the SEEC's own website succinctly admits, the Citizens' Election Program is "financed by the Citizens' Election Fund, which receives funds primarily from the proceeds of the sale of abandoned property in the State of Connecticut's custody."[1] These characteristics

---

[1] Retrieved from https://seec.ct.gov/Portal/work  *See also,* Conn. Gen. Stat. § 9-701, OLR's Bill analysis HB 5518 along with Conn. Gen. Stat. § § 3-62h and 3-69a. To be clear, Conn. Gen. Stat. § 9-701 establishes the fund, the source of the revenue—unclaimed or escheated property—comes from the state's unclaimed property regime under Title 3, Chapter 32 of the Connecticut General Statutes.

differentiate the CEF from other government accounts typically targeted in wire fraud prosecutions. Because the funds originate from private citizens (either voluntarily or through statutory reversion mechanisms), the State of Connecticut's claim to a proprietary interest is attenuated. The money is earmarked for the sole purpose of funding political campaigns under a voluntary public financing program, regulated by state administrative procedures—not federal ones. Accordingly, any alleged deprivation of these funds implicates a state-run, state-funded, and state-enforced program that lacks the federal oversight or vested proprietary interest generally found in successful federal fraud prosecutions. This nuance reinforces that the indictment improperly extends federal jurisdiction into an area more appropriately addressed by state enforcement mechanisms.

This Court's ruling in *United States v. DeFilippo*, No. 3:21-cr-128, ECF No. 50 (D. Conn. Aug. 4, 2023), reinforces this argument. The Court dismissed a conspiracy charge under 18 U.S.C. § 241 for local election interference, finding no general federal right to vote in state or local elections absent specific constitutional protections, and emphasizing limits on federal jurisdiction over state matters. *Id.* at 8–12. Though *DeFilippo* involved a different statute, its reasoning applies: purely state election conduct does not trigger federal jurisdiction without a clear federal hook. *See also United States v. Kantor*, 78 F.2d 710, 711 (2d Cir. 1935) (reversing conviction for lack of federal election involvement).

Other circuits support this view. In *United States v. Goodrich*, 871 F.2d 1011, 1014 (11th Cir. 1989), the Eleventh Circuit dismissed wire fraud charges involving state-regulated activities, finding no federal property interest. In *United States v. Henry*, 29 F.3d 112, 114 (3d Cir. 1994), the Third Circuit held that fraud on state agencies does not inherently implicate federal jurisdiction.

6

Cases like United States v. Granberry, 908 F.3d 97, 102 (5th Cir. 2018), and United States v. Hird, 913 F.3d 332, 339 (2d Cir. 2019), uphold wire fraud convictions for defrauding state agencies of grant funds, suggesting state money can be "property." However, Mr. Bradley's alleged scheme targeted a regulatory process, not federal funds, and the grants were contingent on state discretion, distinguishing them from direct theft. See Cleveland, 531 U.S. at 26–27. Even more, the funds at issue here are not even the State of Connecticut's property − rather abandoned property being administered by the State of Connecticut. Thus, the indictment fails to establish any federal property interest of any kind, warranting dismissal.

### III. THE INDICTMENT FAILS TO SUFFICIENTLY ALLEGE MATERIALITY OF THE MISREPRESENTATIONS.

Wire fraud requires that misrepresentations be material, meaning they have "a natural tendency to influence, or [are] capable of influencing, the decision of the decisionmaking body." Neder v. United States, 527 U.S. 1, 16 (1999). The Sixth Circuit's pattern jury instructions define materiality as influencing "a person of ordinary prudence and comprehension." The indictment must allege facts demonstrating this influence. United States v. Alfonso, 143 F.3d 772, 775 (2d Cir. 1998).

The indictment alleges Mr. Bradley omitted personal fund expenditures (*e.g.*, $5,597.31 for a March 15, 2018 event) and falsified contribution dates to secure a $84,140 primary grant and attempt a $95,710 general election grant. Superseding Indictment ¶¶ 34, 63–79. Yet, it fails to specify how these misrepresentations influenced SEEC's decisions. It does not claim SEEC would have denied the primary grant had the expenditures been disclosed, especially since the CEP's $2,000 personal fund limit was minor relative to the grant amount. *Id.* 16. SEEC's denial of the general election grant further suggests independent decision-making, undermining materiality. *Id.* 86.

The Second Circuit requires precise materiality allegations. *See United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015); *United States v. Gaudin*, 28 F.3d 943, 948–49 (9th Cir. 1994), *aff'd*, 515 U.S. 506 (1995). And at the end of the day it is the government's burden to prove materially false representations. Without clear allegations linking the misrepresentations to SEEC's actions, Counts One through Six fail to state an offense.

