UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:21CR87(VAB) |
| v. | |
| DENNIS A. BRADLEY, JR. | May 7, 2025 |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT DENNIS BRADLEY'S MOTION TO DISMISS**

The Government submits this opposition to defendant Dennis A. Bradley, Jr.'s motion to dismiss (Dkt. #282). Bradley makes five arguments, none of which warrant dismissal.

**I.  BACKGROUND**

The May 2022 Superseding Indictment charges Bradley with conspiracy to commit wire fraud under 18 U.S.C. § 1349 and five substantive counts of wire fraud under 18 U.S.C. § 1343. Sup. Ind. [Dkt. #50] ¶¶ 1, 29, 88–89. It alleges that, in connection with his 2018 State Senate campaign, Bradley conspired and participated in a scheme to dupe the State of Connecticut into awarding his campaign undeserved Citizens' Election Program ("CEP") grants by making misrepresentations and omissions to hide prohibited campaign activities from the Connecticut State Election Enforcement Commission ("SEEC"). *Id.* ¶¶ 1, 29–30. Those misrepresentations and omissions were allegedly material. *Id.* ¶ 1, 30–31. The object of Bradley's conspiracy and scheme was to fraudulently obtain $179,850 in CEP grant money. *Id.* ¶ 30. Bradley and his co-conspirators allegedly did that in two ways: (1) by lying and making omissions in SEEC filings to conceal his ineligibility for those grants but obtain them nonetheless; and (2) by denying SEEC, the Citizens' Election Fund, and the State the right to control their assets by depriving them of economically valuable information relevant to the decision to award Bradley grants. *Id.* ¶ 31. In furtherance of the scheme, Bradley allegedly sent or caused others to send a text message, an email, and certain campaign filings via interstate wire. *Id.* ¶ 89.

## II. LEGAL STANDARD

Bradley moves to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense. Def's Mot. at 1-2.

A defendant faces a high bar to dismissal under that Rule because an indictment need provide the defendant only "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." (cleaned up)). Because indictments need only be "plain" and "concise," the Second Circuit has "consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (cleaned up); *see also United States v. Pagan*, 721 F.2d 24, 27 (2d Cir. 1983) ("Inasmuch as the indictment informed appellant of the nature of the charge against him, did not subject him to being put twice in jeopardy and gave him sufficient notice of 'the core of criminality' to be proven against him, it was valid." (cleaned up)).

For purposes of this motion, the factual allegations in the indictment must be accepted as true. *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

## III. ARGUMENT

Bradley makes five meritless arguments in his motion to dismiss.

### A. The Indictment Alleges a Valid Property Theory of Wire Fraud

Bradley's first ground for dismissal, that the Superseding Indictment charges a "right-to-control" theory of wire fraud since invalidated by the Supreme Court, Mot. at 3–4, ignores the

indictment's actual reliance on a "traditional property" theory of wire fraud. *Ciminelli v. United States*, 598 U.S. 306, 309 (2023) ("[T]he federal fraud statutes criminalize only schemes to deprive people of traditional property interests."). Indeed, even if the Superseding Indictment also alleged an invalid "right-to-control" theory, Bradley overlooks Supreme Court and Second Circuit precedent permitting prosecution where the Government has also charged, or can prove, fraud using the traditional property theory.

The Superseding Indictment alleges that "[t]he object of the conspiracy and scheme to defraud was to fraudulently obtain $179,850 in CEP grants…." Sup. Ind. ¶ 30. Thus, money was the alleged object of the charged conspiracy and scheme to commit wire fraud, which falls neatly under the traditional property theory of wire fraud. *Ciminelli*, 598 U.S. at 312 ("[T]he Government must prove not only that wire fraud defendants engaged in deception, but also that money or property was an object of their fraud." (cleaned up)); *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (object of wire fraud scheme must be "to get money or property."). That distinguishes this case from *Ciminelli*, 598 U.S. at 314, where the Supreme Court held that the right to control one's economic decisions is not a form of "property" and therefore cannot be the object of a fraud charged under 18 U.S.C. § 1343.

