# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DENNIS BRADLEY, JR. | No. 3:21-cr-00087 (VAB) |

## RULING AND ORDER ON MOTIONS TO DISMISS INDICTMENT AND MOTION IN LIMINE

Dennis A. Bradley, Jr. ("Defendant") has been charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and five counts of wire fraud in violation of 18 U.S.C. § 1343. *See* Superseding Indictment, ECF No. 50 (May 4, 2022) ("Superseding Indictment").

In advance of trial, Mr. Bradley has moved to dismiss the Indictment in its entirety, or, in the alternative, to strike portions that he argues fail to state an offense under federal law. Mot. to Dismiss Indictment, ECF No. 282 (Apr. 16, 2025) ("MTD"). He later filed two additional motions to dismiss, the first specific to Count Two of the Indictment and the second specific to Counts Three, Four, and Six. Mot. to Dismiss Count 2 of the Superseding Indictment, ECF No. 321 (Nov. 19, 2025) ("MTD Count Two"); Mot. to Dismiss Counts Three, Four, and Six of Indictment for Lack of Interstate Transmission, ECF No. 324 (Nov. 23, 2025) ("MTD Counts Three, Four, Six").

.

Mr. Bradley has also filed a motion *in limine* under Federal Rules of Evidence 401, 402, and 403 to exclude certain evidence related to the contribution forms obtained at the March 15, 2018, Dolphin's Cove Event. Mot. in Lim., ECF No. 320 (Nov. 18, 2025) ("Mot. in Lim.").

For the reasons explained below, Mr. Bradley's three motions to dismiss the Indictment are **DENIED** and his motion *in limine* is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

This case concerns former Connecticut State Senator Dennis Bradley, who allegedly entered into a conspiracy and scheme to defraud the Connecticut State Election Enforcement Commission ("SEEC"), the Citizens' Election Fund ("CEF"), and the State of Connecticut by making misrepresentations concerning Mr. Bradley's compliance with state election law and the Citizens' Election Program's ("CEP") statutory restrictions and requirements in order to fraudulently obtain or attempt to obtain $179,850 in campaign grants.

Mr. Bradley ran as a Democratic candidate in the 2018 Connecticut State Senate race for the 23rd Senate District. Mr. Bradley is also an attorney who, until 2016, was working at Bradley Law Group, after which he became a partner in the law firm of Bradley, Denkovich & Karayiannis, P.C., also known as BDK Law Group ("BDK"). Superseding Indictment at 1.

In February 2018, Mr. Bradley began his 2018 State Senate campaign. *Id.* at 7. Chapters 155 and 157 of the Connecticut General Statutes impose legal restrictions and requirements on political candidates and their campaigns. *Id.* at 2. Relevantly, under Chapter 157, Sections 9-702(c) and 710(c), a State Senate candidate seeking a CEP grant could contribute no more than $2,000 of personal funds to his own campaign, or risk eligibility for the grant. *Id.* at 4.

Around February 21, 2018, Mr. Bradley allegedly began planning an event at Dolphin's Cove, a restaurant in Bridgeport. *Id.* at 8. Mr. Bradley allegedly communicated in text messages with various campaign staffers that the party was a BDK Law Group party, but allegedly also intended to announce his campaign for State Senator at the party. *Id.*

Between February 22, 2018, and March 15, 2018, Mr. Bradley allegedly communicated and coordinated with his campaign staffers to plan the event at Dolphin's Cove. In those communications, Mr. Bradley's campaign staff allegedly planned to collect donations at the event. *Id.* at 9-10. Mr. Bradley allegedly requested that his campaign website and e-payment platform be ready by the date of the event. *Id.* at 9. A local political website ran an article stating that Mr. Bradley intended to announce his candidacy at the event, and Mr. Bradley allegedly provided a statement for the article. *Id.* at 10. His staff posted the invitation on his campaign's Facebook page. *Id.* Mr. Bradley stated by text message, "People give me money I'm taking it [.]" *Id.* at 12.

For the event at Dolphin's Cove, Mr. Bradley allegedly spent personal funds in excess of the $2,000 limit imposed by state statutes to qualify for a CEP grant. *Id.* at 3; 7. Mr. Bradley allegedly used his personal funds to pay $5,597.31 to Dolphin's Cove for the alleged campaign event. *Id.* at 7. Specifically, Mr. Bradley allegedly paid Dolphin's Cove $2000 for an open bar and $15 per attendee for food, with an expected attendance of 150 guests. *Id.* He also allegedly used his personal funds to pay $110.07 to Midnight Printing LLC for invitations. *Id.* at 10. He allegedly used his personal funds to pay $600 to a local band to perform at the event. *Id.* at 11.

