**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

**UNITED STATES OF AMERICA,**

    *Plaintiff*

*vs*.                                                              **No. 3:21-cr-00087 (VAB)**

**DENNIS A. BRADLEY, JR.**

    *Defendant*

---

## MOTION TO REQUIRE WITNESS ORDER DISCLOSURE AND LIMIT TEXT MESSAGE EVIDENCE TO IDENTIFIED EXHIBITS

Dennis Bradley asks the Court to order the Government to disclose the order it will call its witnesses and to confirm that it will not introduce text messages beyond those identified in its November 24, 2025 exhibit list.

### 1. Introduction: Fifty Witnesses, Thousands of Messages

The Government lists 33 possible witnesses. We list 20. Without knowing who testifies when, we must bring materials for every witness every day of what will be a multi-week trial. That's impractical and unfair.

The Government has identified approximately 18 exhibits (of text messages) in its November 24, 2025 exhibit list, covering roughly 92 pages of messages. We have reviewed these exhibits and prepared our objections and defenses accordingly. But the Government produced thousands of pages of text messages in discovery. We need confirmation that the Government will limit its text message evidence to the exhibits it has identified, except for proper rebuttal or

1

impeachment purposes. Without that confirmation, we cannot know whether we've adequately prepared.

## 2. The Witness Problem

The Government lists 15 witnesses it "intends" to call and 18 it "may" call. Each witness needs different preparation. For SEEC witnesses, we must review Connecticut election materials, SEEC regulations, the Bradley campaign's filings, and communications between SEEC and the campaign. For campaign volunteers, we must review their prior statements, text messages, and any documents they may have created. For FBI agents, we must review their reports, the chain of custody for evidence, and any technical procedures they followed. Preparing for 50-plus witnesses simultaneously is not feasible for even the most diligent counsel.

The physical logistics are also daunting. We must transport to court each day prior materials and statements of every potential witness for impeachment, exhibits that may be relevant to each witness's testimony, cross-examination outlines and notes, legal authorities on admissibility of various types of anticipated testimony, and reference materials for each witness.

For 50-plus witnesses, this amounts to boxes or rolling cases of materials that must be sorted through to find the right documents when a witness is called—creating delays and inefficiency.

Strategic disadvantage compounds these problems. The Government knows its case presentation strategy. It knows whether it will call SEEC witnesses first to establish a timeline, or campaign volunteers first to establish the factual narrative, or FBI agents first to authenticate documents. We operate in the dark, unable to anticipate how the case will unfold or prepare accordingly. This asymmetry is fundamentally unfair.

We also cannot secure defense witnesses effectively. If we don't know when the

Government's case will conclude or when specific Government witnesses will testify, we cannot effectively schedule rebuttal witnesses or coordinate availability of our own witnesses. This is particularly problematic for witnesses who must travel to Connecticut or take time from work.

### 3.  The Text Message Problem

The Government produced thousands of pages of text messages in discovery. The messages appear in multiple places throughout the discovery materials. On November 24, 2025, the Government furnished its trial exhibit list identifying approximately 18 text message exhibits covering roughly 92 pages.

We have reviewed these exhibits and prepared our responses and objections. But the Government has not confirmed that these are the *only* text messages it intends to introduce in its case-in-chief. Without that confirmation, we face the prospect of preparing not just for the 92 pages of identified text message exhibits, but for thousands of pages of text messages that exist somewhere in discovery. We need to know: Are we done? Have we identified and prepared for all the text messages the Government will use, or must we continue to comb through thousands of pages of discovery in case the Government decides to introduce additional messages?

This uncertainty creates an impossible preparation burden. We have focused our efforts on the text messages the Government has identified. If the Government plans to introduce additional text messages beyond its exhibit list, we need to know now—not on the eve of trial or during trial itself.

## 4. The Law Supports These Requests

### A. The Court Has Authority and Discretion to Require Sequential Witness Disclosure

A district court's inherent authority to manage the course of its trials encompasses broad powers to control the presentation of evidence. *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). This authority is grounded in both Federal Rule of Evidence 611(a), which permits courts to control the "order of ... presenting evidence," and the court's inherent supervisory powers to "manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).

Courts routinely exercise this authority to require the Government to provide advance notice of witness order in criminal cases. This practice recognizes that while prosecutors retain strategic flexibility, basic fairness and efficiency require that the defense know the general sequence of witness testimony.

In this case, the Court has already demonstrated careful attention to trial management and scheduling. The Court has set specific deadlines for pretrial motions, witness lists, and exhibit lists. Order, ECF No. 327 (Nov. 24, 2025). Requiring a sequential witness list serves the same organizational goals.

### B. Sequential Witness Lists Are Standard Practice and Particularly Important in Complex Cases

Courts regularly require sequential witness lists in complex federal criminal cases. While not every case warrants such a requirement, this case's complexity—involving technical evidence, *e.g.,* regarding interstate commerce, multiple SEEC employees, extensive text message evidence, and numerous fact witnesses—makes it particularly appropriate.

This Court has already recognized the case's complexity. In addressing motions in limine

regarding SEEC witness testimony about Connecticut election law, the Court noted the need to carefully manage testimony to avoid "confusion" and ensure the jury is not "misled." (*See*, Ruling and Order on Motions in Limine, ECF No. 106 dated May 27, 2022). Sequential witness notice serves these same goals by allowing us to prepare targeted, focused cross-examination rather than attempting simultaneous preparation for dozens of witnesses on disparate topics.

The Second Circuit has emphasized that defendants are entitled to meaningful opportunity to prepare their defense. While this right is often discussed in the context of discovery obligations, it extends to trial procedures. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). Sequential witness notice facilitates that right without infringing on legitimate prosecutorial prerogatives.