### IV. THE INTERSTATE COMMERCE ELEMENT IS INSUFFICIENTLY PLEADED.

Wire fraud requires interstate wire communications. 18 U.S.C. § 1343; *United States v. Slevin*, 106 F.3d 1086, 1089 (2d Cir. 1996). The indictment alleges wires, including text messages (March 15, 2018), emails (August 21, 2018), and eCRIS postings (April 10, 2018). Superseding Indictment 89. However, it does not specify whether these crossed state lines, a jurisdictional prerequisite. The indictment's assertion that the text message and eCRIS postings were 'in interstate and foreign commerce' (Superseding Indictment 89) is conclusory, lacking any factual basis—such as sender/receiver locations, server details, or network routing—to establish an interstate nexus. This is particularly true given eCRIS's description as a Connecticut state system and the campaign's local context. Superseding Indictment ¶¶ 18, 29.

The Second Circuit demands clear allegations of interstate transmission. *See United States v. Victor Teicher & Co., L.P.*, 726 F. Supp. 1424, 1432 (S.D.N.Y. 1989) (upholding wire fraud counts where the indictment alleged interstate wire communications, emphasizing the need for a clear jurisdictional nexus). Where such allegations are absent, charges cannot stand. *See United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (vacating wire fraud convictions for lack of interstate wire evidence). While some courts infer interstate activity for internet communications (*United States v. Runyan*, 290 F.3d 223, 230 (5th Cir. 2002)), the government must still allege and prove interstate transmission, even for internet use. *See United States v.*

*McLellan*, 959 F.3d 442, 469 (1st Cir. 2020). The indictment provides no basis to assume the text message or eCRIS postings crossed state borders, particularly for Counts Two, Three, Four, and Six, warranting dismissal.

V. **FEDERALISM CONCERNS SUPPORT DISMISSAL.**

Prosecuting state election matters via the federal wire fraud statute raises significant federalism concerns. Regulating state elections is a core function of state sovereignty, and federal intervention risks upsetting the balance of power. *See Bond v. United States*, 572 U.S. 844, 858 (2014) (cautioning against federal overreach absent clear congressional intent). The Supreme Court has emphasized that federal fraud statutes should not broadly encompass state regulatory matters, particularly without tangible losses of money or property. *See McNally v. United States*, 483 U.S. 350, 360 (1987).

Here, the alleged conduct—violating state campaign finance rules—involves no federal funds or elections. It doesn't even involve the State's money, but rather "proceeds of the sale of abandoned property in the State of Connecticut's custody."[2] Extending wire fraud to such matters intrudes on Connecticut's authority to enforce its election laws, as recognized in *United States v. DeFilippo*, No. 3:21-cr-128, ECF No. 50, at 12 (D. Conn. Aug. 4, 2023). The Supreme Court has cautioned against expanding federal criminal jurisdiction without a clear mandate. *See Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (narrowing wire fraud in state corruption cases). Absent a direct federal interest, the Court should decline to apply 18 U.S.C. §§ 1343 and 1349 to this state-centric conduct.

---

[2] https://seec.ct.gov/Portal/work

9

**REQUEST FOR RELIEF**

For the foregoing reasons, Mr. Bradley respectfully requests that the Court:

1. Dismiss the Superseding Indictment in its entirety for failure to state an offense under 18 U.S.C. §§ 1343 and 1349, as it relies on an invalid right-to-control theory, lacks a federal property interest, fails to allege materiality and interstate commerce, and raises federalism concerns.

2. In the alternative, strike paragraphs relying on the right-to-control theory (*e.g.*, Paragraph 31) and dismiss Counts Two through Six that depend on this theory or fail to plead essential elements.

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted by:

_____
Darnell D. Crosland, Esq.
**CROSLANDLAWGROUP LLC**
1200 Summer Street, Ste 202
Stamford, Connecticut 06905
info@croslandlaw.com
Tel. (203) 921-1782
Fax (203) 921-1223

Dated: April 16, 2025

DEFENDANT's COUNSEL

**CERTIFICATION**

I HEREBY CERTIFY that on April 16, 2025, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filling will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          Respectfully submitted by:

                                          Darnell D. Crosland, Esq.
                                          **CROSLANDLAWGROUP LLC**
                                          1200 Summer Street, Ste 202
                                          Stamford, Connecticut 06905
                                          info@croslandlaw.com
                                          Tel. (203) 921-1782
                                          Fax (203) 921-1223