Bradley conflates the object of the fraud alleged in the Superseding Indictment (*i.e.*, money) with a separate allegation concerning the plan for fraudulently acquiring that object. In that latter allegation, the Superseding Indictment details two ways in which Bradley and his co-conspirators carried out their conspiracy and scheme. Sup. Ind. ¶ 31 ("Bradley…[and his] co-conspirators carried out their conspiracy in two ways."). The first is that Bradley and his co-conspirators lied in certain SEEC filings to obtain CEP grant money. *Id*. The second—which admittedly uses the phrase "right to control"—is that they deprived SEEC, the Citizens' Election

Fund, and the State of economically valuable information relevant to the decision to award Bradley grants. *Id.*

Perhaps anticipating that the Government would not advocate at trial for a prohibited interpretation of § 1343, Bradley argues that the use of language similar to the right-to-control theory taints the entire Superseding Indictment. Mot. at 4 ("[T]he inclusion of the right-to-control theory risks misleading juries, warranting dismissal or severance."). Once again, Bradley's premise is incorrect; the Superseding Indictment does not rely on the right-to-control theory rejected by the Court in *Ciminelli* because it charges that the object of the fraud was "money" (specifically $179,850) and not an ephemeral form of "property." Moreover, Bradley does not explain how any supposed juror confusion might occur since: (1) per this Court's practice, the jury will likely not receive a copy of the Superseding Indictment; (2) even if the Court did provide a copy of the Superseding Indictment, the right-to-control language does not relate to the object of the charged fraud and, in any event, could easily be struck, *see* Fed. R. Crim. P. 7(d); and (3) in accordance with *Ciminelli*, the Court will certainly charge the jury only on the traditional property theory—here, that the Government must prove beyond a reasonable doubt that the object of the charged conspiracy and wire fraud was money—and not right-to-control.

Moreover, Bradley does not cite any authority that supports dismissal merely because the phrase "right to control" appears in the Superseding Indictment. To the contrary, the Second Circuit has even found that a wire fraud indictment is not fatally flawed under *Ciminelli* so long as "the government did not rely *solely* on the right-to-control theory" for the object of the charged fraud. *United States v. Tuzman*, No. 21-2229, 2024 WL 1173044, at *3 (2d Cir. Mar. 19, 2024) (rejecting sufficiency challenge; "Given the nature of the scheme here, combined with the undisputed fact that the district court read the jury the traditional property theory in both trials, we are confident that the jury would have convicted Defendants under the traditional property theory

in the absence of the invalid right-to-control theory."). *See also Stinn v. United States*, No. 11-CV-2071 (PKC), 2024 WL 4989241, at *6 (E.D.N.Y. Dec. 5, 2024) (citing *Tuzman* and denying *coram nobis* writ: "[T]he rejection of the right-to-control theory [in *Ciminelli*] does not preclude the government from arguing that there was a scheme to obtain money."); *cf. United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023) ("[N]o reasonable jury could find beyond a reasonable doubt that Nordlicht and Levy intended to defraud bondholders of the proceeds of the Renaissance sale except under a 'right-to-control' theory."). Indeed, following the Supreme Court's *Ciminelli* decision, the Second Circuit vacated the wire fraud convictions of Mr. Ciminelli and his co-defendants, then remanded for possible retrial on the traditional property theory. *United States v. Aiello*, 118 F.4th 291, 299–303 & n.2 (2d Cir. 2024) ("Because the operative indictment relied only on the right-to-control theory, to proceed to a second trial on a traditional property theory, the government would likely have to obtain another superseding indictment. The Supreme Court [in *Ciminelli*] seemingly did not foreclose the government from doing just this."). As important, unlike in *Ciminelli* and its recent progeny, the Court here will avoid *any* risk that the trial jury could be tainted by the right-to-control theory simply by withholding that instruction as to the object of the alleged fraud. Put differently, at this pre-trial stage, any possible prejudice is entirely notional and avoidable.

The Court should therefore reject Bradley's meritless application for dismissal and allow the Government to proceed to trial on the wire fraud and conspiracy as charged—that is, with the object of obtaining money, a traditional property interest.

### B. The Indictment Need Not Allege A "Federal Property Interest"

Bradley's second ground for dismissal, that the Superseding Indictment's allegations "target[] a state regulatory program, lacking a sufficient federal property interest," Mot. at 4, is

contrary to well-established law that requires only that the grant funds that were the alleged object of Bradley's wire fraud constitute "money or property."