At the Dolphin's Cove event, Mr. Bradley announced his candidacy, and his campaign staff allegedly solicited campaign contributions with Mr. Bradley's alleged consent. *Id.* at 12. Mr. Bradley allegedly received contributions from at least eight individuals, and each

contribution card was allegedly dated March 15, 2018. *Id.* The contributions allegedly totaled $430. *Id.* With Mr. Bradley's alleged knowledge and approval, his campaign staff allegedly altered and falsified the dates on the contribution cards to allegedly conceal that the Dolphin's Cove event was a campaign event paid for by Mr. Bradley's personal funds. *Id.* With Mr. Bradley's alleged approval, his campaign staff allegedly made filings with SEEC containing the incorrect dates from the allegedly altered or falsified contribution cards. *Id.*

On April 10, 2018, Mr. Bradley's campaign filed two Itemized Campaign Finance Disclosure Statements with SEEC. In those filings, Mr. Bradley omitted the event at Dolphin's Cove and the accompanying expenses, omitted that Mr. Bradley had accepted multiple qualifying contributions at the event, and misrepresented the dates on which those contributions were received. *Id.* at 14.

On May 24, 2018, Mr. Bradley and Jessica Martinez, his campaign's treasurer, applied for a CEP grant to fund Mr. Bradley's primary campaign. In the "Candidate Certification" section of the affidavit, Mr. Bradley signed that he understood the eligibility requirements as set out in statute, and affirmed that he had been compliant thus far. *Id.* at 14-15.

Between April 10, 2018, and June 8, 2018, The next day, Mr. Bradley filed four Itemized Campaign Finance Disclosure Statement covering March 15, all of which omitted the Dolphin's Cove event. *Id.* at 19.

On July 10, 2018, the SEEC issued Mr. Bradley a CEP primary grant in the amount of $84,140. *Id.*

After issuing the primary grant, SEEC began investigating a citizen complaint it received on June 29, 2018, regarding the Dolphin's Cove event.  *Id.*

On or about August 14, 2018, Mr. Bradley won the Democratic primary with approximately 55% of the vote. *Id.*

On August 21, 2018, Mr. Bradley sent a letter to the SEEC denying the allegations in the citizen complaint. *Id.* at 19-20.

On or about August 28, 2018, Mr. Bradley and Ms. Martinez attempted to obtain an additional $95,710 CEP grant to fund Mr. Bradley's general election campaign, but on October 19, 2018, SEEC denied the application. *Id.* at 20-21.

On November 6, 2018, Mr. Bradley won the general election with approximately 87% of the vote. Mr. Bradley was subsequently re-elected in 2020. *Id.* at 6.

### B.  Procedural History

On May 24, 2021, a grand jury returned an Indictment against Mr. Bradley and Ms. Martinez, charging Mr. Bradley with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and five counts of wire fraud in violation of 18 U.S.C. § 1343. *See* Indictment, ECF No. 1 (May 24, 2021). On May 4, 2022, a grand jury returned a Superseding Indictment charging Mr. Bradley with the same. *See* Superseding Indictment.

On May 2, 2022, parties indicated in a pre-trial conference that they were ready for trial, and the Court scheduled a final pre-trial conference for May 25, 2022, with jury selection to begin on May 31, 2022, and trial to begin immediately thereafter. Order, ECF No. 47 (May 2, 2022).

On May 24, 2022, the Government conducted a second interview with the videographers from the Dolphin's Cove event, who, for the first time, produced a never before seen 28-minute video from the event.

The following morning, on May 25, 2022, the Court held a final pre-trial conference. During this conference, the Government disclosed that it had then recently learned of the 28-minute video, and produced it later that day.

On June 1, 2022, following a day of jury selection and on the eve of trial, Mr. Bradley orally moved to preclude the 28-minute video on the basis that the government had violated Federal Rule of Criminal Procedure 16 and supported his motion with briefing. The Court suspended jury selection until June 3, 2022, in order to consider the parties' arguments and held a telephonic conference on June 2, 2022, in that regard.

In the conference, the Court orally stated that the video would be precluded. Later that day, the Government filed an interlocutory appeal to challenge its exclusion. *See* Min. Entry, ECF No. 125 (June 2, 2022); Notice of Appeal, ECF No. 128 (June 2, 2022).

Following the Government's notice of interlocutory appeal, and in aid of the appeal, the Court issued a supplemental ruling and order providing greater detail regarding its order excluding the 28-minute video. Order, ECF No. 155 (July 1, 2022).

On June 18, 2024, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued an order reversing and remanding this Court's order precluding the video. Order of USCA, ECF No. 252 (June 18, 2024).

On April 4, 2025, Ms. Martinez's case was severed from Mr. Bradley's. *See* Order Granting Mot. to Continue and Mot. to Sever, ECF No. 278 (Apr. 4, 2025).

On April 16, 2025, Mr. Bradley filed a motion to dismiss the Indictment in his case. *See* MTD.

On May 7, 2025, the Government opposed the motion to dismiss the Indictment. Mem. in Opp. re Mot. to Dismiss Indictment, ECF No. 287 (May 5, 2025) ("Opp. to MTD").