### C. The Court Has Authority to Limit Evidence to Identified Exhibits

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government to permit inspection of documents it "intends to use ... in its case-in-chief at trial." Courts have recognized that this rule serves to prevent trial by ambush and enable effective preparation. The corollary to this rule is that once the Government has identified what it intends to use, it should be held to that identification.

Courts routinely hold parties to their exhibit lists, absent good cause for supplementation. This practice serves judicial efficiency and fairness.  In *United States v. Nachamie*, 91 F. Supp. 2d 565, 570-71 (S.D.N.Y. 2000), the court emphasized that advance identification of exhibits prevents unfair surprise and ensures adequate preparation time. The same principle supports holding the Government to the exhibits it has identified here.

The Government supplied its current exhibit list on November 24, 2025. This case began in May of 2021.  Indeed, the Government has had ample time to have identified all text messages it intends to use in its case-in-chief. To be clear, we do not seek to prevent the Government from

5

using text messages for proper impeachment purposes or rebuttal. We simply ask the Court to hold the Government to the exhibits it has identified for its case-in-chief.

### D. The Alternative—No Sequential Notice and Unlimited Text Messages—Risks Trial Disruption

If the Court does not require sequential witness disclosure, the likely result is frequent delays as we request time to review materials for witnesses called without notice, objections and sidebars regarding whether adequate foundation has been laid or whether we have had adequate opportunity to prepare, requests for overnight continuances to prepare for witnesses we did not anticipate would be called, inefficient use of court time as counsel sorts through materials for multiple witnesses, potential inability to secure defense witnesses to rebut Government witnesses when we don't know when they'll be needed, and risk of mistrial or reversal if we are genuinely unable to adequately prepare for surprise witnesses.

Similarly, if the Government is permitted to introduce text messages beyond those identified in its exhibit list, we face the prospect of mid-trial surprise, inadequate preparation time, and inability to prepare meaningful challenges to authenticity, context, and relevance.

These problems can be avoided entirely by requiring a sequential witness list and holding the Government to its identified exhibits. The minimal burden on the Government is far outweighed by the benefits to fairness and efficiency.

6

### 5.  What We're Asking

#### A.  Witness Order (Due 7 Days Before Trial)

We do not seek to eliminate all prosecutorial discretion. The Government may legitimately need to adjust witness order based on witness availability such as illness, scheduling conflicts, or travel issues; how testimony develops where a witness's answer may make another witness more or less necessary; tactical responses to defense objections or cross-examination; or other unforeseen circumstances.

The request is for a good-faith sequential list that the Government reasonably anticipates following, subject to modification with notice. Specifically, the Government should provide a list indicating the order in which it intends to call witnesses no later than 7 days before trial. The Government should update the list promptly if circumstances require material changes to the anticipated order. The Government should be permitted to deviate from the list when necessary, but should provide as much advance notice as practical when such deviations occur. If the Government deviates from the anticipated order without notice, the Court may grant us a reasonable continuance to prepare for the out-of-order witness.

This framework is consistent with how courts manage complex trials. It imposes minimal burden—prosecutors preparing for trial know which witnesses they plan to call in what order—while substantially benefiting both the defense and judicial efficiency.

#### B.  Limitation of Text Message Evidence to Identified Exhibits

The Government supplied its exhibit list on November 24, 2025. That list identifies approximately 18 text message exhibits. We ask the Court to order that the Government may not introduce text messages in its case-in-chief beyond those identified in its November 24, 2025 exhibit list, except that the Government may use text messages not on the exhibit list for proper

impeachment purposes or in rebuttal if the defense opens the door.

This order does not prevent the Government from presenting its case. It simply holds the Government to the exhibits it has identified more than three months before trial. If the Government discovers a compelling reason to introduce additional text messages, it can move to supplement its exhibit list with appropriate notice and an opportunity for us to prepare.

## 6. Conclusion

Prosecutors preparing for trial already know which witnesses they'll call and in what order. They've already identified the text messages they plan to use. We ask only that they share this information with us and the Court.

Without witness order, we face daily requests for time to prepare for surprise witnesses, constant delays searching for materials, inability to coordinate our own witnesses, and inefficient use of court time. Without limitation on text messages, we face the impossible task of preparing for thousands of pages when we should focus on the 92 pages the Government has identified.

The Court should order the Government to provide a good-faith list of witnesses in the order it plans to call them, due 7 days before trial, and to confirm that it will not introduce text messages in its case-in-chief beyond those identified in its November 24, 2025 exhibit list except for proper impeachment or rebuttal purposes.

Both requirements are well within the Court's discretion and serve the interests of justice and efficiency. These modest pretrial orders will ensure a fair and efficient trial.

The Court should order the Government to provide a good-faith list of witnesses in the order it plans to call them, due 7 days before trial, and to confirm that it will not introduce text messages in its case-in-chief beyond those identified in its November 24, 2025 exhibit list except for proper impeachment or rebuttal purposes.

Respectfully submitted by:

Darnell D. Crosland, Esq.
**CROSLANDLAWGROUP LLC**
1200 Summer Street, Ste 202
Stamford, Connecticut 06905
info@croslandlaw.com
Tel. (203) 921-1782
Fax (203) 921-1223

Dated: February 6, 2026

DEFENDANT's COUNSEL

## **CERTIFICATION**

I HEREBY CERTIFY that on February 6, 2026, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filling will be sent to all parties by operation of the Court's electronic filing system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties

may access this filing through the Court's CM/ECF System.

Respectfully submitted by:

Darnell D. Crosland, Esq.
**CROSLANDLAWGROUP LLC**