The object of a wire fraud scheme must be "to get money or property." *Autuori*, 212 F.3d at 115. *See also* 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice…for obtaining money or property…"). Here, once again, the Superseding Indictment alleges that Bradley's criminal object was to obtain the State's CEP grant money: "The object of the conspiracy and scheme to defraud was to fraudulently obtain $179,850 in CEP grants in connection with the 2018 campaign for the seat for the 23rd Connecticut State Senate District…." Sup. Ind. ¶ 30. The Superseding Indictment details how certain steps that Bradley and his co-conspirators took related to or furthered that object. *See id.* ¶¶ 1, 24, 26, 29, 31, 32, 63, 65, 69, 73, 78, 80, 84, 86, 88, 89. Yet even absent this factual detail, a conclusory allegation that money or property was the object of a charged wire fraud suffices to defeat a motion to dismiss under Rule 12(b)(3)(B)(v). *Hamling*, 418 U.S. at 117 ("[A]n indictment is sufficient if it…contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend…."); *Alfonso*, 143 F.3d at 776 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (cleaned up)).

Nonetheless, Bradley argues that the Superseding Indictment fails under *Cleveland v. United States*, 531 U.S. 12 (2000), which he contends stands for the proposition that "[w]ire fraud requires that the scheme's object be 'money or property' in a context implicating federal jurisdiction." Mot. at 4. Bradley is mistaken.

First, Bradley seems to argue, without support, that the object of a wire fraud scheme must have "a sufficient federal property interest." Mot. at 4. *See also id.* at 5 ("No federal funds, elections, or oversight are implicated."); *id.* at 6 (indictment "lacks the federal oversight or vested

proprietary interest generally found in successful federal fraud prosecutions"). But Bradley cites no authority establishing that the federal government must have a "property interest" in the object of a wire fraud (and the Government is aware of none). Indeed, most wire fraud cases involve thefts that are entirely private in nature, that is, a theft by one private individual or entity from another.[1] If Congress intended to limit wire fraud to schemes aimed at obtaining federal funds, it would have imposed such a restriction, as it did in 18 U.S.C. § 666. *Sorich v. United States*, 129 S. Ct. 1308, 1309 (2009) (Scalia, J., dissenting: § 666 "requires the additional factor of the employer's receipt of federal funds, while violation of the 'honest services' provision [of mail or wire fraud] requires use of mail or wire services."). In any event, caselaw is clear that the federal jurisdictional element for purposes of § 1343—discussed further below—is the "use of interstate wire facilities." *Neder v. United States*, 527 U.S. 1, 20 (1999). *See also United States v. Price*, 374 F. App'x 189, 191 (2d Cir. 2010) ("We have previously held that the interstate requirement of the statute is jurisdictional….").

Bradley is also wrong to draw factual parallels between this case and *Cleveland*. Mot. at 5 ("While the grants are monetary, their disbursement is a regulatory function, akin to the licenses in *Cleveland*, aimed at ensuring election integrity rather than proprietary ownership…."). *Cleveland* held that state and municipal video poker licenses were not "property" for purposes of the federal fraud statutes. 531 U.S. at 15. The Supreme Court found that the State of Louisiana's core interest in such licenses was regulatory—rather than as economic property—because licensing is a "paradigmatic exercise[] of the States' traditional police powers," *id* at 23, and so the object of the defendant's fraud was never "property in the hands of the victim," *id.* at 15.

---

[1] Indeed, in at least one case cited in Bradley's motion, the federal government had no interest in the object of the fraud. *United States v. Hird*, 913 F.3d 332 (2d Cir. 2019) (state funds). *See also Pasquantino v. United States*, 544 U.S. 349 (2005) (foreign government's property).

Therefore, the *Cleveland* defendants could not commit mail fraud because the licenses—at least while still in Louisiana's hands—were not "property." *Id.* at 26–27.

In contrast, here, the CEP grant funds that were the alleged object of Bradley's scheme was literal "money" in the hands of the State. *Compare* Sup. Ind. ¶ 30 *with Cleveland*, 531 U.S. at 22 ("[T]he Government nowhere allege[d] that Cleveland defrauded the State of any money to which the State was entitled by law."). *Cf. Kelly v. United States*, 590 U.S. 391, 402 (2020) ("[A] property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."). It is difficult to conceive of a situation in which actual money does not fit the definition of "money or property." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("Money, of course, is a form of property."). This explains why the Supreme Court has already rejected Bradley's misinterpretation of *Cleveland*. *Pasquantino v. United States*, 544 U.S. 349, 356–357 (2005) (holding tax revenue is property under the fraud statutes: "Here, by contrast [with *Cleveland*], the Government alleged and proved that petitioners' scheme aimed at depriving Canada of money to which it was entitled by law."). *See also United States v. Hird*, 913 F.3d 332, 342 (3d Cir. 2019) ("In contrast [with *Cleveland*], the indictment here explicitly states that the scheme deprived the City and the Commonwealth of money, and it describes the object of the scheme as obviating judgments of guilt that imposed the fines and costs.").