On May 21, 2025, Mr. Bradley filed a reply to the Government's response. Reply in Resp., ECF No. 288 (May 21, 2025) ("Reply").

On July 29, 2025, the Court scheduled jury selection for December 1, 2025.

On November 11, 2025, Mr. Bradley filed a notice of supplemental authority and brief in support of his motion to dismiss the Superseding Indictment. Notice, ECF No. 318 (Nov. 11, 2025) ("Supp").

On November 17, 2025, the Government filed a response to Mr. Bradley's notice of supplemental authority. Response/Reply, ECF No. 319 (Nov. 17, 2025) ("Resp. to Supp.").

On November 18, 2025, the Defendant filed a motion *in limine* to exclude evidence related to the contribution forms at the Dolphin's Cove event. Mot. in Lim. to Exclude Contribution Form Evidence Relating to the Dolphin Cove March 15, 2018 Event, ECF No. 320 (Nov. 18, 2025) ("Mot in Lim.").

On November 19, 2025, Mr. Bradley filed a motion to dismiss Count Two of the Superseding Indictment for failure to state an offense. Mot. to Dismiss Count 2 of the Superseding Indictment, ECF No. 321 (Nov. 19, 2025) ("MTD Count Two").

On November 21, 2025, the Government filed a response to Mr. Bradley's motion to dismiss Count Two of the Superseding Indictment. Mem. in Opp., ECF No. 323 (Nov. 21, 2025) ("Opp. to MTD Count Two").

On November 23, 2025, Mr. Bradley filed a motion to dismiss Counts Three, Four, and Six of the Superseding Indictment. Mot. to Dismiss Counts Three, Four, and Six of Indictment for Lack of Interstate Transmission, ECF No. 324 (Nov. 23, 2025) ("MTD Counts Three, Four, Six").

At the pre-trial conference held on November 24, 2025, at the request of the Defendant, the Court continued jury selection until March 16, 2026, at 9:00 am.

## II.    STANDARD OF REVIEW

### A.  Motions to Dismiss an Indictment

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014). "It bears recalling that [the Second Circuit has] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Bout*, 731 F.3d 233, 240 (2d Cir. 2013) (emphasis and internal quotation marks omitted). "The indictment is sufficient if it 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Post*, 950 F. Supp. 2d at 527 (alteration in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (same).

However, "[a] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Litvak*, No. 3:13-CR-19 JCH, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013) (citing *Russell v. United States*, 369 U.S. 749, 764–65 (1962); *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000)). "In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *Id.* (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)). Rule 12(b) permits only pretrial motions "that the court can determine without

a trial of the general issue." Fed. R. Crim. P. 12(b)(2); *Alfonso*, 143 F.3d at 777 (2d Cir. 1998) (stating that any defense or objection which is capable of determination without the trial of the general issue may be raised by pre-trial motion)

### B. Motions *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4). A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

### III.    DISCUSSION

### A. The Motion to Dismiss the Indictment

"An indictment returned by a legally constituted and unbiased grand jury. . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). In order to be valid, the Government must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7. To satisfy this rule, "an indictment need 'do little more than to track the language of the

statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Pirro*, 212 F.3d at 92). Therefore, the Indictment will stand if it contains the "essential facts" to be upheld on a "traditional property" theory of wire fraud.

18 U.S.C. § 1343 defines wire fraud as "devis[ing] or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. . ." 18 U.S.C. § 1343.

Mr. Bradley has been indicted on one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349 and five counts of wire fraud in violation of 18 U.S.C. § 1343. The relevant portion of the Indictment reads as follows:

> BRADLEY, MARTINEZ, and their co-conspirators carried out their conspiracy in two ways. First, BRADLEY, MARTINEZ, and their co-conspirators used SEEC filings containing material misstatements and omissions to conceal that BRADLEY had violated CEP rules in order to obtain an undeserved $84,140 CEP primary grant and to attempt to obtain a $95,710 CEP general election grant. Second, BRADLEY, MARTINEZ, and their co-conspirators denied SEEC, the Citizens' Election Fund, and the State of Connecticut the right to control their assets by using such false and fraudulent documents and filings to deprive them of economically valuable information relevant to the decision of whether and how to allocate public election funds to BRADLEY.

Superseding Indictment ¶31.

Mr. Bradley moves to dismiss the Indictment in its entirety, or, in the alternative, to strike the portions of the Indictment that fail to state an offense under federal law. He makes five arguments: "(1) [the Indictment] improperly relies on an invalid "right-to-control" theory, unanimously foreclosed by the Supreme Court in *Ciminelli v. United States*, 598 U.S. 306 (2023); (2) the alleged conduct involves purely state election matters, lacking the requisite federal property interest, per *Cleveland v. United States*, 531 U.S. 12 (2000); (3) the indictment insufficiently alleges materiality under *Neder v. United States*, 527 U.S. 1 (1999); (4) it fails to adequately plead the interstate commerce element required for wire fraud; and (5) applying the wire fraud statute here raises significant federalism concerns by intruding on state sovereignty over election regulation. in his motion." MTD at 1-2.