Bradley is also incorrect to argue that "the origin and nature" of the CEP grant funds reveal them to be something other than "money or property." Mot. at 5–6. The Superseding Indictment alleges that "[t]he Citizens' Election Fund, under the administration of the Connecticut State Treasurer, financed the CEP with money from voluntary donations and the State's sale of abandoned property." Sup. Ind. ¶ 12. Bradley reasons that "[b]ecause the funds originate from private citizens (either voluntarily or through statutory reversion mechanisms), the State of Connecticut's claim to a proprietary interest is attenuated." Mot. at 6. Bradley cites nothing to

support that assertion, and there is no logical reason why the source of money is relevant to whether it falls within the statutory definition of "money or property." Instead, Bradley cites two inapposite civil rights cases that do not address the definition of "money or property" under the federal fraud statutes. Mot. at 6 (citing *United States v. DeFilippo*, 685 F. Supp. 3d 129 (D. Conn. 2023) (analyzing indictment charging conspiracy to violate civil rights, rather than fraud); *United States v. Kantor*, 78 F.2d 710 (2d Cir. 1935) (same)).

The Court should therefore reject Bradley's motion to dismiss on the grounds that the Superseding Indictment does not allege a federal property interest.

### C. The Indictment Sufficiently Alleges Materiality

Bradley's third ground for dismissal, that the Superseding Indictment fails to allege materiality, Mot. at 7–8, is factually and legally incorrect.

Materiality is an element of wire fraud. *Neder*, 527 U.S. at 25. As the Supreme Court has put it, a material misrepresentation has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it [is] addressed." *Id.* at 16. *See also United States v. Calderon*, 944 F.3d 72, 86 (2d Cir. 2019) (materiality asks "would the misrepresentation actually *matter* in a *meaningful way* to a rational decisionmaker?"); *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) ("A statement is material if the misinformation or omission would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct." (cleaned up)). Courts have indicated that materiality is a mixed question of law and fact best decided by a jury. *Washington v. Recuenco*, 548 U.S. 212, 219 (2006) ("[M]ateriality is an element of the mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes as well."); *United States v. Gentile*, No. 21-CR-54 (RPK), 2025 WL 777090, at *14 (E.D.N.Y. Mar. 11, 2025) (wire fraud case: "Determination of materiality…is a mixed question of law and fact that the Supreme Court has identified as especially

well suited for jury determination.") (quoting *United States v. Gramins*, 939 F.3d 429, 446 (2d Cir. 2019) (securities and wire fraud case)).

As Bradley concedes, Mot. at 2, the Superseding Indictment expressly alleges that Bradley's misrepresentations and omissions were "material." *Id.* ¶¶ 30–31, 89. Those allegations are fatal to Bradley's argument, since conclusory allegations of the elements of the charged offense suffice under Rule 7. *Hamling*, 418 U.S. at 117; *Alfonso*, 143 F.3d at 776.

Nonetheless, Bradley contends that the Superseding Indictment is deficient because it "fails to specify how these misrepresentations influenced SEEC's decisions." Mot. at 7. That is incorrect in two ways. First, unlike civil pleadings, a criminal indictment can state an offense based on conclusory allegations that merely track the charged statute. *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) ("[A]n indictment parroting the language of a federal criminal statute is often sufficient…").[2] Second, even though not a pleading requirement, the Superseding Indictment does, in fact, "specify how [Bradley's] misrepresentations influenced SEEC's decisions," in that it repeatedly alleges that Bradley lies concealed his disqualifying conduct to dupe SEEC into awarding him undeserved campaign finance grants. *Id.* ¶¶ 1, 31, 45, 46, 56, 63, 69, 78, 85.