The Court addresses each of his arguments in turn.

### i.  Inclusion of the "Right-to-Control" Theory

First, Mr. Bradley argues that the Indictment is defective because its inclusion of the right-to-control theory risks misleading the jury. At minimum, Mr. Bradley argues that the Court should "strike paragraphs like Paragraph 31" that reference the theory "and dismiss counts (*e.g.*, Counts Two through Six) that hinge on information deprivation rather than obtaining money." *Id.* at 4.

The Government responds that the Indictment actually relied on a "traditional property" theory of wire fraud since the object of the alleged fraud was money, so inclusion of the right-to-control theory does not taint the entire Indictment. Opp. to MTD at 3-4.

Mr. Bradley replies that inclusion of the right-to-control theory as one of two theories on which to indict "create[es] an impermissible risk that the grand jury indicted based on conduct that is not a crime," thereby rendering the Indictment constitutionally defective. Reply at 1. He

argues that the Second Circuit's recent decision in *Johnson v. United States* reinforces the proposition that the Indictment is fatally flawed because it relies on the invalid right-to-control theory. 144 F.4th 133 (2d Cir. 2025); *see generally* Supp.

In turn, the Government argues that *Johnson* is inapposite because, unlike in this case, both the valid and invalid theories were presented to the jury and "thus were subsumed in the general verdict." Resp. to Supp. at 1-2. Here, the Government argues that the right-to-control theory will not be presented at trial, and since the only charged object of the Defendant's scheme was money, there is no "grave doubt" that the grand jury's decision was influenced by the invalid theory. *Id.* at 2.

The Court agrees.

The Second Circuit's decision in *Johnson*, while instructive, is not applicable here. There, the issue was "whether the inclusion of the misappropriation theory in the jury instructions renders harmless the inclusion of the invalid right-to-control theory." *Johnson*, 144 F.4th at 143. And the jury's verdict could not stand because "[t]he right-to-control case . . . was the only basis upon which his conviction was previously upheld . . ." *Id.* at 145; *see also id.* at 146 ("[W]e find it highly unlikely that a reasonable jury would have reached unanimous agreement on the more complicated and contestable misappropriation theory when it had the right-to-control theory as an available alternative.").

But Mr. Bradley has not yet gone to trial, much less been convicted. Thus, there is no risk of the jury being instructed after the evidence at trial of an invalid legal theory, regardless of the language in the Indictment. *Cf. United States v. McDonough*, 56 F.3d 381, 390 (2d Cir. 1995) ("Federal pleading requires. . . that an indictment charge in the conjunctive to inform the accused

fully of the charges," but "[a] conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged.").

To survive a motion to dismiss, the Indictment need only sufficiently allege a federal crime, without relying on an invalid right-to-control theory. *See United States v. Goldberg*, 756 F.2d 749, 750 (2d Cir. 1985) (noting that a court must "accept[ ] as true all of the allegations in the indictment."). Because the federal fraud statutes "criminalize only schemes to deprive people of traditional property interests," *Ciminelli*, 598 U.S. at 309 (citing *Cleveland*, 531 U.S. at 24), there must be allegations that the criminal defendant not only "engaged in deception," but also that a traditional property interest was "an object of their fraud." 18 U.S.C. § 1343; *see Kelly v. United States*, 590 U.S. 391, 400 (2020) ("[A] defendant commits wire fraud only if his scheme 'aimed to deprive' the victim of a traditional property interest."). These traditional property interests include money and property. *See Kousisis v. United States*, 605 U.S. 114, 133 (2025) ("No matter the underlying theory of fraud, § 1343 requires that 'money or property' have been an object of the fraudster's scheme."). This Indictment easily meets that standard.

Here, Mr. Bradley allegedly engaged in deception, and a traditional property interest, money, was the object of his fraud. He allegedly "willfully and knowingly" conspired to commit wire fraud with Ms. Martinez, Superseding Indictment at ¶29. He allegedly "used personal funds to pay for the Dolphine's Cove campaign event." *Id.* at ¶79. He allegedly made "material misrepresentations" to state agencies, *id.* at ¶30, by misstating and omitting information related to the Dolphin's Cove event. *Id.* at ¶63. He allegedly received a $84,140 CEP primary grant. *Id.* at ¶80. He allegedly applied for a $95,710 CEP general election grant. *Id.* at ¶84. And the object of the alleged conspiracy was $179,850 in CEP grants. *Id.* at ¶1.

Accordingly, the Indictment will not be dismissed on these grounds.