Finally, Bradley asserts that "it is the government's burden to prove materially false representations." Mot. at 8. But a challenge to the Government's evidence supporting an element of a charged crime is not proper grounds for a motion to dismiss and must be resolved at trial. *Alfonso*, 143 F.3d at 775-777 (where an indictment was "valid on its face," "[t]o the extent . . . the

---

[2] Bradley cites three cases that undercut—and, in one instance, flatly contradicts—his claim that courts, including the Second Circuit, "require[] precise materiality allegations." Mot. at 8 (citing *Alfonso*, 143 F.3d at 776 (error to dismiss Hobbes Act indictment because it "allege[d] in conclusory terms that defendants conspired to commit robbery and thereby affected interstate commerce"); *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015) (post-trial challenge to sufficiency of materiality evidence); *United States v. Gaudin*, 28 F.3d 943, 944 (9th Cir. 1994), *aff'd*, 515 U.S. 506 (1995) (holding "the element of materiality in 18 U.S.C. § 1001 is a question of fact that must be determined by the jury")).

district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial to satisfy the Hobbs Act's jurisdictional element . . . such an inquiry into the sufficiency of the evidence was premature.").

The Court should therefore reject Bradley's motion to dismiss because the Superseding Indictment sufficiently pleads materiality.

### D. The Indictment Sufficiently Alleges Interstate Wires

Bradley's fourth ground for dismissal, that the Superseding Indictment "does not specify whether [the charged wires] crossed state lines," Mot. at 8–9, is again factually and legally incorrect.

The elements of wire fraud include the use of interstate wires in furtherance of the charged scheme to defraud. *Autuori*, 212 F.3d at 115. The Superseding Indictment alleges that Bradley "did knowingly transmit and cause to transmitted, by means of wire communications in interstate and foreign commerce, certain writings and signals," which are then set forth with specificity as Counts Two through Six. Sup. Ind. ¶ 89. As above, an indictment may validly allege this element of the charged offense in conclusory terms. *Hamling*, 418 U.S. at 117; *Alfonso*, 143 F.3d at 776.

While Bradley argues that "[t]he Second Circuit demands clear allegations of interstate transmission," Mot. at 8, none of his cited cases support that extreme claim (or were even authored by the Second Circuit). For example, although Bradley relies directly on the district court case of *United States v. Teicher & Co. L.P.*, 726 F. Supp. 1424 (S.D.N.Y. 1989), the page he cites merely explains that court's rationale for refusing to dismiss securities fraud charges on the grounds that allegedly misappropriated information was immaterial, *id.* at 1432. While the decision later dismissed a wire fraud count because the charged phone call was, according to the pleadings, made for the purpose of an after-the-fact cover up rather than in furtherance of the scheme, *id.* at 1435,

the court did not opine on the specificity of the interstate nature of the wire allegations themselves.[3] Bradley is likewise wrong to rely on the Third Circuit decision in *United States v. DeLaurentis*, 230 F.3d 659 (3d Cir. 2000), which wholly contradicts his argument. *Id.* at 661 ("The charges set forth in the two dismissed counts substantially track the language of the statute; the indictment is sufficient on its face."). Bradley is similarly wrong to cite the First Circuit's decision in *United States v. McLellan*, 959 F.3d 442 (1st Cir. 2020), which addresses the seemingly irrelevant question of whether that defendant committed his wire fraud domestically or extraterritorially. *Id.* at 467–471.

The Court should therefore reject Bradley's motion to dismiss because the Superseding Indictment sufficiently pleads the use of interstate wires.

### E. The Indictment Raises No Federalism Concerns

Bradley's fifth and final ground for dismissal, that the Superseding Indictment "intrudes on Connecticut's authority to enforce its election laws," Mot. at 9 (citing *DeFilippo*), is unsupported by caselaw or logic.

The Superseding Indictment charges Bradley with fraud—that is, theft by trick—aimed at campaign funds. Sup. Ind. ¶¶ 30–31. Although Bradley's alleged financial fraud happened to take place in the context of a state election, the wire fraud charges are unrelated to the election's conduct; in other words, Bradley's scheme to steal money from the State is not alleged to have affected the election processes that the State regulates, such as registering candidates and voters, absentee balloting, conducting primaries and general elections, counting and tabulating votes, or certifying results. Instead, the object of the charged scheme was money or property, as is true in

---

[3] At any rate, Bradley has not challenged the allegation that the charged wires were in furtherance of his scheme.

all wire fraud cases regardless of whether the victim is a state, federal or local government, or an entirely private actor.