### ii.  Federal Property Interest

Second, Mr. Bradley argues that because the alleged scheme targets a state regulatory program, the Indictment must allege a sufficient federal property interest. MTD at 4. He points to *Cleveland v. United States*, in which the Supreme Court held that state-issued video poker licenses were not "property" for purposes of the federal fraud statutes. 531 U.S. 12, 18–20 (2000). Because the Citizens' Election Fund is a state program with the purpose of promoting fair state elections, Mr. Bradley argues, the grant program is regulatory in nature, "aimed at ensuring election integrity rather than proprietary ownership until misappropriated through traditional theft." MTD at 5 (quoting *Cleveland*, 531 U.S. at 26-27). In further support, Mr. Bradley argues that the origin of the Citizens' Election Fund, namely proceeds of the sale of abandoned property in the state's custody, attenuates the state's proprietary interest in the grant money. *Id.* at 5-6.

The Government responds that the Indictment need not allege a federal property right, only that the grant funds constitute "money or property." Opp. to MTD at 5-6. The Government argues that the licenses at issue in *Cleveland* enforced a regulatory interest, whereas the CEP grant here "was literal 'money' in the hands of the State," regardless of the origins of that money. Opp. to MTD at 7-9.

In his reply, Mr. Bradley restates his argument that the CEP grants do not constitute "property" under the federal wire fraud statutes, since the disbursements serve a regulatory purpose related to fair administration of state elections. Reply at 5.

The Court disagrees.

"[A] defendant commits wire fraud only if his scheme 'aimed to deprive' the victim of a traditional property interest." *Kelly*, 590 U.S. at 400. This property interest need not be "federal" in nature. The CEP grants were disbursed to candidates as tangible money. While it is true that the CEP grant program had the express purpose of "provid[ing] clean elections financing to qualified candidates for statewide offices and the General Assembly," that purpose does not make the grants regulatory in nature. *Welcome to the Citizens' Election Program*, State of Connecticut State Elections Enforcement Commission, https://seec.ct.gov/Portal/work (last accessed Nov. 21, 2025 at 11:10AM).

Here, Mr. Bradley's alleged motivation was "to induce the Government into a transfer of its money or property," making that loss "sufficient to sustain a fraud conviction." *Kousisis v. United States*, 605 U.S. 114, 133 (2025) ("The loss is not, as petitioners argue, a mere 'incidental byproduct' of a scheme to manipulate the exercise of regulatory power. If anything, the inverse is typically true: In the mine run of fraudulent-inducement schemes, undermining the Government's regulatory interests is merely 'an incidental (even if foreseen) byproduct' of obtaining its money or property. Here, for example, Alpha and Kousisis had money in mind. Nothing suggests that they concocted their scheme with the goal of thwarting PennDOT's disadvantaged-business initiative. Such a result was downstream of their 'object' to line their pockets.") (internal citations omitted).

Accordingly, the Indictment will not be dismissed on these grounds.

### iii. Materiality Element

Third, Mr. Bradley argues that the Indictment fails to sufficiently allege that Mr. Bradley's misrepresentations influenced the SEEC's decision to approve and disburse the primary grant, as is necessary to allege materiality under the wire fraud statutes. *Id.* at 7; *see also*

*Neder v. United States*, 527 U.S. 1, 16 (1999) (defining materiality as having "a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body.").

The Government responds that the materiality element for wire fraud "is a mixed question of law or fact best decided by a jury," so a "challenge to the Government's evidence supporting an element of a charged crime is not proper grounds for a motion to dismiss and must be resolved at trial." *Id.* at 9-10; *see also United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."). Furthermore, the Government argues that conclusory allegations of the elements of the charged offense suffice at this stage. Opp. to MTD at 10; *see also Alfonso*, 143 F.3d at 776 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (cleaned up).

The Court agrees.

The element of materiality provides "the principled basis for distinguishing everyday misstatements from actionable fraud." *Kousisis*, 605 U.S. at 131. Materiality resembles a "but-for" standard, asking whether the misrepresentation "constituted an inducement or motive to enter into a transaction." *Id.* (cleaned up). In other words, "a misrepresentation is material if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citations omitted).

The Indictment states that in order to obtain a CEP grant, the candidate must meet certain eligibility requirements. Under Sections 9-702(c) and 710(c) of Connecticut state law, "a State Senate candidate seeking a CEP grant could contribute no more than $2,000 of personal funds to his own campaign. Under Section 9-711(a), candidates who exceeded that $2,000 limit were

subject to disqualification from receiving any CEP grants at all." Superseding Indictment at ¶16. In order to verify eligibility, the candidate must submit to the SEEC various forms, certified or sworn under penalties of false statements, stating that no more than $2,000 of the candidate's personal funds were used for campaign expenses. *Id.* at ¶17.

Here, the Indictment sufficiently alleges that Mr. Bradley exceeded the $2,000 limit on personal expenditures, and that he, along with Ms. Martinez, omitted this information in their filings to the SEEC. *Id.* at ¶31; 34. But for Mr. Bradley's alleged personal expenditures and filing omissions, he would have been ineligible for and would not have received $84,140 in CEP primary grant money.

As a result, the Government has sufficiently alleged materiality. Any doubt regarding materiality is a question reserved for the jury. *See United States v. Litvak*, 808 F.3d 160, 177–78 (2d Cir. 2015) ("[W]e therefore conclude that the District Court appropriately left this issue, a mixed question of law and fact, for the jury to determine.").

Accordingly, the Indictment will not be dismissed on these grounds.

### iv.   Interstate Commerce Element

Fourth, Mr. Bradley argues that the Indictment fails to sufficiently allege the interstate element of the wire fraud statute. MTD at 8-9. He argues that the Indictment fails to specify whether the alleged wire communications, including text messages, crossed state lines. *Id.* at 8.

The Government responds that the interstate element of the wire fraud charge is satisfied because the Indictment sufficiently "allege[s] this element of the charged offense in conclusory terms." Opp. to MTD at 11; citing *Alfonso*, 143.3d at 776 and *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The Court agrees.

17

The interstate commerce element is a jurisdictional requirement for federal wire fraud. *See McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) (stating that interstate commerce is a "jurisdictional prerequisite for invocation of the wire fraud statute. . ."). The Indictment identifies five alleged uses of interstate wires to support claims of wire fraud, namely: (1) "BRADLEY's text message to campaign staff, instructing approx. 3:29 p.m. Manus to bring contribution cards to the March 15 campaign event at Dolphin's Cove April 10, 2018," (2) "BRADLEY's original Itemized Campaign Finance Disclosure Statement covering March 15, 2018 and containing false statements and omissions, electronically posted on eCRIS May 24, 2018," (3) "CEP Affidavit seeking a CEP primary grant and containing statements falsely sworn to and certified by BRADLEY and MARTINEZ, electronically posted on eCRIS August 21, 2018," (4) "BRADLEY's email to SEEC attaching his letter containing false statements August 28, 2018, and (5) "BRADLEY's Primary to General Election 'Carry Forward' Form, which fraudulently triggered consideration of a $95,710 CEP general election grant, electronically posted on eCRIS." Superseding Indictment at ¶89.

Where all parties are residents of the same state, all telephone calls are presumed to be intrastate, and the jurisdictional requirement for wire fraud will not be met. *See McCoy*, 748 F. Supp. at 154 (collecting cases). Other uses of wires, however, are not treated similarly. For example, "it is possible for a wire communication whose origin and ultimate destination are within a single state to be routed through another state." *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 264–65 (2d Cir. 2004), *rev'd in part, vacated in part on other grounds*, 547 U.S. 451, (2006). Additionally, a defendant need not know that its wire communication traveled through interstate commerce in order for 18 U.S.C. § 1343 to apply. *See United States v. Blassingame*, 427 F.2d 329, 330 (2d Cir. 1970).

The uses of interstate wires alleged in the Indictment include text messages, emails, and electronic filings. These uses are not presumptively intrastate. *See Ideal Steel Supply Corp.*, 373 F.3d at 264–65. And "the question of whether [Plaintiff] will be able to prove that pertinent wire communications by defendants traveled interstate is a matter for trial, not for resolution on a motion pursuant to Rule 12(b)(6)." *Id.* at 265.

Accordingly, the Indictment will not be dismissed on these grounds.

### v. Federalism Concerns

Fifth, Mr. Bradley argues that the Indictment should be dismissed because "[p]rosecuting state election matters via the federal wire fraud statute raises significant federalism concerns." MTD at 9. He cites to the Supreme Court's decision in *McNally v. United States* to argue that "federal fraud statutes should not broadly encompass state regulatory matters, particularly without tangible losses of money or property." 483 U.S. 350, 360 (1987); MTD at 9. Because the alleged conduct here involves violation of state campaign finance rules, he argues that the Indictment does not allege the requisite federal interest to justify application of the federal wire fraud statutes. MTD at 9.

The Government responds that the Indictment raises no federalism concerns, since the wire fraud charges are unrelated to the election processes that the State regulates. Opp. to MTD at 12. The Government also argues that the financial object of the fraud allegation distinguishes it from the cases Mr. Bradley cites in his motion to dismiss. *Id.* at 13.

The Court agrees.

"[A]bsent a clear statement by Congress, courts should not read the mail and wire fraud statutes to place under federal superintendence a vast array of conduct traditionally policed by the States." *Ciminelli*, 598 U.S. at 315–16 (citing *Cleveland*, 531 U.S. at 27) (cleaned up). Where

a traditional property interest is the object of the fraud, however, the wire fraud statutes are squarely applicable. *Id.* at 316. Further, the alleged scheme does not concern conduct traditionally policed by the states, but rather fraud using interstate wires. There is no basis for this Court – at least, at this stage of the case and on this record – to conclude that this federal prosecution will interfere with the State of Connecticut's administration of its local elections, given the alleged use of interstate wires to defraud Connecticut of money in the form of a grant.

Accordingly, the Indictment will not be dismissed on these grounds.

### B. The Motion to Dismiss Count Two of the Superseding Indictment

Mr. Bradley filed a separate motion to dismiss Count Two of the Superseding Indictment. MTD Count Two. Count Two of the Superseding Indictment charges Mr. Bradley with wire fraud for a text message he sent to his campaign staff on the day of the Dolphin's Cove event, instructing a staffer to bring contribution cards to the event.

In his motion, Mr. Bradley argues that this alleged text message was a "non-deceptive, internal campaign logistics communication that neither sought nor furthered the obtaining of State money or property" and therefore "it is not a wire 'for the purpose of executing' a § 1343 offense."

Mr. Bradley argues that the text message lacks a close nexus to the alleged crime, since "allegedly asking staff to have donor forms at an alleged fundraising event is not an 'essential step' in deceiving SEEC into releasing funds." *Id.* at 4; *see also Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (stating that for federal mail fraud statute, "the use of the mails need not be an essential element of the scheme." Rather, "[i]t is sufficient for the mailing to be 'incident to an essential part of the scheme or a step in the plot'" (cleaned up)).

Mr. Bradley further argues that because the text message was neither directed to nor received by the alleged victim, the SEEC, it is a third-party communication that is not incident to an essential part of executing the scheme. MTD Count Two at 4-5. He also states that the alleged text is "temporally and logically remote from the alleged property deprivation" because "[i]t occurred before Mr. Bradley even announced his candidacy at the Dolphin's Cove event that evening, and before the candidate committee was formed on March 17, 2028." *Id.* at 5 (internal citations omitted). Because the alleged text concerned lawful activity, and the alleged deceptive scheme only occurred later when the Defendant allegedly filed false documents with the SEEC, Mr. Bradley argues that Count Two fails to sufficiently allege materiality and must be dismissed. *Id.* at 6.

The Government responds that the allegation directly tracks the statute, and such conclusory allegations of the elements suffice under Federal Rule of Criminal Procedure 7. Opp. to MTD Count Two at 3. Additionally, the Government argues that any factual challenges to the materiality of the particular wiring to the charged scheme is an inappropriate ground for a pre-trial motion to dismiss, and must be assessed after the Government has presented its evidence at trial. *Id.* at 3-4.

The Court agrees.

As discussed above, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776 (cleaned up). Additionally, any doubt regarding materiality is a question reserved for the jury. *See United States v. Litvak*, 808 F.3d at 177–78.

Accordingly, Mr. Bradley's motion to dismiss Count Two of the Superseding Indictment will be denied.

### C. The Motion to Dismiss Counts Three, Four, and Six of the Superseding Indictment

Mr. Bradley filed a third motion to dismiss targeted at Counts Three, Four, and Six of the Superseding Indictment. MTD Counts Three, Four, Six. In this motion, Mr. Bradley reasserts many of the same arguments from his first motion to dismiss. First, Mr. Bradley argues that the Indictment does not sufficiently allege the interstate element of wire fraud, supported by a declaration from a former SEEC IT professional Mann Hasen. Hasen Decl., ECF No. 324-1 (Nov. 23, 2025). In his declaration, Hasen states that "[w]hen a user submits a filing through eCRIS from a computer located within Connecticut, the transmission occurs entirely within the state." *Id.* ¶4. Relying on this declaration to show no interstate use of wires, Mr. Bradley argues that this Court should dismiss Counts Three, Four, and Six of the Superseding Indictment, and strike the corresponding allegations mentioned in Count One. MTD Counts Three, Four, Six at 9.

The Court disagrees.

As discussed above, however, "[a] defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d at 561. At the motion to dismiss stage, the Court "accept[s] as true all of the allegations of the indictment." *United States v. Goldberg*, 756 F.2d at 950. And all that is required to satisfy the liberal pleading standard are conclusory allegations that merely "track the language of the statute." *Alfonso*, 143.3d at 776; *Hamling*, 418 U.S. at 117; *United States v. Bout*, 731 F.3d at 240.

The Government has satisfied this pleading standard. *See supra* Section III(A)(iv). And "the question of whether [the Government] will be able to prove that pertinent wire

communications by defendants traveled interstate is a matter for trial, not for resolution on a motion pursuant to Rule 12(b)(6)." *Ideal Steel Supply Corp.*, 373 F.3d at 265.

Accordingly, Mr. Bradley's motion to dismiss Counts Three, Four, and Six of the Superseding Indictment will be denied.

### D.  The Motion *in Limine* to Exclude Evidence Regarding Contribution Cards

On November 18, 2025, Mr. Bradley filed a motion *in limine* to exclude evidence concerning the contribution forms collected at the March 15, 2018, Dolphin's Cove event and any allegations that the dates on those forms were altered or inaccurately reported to state election agencies. *See* Mot. in Lim.

First, he argues that, under Connecticut law, the handwritten dates on the contribution cards are not important to the SEEC's qualifying contribution analysis, as long as the contributions were made within the ten-day campaign registration window. *Id.* at 4; *see also* Conn. Gen. Stat. § 9-704(a)(3). "Because the handwritten date plays no role in CEP eligibility or grant determinations," Mr. Bradley argues, "it is not a 'fact of consequence' under Rule 401" of the Federal Rules of Evidence and is inadmissible under Rule 402. Mot. in Lim. at 5.

Second, Mr. Bradley argues that Federal Rule of Evidence 403 independently requires exclusion of this evidence because "the risk of unfair prejudice is substantial." Mot. in Lim. at 7. The Defendant argues that even if the handwritten dates are relevant under Connecticut election statutes, the date "carries no legal effect" and "cannot prove materiality or any other element of federal wire fraud." Mot. in Lim. at 5-6 (citing *Neder*, 527 U.S. 1). Additionally, Mr. Bradley argues that the allegation that the dates were "altered, changed, and falsified carries a strong insinuation of deceit" which "invites the jury to equate benign clerical variations with federal criminal conduct." *Id.* (cleaned up).

The Court disagrees.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Litvak*, 808 F.3d 160, 179–80 (2d Cir. 2015) (quoting *United States v. Abu–Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010)). And "the definition of relevance under Fed. R. Evid. 401 is very broad." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014); *see also United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (explaining that Rule 401 prescribes a "very low standard").

The Government does not suggest that the dates are relevant to the SEEC's qualifying contribution analysis under Section 9-704(a)(3) of the Connecticut General Statutes. Rather, the alleged dates on the contribution cards and any actions Mr. Bradley and his staff allegedly took to change those dates are relevant to Mr. Bradley's alleged devise or intent to devise a scheme to allegedly defraud the state of CEP grant funds.

Under Sections 9-702(c) and 710(c) of the Connecticut General Statutes, a State Senate candidate seeking a CEP grant may contribute no more than $2,000 of personal funds to his own campaign. Conn. Gen. Stat. § 9-702, 9-710(c). Under Section 9-711(a), a candidate who exceeds the $2,000 limit is subject to penalties, including disqualification from receiving CEP grants entirely. *Id.* at § 9-711(a).

The federal wire fraud statute, 18 U.S.C. § 1343, defines the offense as "devis[ing] or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign

commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. . ." 18 U.S.C. § 1343.

Evidence of knowledge of or intent to engage in a wire fraud scheme is a critical element of the offense. Mr. Bradley's alleged acceptance of contributions at the Dolphin's Cove event is relevant to whether the Dolphin's Cove event was a campaign event, at which Bradley spent more than $2,000 of his personal funds, which arguably would disqualify him from receiving any CEP grants under Section 9-711(a). Therefore, the dates on the contribution cards and any allegations that these dates were altered are relevant to whether there was a scheme to defraud, an element of wire fraud. *See* Fed. R. Evid. 401; *see also* 18 U.S.C. ¶ 1343. The proposed evidence thus meets the "very low standard" prescribed by Rule 401, and is generally admissible, unless an exception applies. *See United States v. White,* 692 F.3d at 246; *see also* Fed. R. Evid. 402.

Under Federal Rule of Evidence 403, the Court must exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury," among other concerns. Fed. R. Evid. 403. "But the district court retains broad discretion to balance the evidence's potential prejudice to the defendant against its probative value." *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (citing *United States v. McDermott,* 245 F.3d 133, 140 (2d Cir. 2001). "For this reason, when [the Second Circuit] reviews the district court's judgment regarding the admissibility of a particular piece of evidence under Fed. R. Evid. 403, [it] generally maximizes its probative value and minimizes its prejudicial effect." *Id.* (quoting *United States v. McDermott*, 245 F.3d at 140) (cleaned up).

Here, Mr. Bradley argues that the Indictment's description of the alleged conduct will result in unfair prejudice by "invit[ing] the jury to equate benign clerical variations with federal criminal conduct." Mot in Lim at 7. He argues that "[t]he Government's language— 'altered,' 'changed,' 'falsified' —carries a strong insinuation of deceit where the law recognizes none." *Id.* But evidence of Mr. Bradley's alleged knowledge of or intent to engage in a scheme is probative of a critical element of the wire fraud offense. *See* 18 U.S.C. § 1343; *see also United States v. Downing*, 297 F.3d at 59 (finding that the district court did not abuse its discretion by admitting evidence of one Defendant's knowledge of and intent to participate in wire fraud scheme over a Rule 403 objection). The Indictment's language therefore does not improperly "insinuat[e] [] deceit where the law recognizes none." Mot. in Lim. at 7.[1]

Accordingly, Mr. Bradley's motion *in limine* will be denied.

## IV.    CONCLUSION

For the foregoing reasons, all three motions to dismiss the Indictment are **DENIED** and the motion *in limine* is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 12th day of December, 2025.

/s/ Victor A. Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE

---

[1] In any event, under the Court's customary practice, the jury will not be provided with a copy of either the Indictment or the Superseding Indictment.