The financial object of the fraud alleged in this case distinguishes it from the cases that Bradley cites. For instance, in *DeFilippo*, 685 F. Supp. 3d at 133, the defendant was charged with a civil right violation for stealing votes.[4] Likewise, in *Kelly v. United States*, 590 U.S. at 398–399, 403, and *McNally v. United States*, 483 U.S. 350, 360 (1987), the alleged fraud implicated matters of ethics or good government, rather than primarily money. And in *Bond v. United States*, 572 U.S. 844, 848 (2014), the Supreme Court rejected the application of a federal chemical weapons statute to the use of locally regulated, commercially available chemicals by a jilted lover against her romantic rival.

Bradley's citation to those non-fraud cases lays bare that his flawed argument is based on a misunderstanding of what he is charged with. He claims that his "alleged conduct" was "violating state campaign finance rules." Mot. at 9. Were that true on its own, the Government obviously could not have charged Bradley with a federal offense. But, as discussed at length above, he is charged with wire fraud, that is, using interstate wires in furtherance of a scheme to defraud a victim (here, the State) out of money. Many of Bradley's alleged lies in this case were about his CEP qualifications, including regarding how much of his own money he had spent on campaign expenses, which facts were material to his eligibility for state grants. But the analysis would have been no different if he had lied to a non-state actor to induce payment of money to which Bradley was not entitled. Thus, federalism concerns are easily resolved by satisfaction of the jurisdictional element of wire fraud, that is, the use of interstate wires. *See United States v.*

---

[4] Even in that case, dismissal did not rest on the rationale that the federal government's prosecution intruded on Connecticut's election regulation authority. *DeFilippo*, 685 F. Supp. 3d at 138–139, 142.

*DiFiore*, 720 F.2d 757, 762 (2d Cir. 1983) ("[Section 1343] plainly applies to 'any scheme or artifice to defraud' in which the jurisdictional means—the wires—are employed. Its focus is upon the misuse of the wires, not the regulation of state affairs. Congress clearly has the authority to regulate such misuse. In short, principals of federalism do not provide a basis for reversal." (cleaned up)); *United States v. Corey*, 566 F.2d 429, 430–31 & n.2 (2d Cir.1977) (holding in wire and mail fraud case that claim of improper federal jurisdiction over essentially a state offense is "wholly without merit" and "frivolous"). That Bradley's victim is the State is of no moment and federalism concerns offer Bradley no harbor.

Bradley's argument is also illogical. If it were true, federal prosecutions could not incidentally involve most election activities, as those are largely regulated by the states. *See United States v. Smilowitz*, 974 F.3d 155, 159 (2d Cir. 2020) ("Congress must not encroach on the states' authority to regulate their own electoral processes."); U.S. Const. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."). Because Connecticut regulates voting, voter registration, and absentee balloting in state elections—applying Bradley's reasoning—a defendant who conducted a terrorist attack on a polling place, sold narcotics at a voter registration event, or who was a felon in possession of a firearm while distributing absentee ballot applications could not be federally prosecuted, as doing so would "intrude[] on Connecticut's authority to enforce its election laws." Mot. at 9. Obviously, that is not the law, as demonstrated by successful federal fraud prosecutions of defendants who stole election campaign funds in state and locally regulated elections. *See, e.g.*, *United States v. Reed*, 908 F.3d 102, 109–113 (5th Cir. 2018) (upholding conspiracy, mail fraud, and wire fraud convictions for theft of campaign funds in

election for district attorney); *United States v. Henningsen*, 387 F.3d 585, 589–591 (7th Cir. 2004) (upholding mail fraud conviction for theft of campaign funds in election for city alderman).

The Court should therefore reject Bradley's motion to dismiss because the Superseding Indictment does not violate principles of federalism.

## IV.   CONCLUSION

Bradley has failed to raise any meritorious arguments for dismissal. Accordingly, the Court should deny his motion.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

_____/s/_____
JONATHAN N. FRANCIS
Federal Bar No. phv05083
jonathan.francis@usdoj.gov
DAVID E. NOVICK
Federal Bar No. phv02874
david.novick@usdoj.gov
ASSISTANT U.S. ATTORNEYS
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY