UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

v.

DENNIS BRADLEY, JR.

No. 3:21-cr-00087 (VAB)

**RULING AND ORDER ON MOTION IN LIMINE**

Dennis A. Bradley, Jr. ("Defendant") has been charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and five counts of wire fraud in violation of 18 U.S.C. § 1343. *See* Superseding Indictment, ECF No. 50 (May 4, 2022) ("Superseding Indictment").

Mr. Bradley has filed a motion *in limine* to require the Government to specify its witness order seven days before trial, and to limit the Government's text message evidence to the material on its witness list disclosed to the Defendant on November 24, 2025. Mot. in Lim., ECF No. 333 ("Mot. in Lim.").

For the reasons explained below, Mr. Bradley's motion *in limine* is **DENIED**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

    A.  Factual Allegations

This case concerns former Connecticut State Senator Dennis Bradley, who allegedly entered into a conspiracy and scheme to defraud the Connecticut State Election Enforcement Commission ("SEEC"), the Citizens' Election Fund ("CEF"), and the State of Connecticut by

making misrepresentations concerning Mr. Bradley's compliance with state election law and the Citizens' Election Program's ("CEP") statutory restrictions and requirements in order to fraudulently obtain or attempt to obtain $179,850 in campaign grants.

Mr. Bradley ran as a Democratic candidate in the 2018 Connecticut State Senate race for the 23rd Senate District. Mr. Bradley is also an attorney who, until 2016, was working at Bradley Law Group, after which he became a partner in the law firm of Bradley, Denkovich & Karayiannis, P.C., also known as BDK Law Group ("BDK"). Superseding Indictment at 1.

In February 2018, Mr. Bradley began his 2018 State Senate campaign. *Id.* at 7. Chapters 155 and 157 of the Connecticut General Statutes impose legal restrictions and requirements on political candidates and their campaigns. *Id.* at 2. Relevantly, under Chapter 157, Sections 9-702(c) and 710(c), a State Senate candidate seeking a CEP grant could contribute no more than $2,000 of personal funds to his own campaign, or risk eligibility for the grant. *Id.* at 4.

Around February 21, 2018, Mr. Bradley allegedly began planning an event at Dolphin's Cove, a restaurant in Bridgeport. *Id.* at 8. Mr. Bradley allegedly communicated in text messages with various campaign staffers that the party was a BDK Law Group party, but allegedly also intended to announce his campaign for State Senator at the party. *Id.*

Between February 22, 2018, and March 15, 2018, Mr. Bradley allegedly communicated and coordinated with his campaign staffers to plan the event at Dolphin's Cove. In those communications, Mr. Bradley's campaign staff allegedly planned to collect donations at the event. *Id.* at 9-10. Mr. Bradley allegedly requested that his campaign website and e-payment platform be ready by the date of the event. *Id.* at 9. A local political website ran an article stating that Mr. Bradley intended to announce his candidacy at the event, and Mr. Bradley allegedly provided a statement for the article. *Id.* at 10. His staff posted the invitation on his campaign's

2

Facebook page. *Id.* Mr. Bradley stated by text message, "People give me money I'm taking it [.]" *Id.* at 12.

For the event at Dolphin's Cove, Mr. Bradley allegedly spent personal funds in excess of the $2,000 limit imposed by state statutes to qualify for a CEP grant. *Id.* at 3, 7. Mr. Bradley allegedly used his personal funds to pay $5,597.31 to Dolphin's Cove for the alleged campaign event. *Id.* at 7. Specifically, Mr. Bradley allegedly paid Dolphin's Cove $2000 for an open bar and $15 per attendee for food, with an expected attendance of 150 guests. *Id.* He also allegedly used his personal funds to pay $110.07 to Midnight Printing LLC for invitations. *Id.* at 10. He allegedly used his personal funds to pay $600 to a local band to perform at the event. *Id.* at 11.

At the Dolphin's Cove event, Mr. Bradley announced his candidacy, and his campaign staff allegedly solicited campaign contributions with Mr. Bradley's alleged consent. *Id.* at 12. Mr. Bradley allegedly received contributions from at least eight individuals, and each contribution card was allegedly dated March 15, 2018. *Id.* The contributions allegedly totaled $430. *Id.* With Mr. Bradley's alleged knowledge and approval, his campaign staff allegedly altered and falsified the dates on the contribution cards to allegedly conceal that the Dolphin's Cove event was a campaign event paid for by Mr. Bradley's personal funds. *Id.* With Mr. Bradley's alleged approval, his campaign staff allegedly made filings with SEEC containing the incorrect dates from the allegedly altered or falsified contribution cards. *Id.*

On April 10, 2018, Mr. Bradley's campaign allegedly filed two Itemized Campaign Finance Disclosure Statements with SEEC. In those filings, Mr. Bradley allegedly omitted the event at Dolphin's Cove and the accompanying expenses, allegedly omitted that Mr. Bradley had accepted multiple qualifying contributions at the event, and allegedly misrepresented the dates on which those contributions were received. *Id.* at 14.

3

On May 24, 2018, Mr. Bradley and Jessica Martinez, his campaign's treasurer, allegedly applied for a CEP grant to fund Mr. Bradley's primary campaign. In the "Candidate Certification" section of the affidavit, Mr. Bradley allegedly signed that he understood the eligibility requirements as set out in statute, and allegedly affirmed that he had been compliant thus far. *Id.* at 14-15.

Between April 10, 2018, and June 8, 2018, the next day, Mr. Bradley allegedly filed four Itemized Campaign Finance Disclosure Statement covering March 15, all of which omitted the Dolphin's Cove event. *Id.* at 19.

On July 10, 2018, the SEEC allegedly issued Mr. Bradley a CEP primary grant in the amount of $84,140. *Id.*

After issuing the primary grant, SEEC allegedly began investigating a citizen complaint it received on June 29, 2018, regarding the Dolphin's Cove event. *Id.*

On or about August 14, 2018, Mr. Bradley won the Democratic primary with approximately 55% of the vote. *Id.*

On August 21, 2018, Mr. Bradley allegedly sent a letter to the SEEC denying the allegations in the citizen complaint. *Id.* at 19-20.

On or about August 28, 2018, Mr. Bradley and Ms. Martinez allegedly attempted to obtain an additional $95,710 CEP grant to fund Mr. Bradley's general election campaign, but on October 19, 2018, SEEC denied the application. *Id.* at 20-21.

On November 6, 2018, Mr. Bradley won the general election with approximately 87% of the vote. Mr. Bradley was subsequently re-elected in 2020. *Id.* at 6.

## B. Procedural History

On May 24, 2021, a grand jury returned an Indictment against Mr. Bradley and Ms. Martinez, charging Mr. Bradley with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and five counts of wire fraud in violation of 18 U.S.C. § 1343. *See* Indictment, ECF No. 1. On May 4, 2022, a grand jury returned a Superseding Indictment charging Mr. Bradley with the same. *See* Superseding Indictment.

On May 2, 2022, parties indicated in a pre-trial conference that they were ready for trial, and the Court scheduled a final pre-trial conference for May 25, 2022, with jury selection to begin on May 31, 2022, and trial to begin immediately thereafter. Order, ECF No. 47.

On May 24, 2022, the Government conducted a second interview with the videographers from the Dolphin's Cove event, who, for the first time, produced a never before seen 28-minute video from the event.

The following morning, on May 25, 2022, the Court held a final pre-trial conference. During this conference, the Government disclosed that it had then recently learned of the 28-minute video, and produced it later that day.

On June 1, 2022, following a day of jury selection and on the eve of trial, Mr. Bradley orally moved to preclude the 28-minute video on the basis that the government had violated Federal Rule of Criminal Procedure 16 and supported his motion with briefing. The Court suspended jury selection until June 3, 2022, in order to consider the parties' arguments and held a telephonic conference on June 2, 2022, in that regard.

In the conference, the Court orally stated that the video would be precluded. Later that day, the Government filed an interlocutory appeal to challenge its exclusion. *See* Min. Entry, ECF No. 125 (June 2, 2022); Notice of Appeal, ECF No. 128.

Following the Government's notice of interlocutory appeal, and in aid of the appeal, the Court issued a supplemental ruling and order providing greater detail regarding its order excluding the 28-minute video. Order, ECF No. 155.

On June 18, 2024, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued an order reversing and remanding this Court's order precluding the video. Order of USCA, ECF No. 252.

On April 4, 2025, Ms. Martinez's case was severed from Mr. Bradley's. *See* Order Granting Mot. to Continue and Mot. to Sever, ECF No. 278.

On April 16, 2025, Mr. Bradley filed a motion to dismiss the Indictment in his case. *See* MTD.

On May 7, 2025, the Government opposed the motion to dismiss the Indictment. Mem. in Opp. re Mot. to Dismiss Indictment, ECF No. 287.

On May 21, 2025, Mr. Bradley filed a reply to the Government's response. Reply in Resp., ECF No. 288.

On July 29, 2025, the Court scheduled jury selection for December 1, 2025.

On November 11, 2025, Mr. Bradley filed a notice of supplemental authority and brief in support of his motion to dismiss the Superseding Indictment. Notice, ECF No. 318.

On November 17, 2025, the Government filed a response to Mr. Bradley's notice of supplemental authority. Response/Reply, ECF No. 319.

On November 18, 2025, the Defendant filed a motion *in limine* to exclude evidence related to the contribution forms at the Dolphin's Cove event. Mot. in Lim. to Exclude Contribution Form Evidence Relating to the Dolphin Cove March 15, 2018 Event, ECF No. 320.

On November 19, 2025, Mr. Bradley filed a motion to dismiss Count Two of the Superseding Indictment for failure to state an offense. Mot. to Dismiss Count 2 of the Superseding Indictment, ECF No. 321.

On November 21, 2025, the Government filed a response to Mr. Bradley's motion to dismiss Count Two of the Superseding Indictment. Mem. in Opp., ECF No. 323.

On November 23, 2025, Mr. Bradley filed a motion to dismiss Counts Three, Four, and Six of the Superseding Indictment. Mot. to Dismiss Counts Three, Four, and Six of Indictment for Lack of Interstate Transmission, ECF No. 324.

At the pre-trial conference held on November 24, 2025, at the request of the Defendant, the Court continued jury selection until March 16, 2026, at 9:00 am.

On December 12, 2025, the Court issued a Ruling and Order denying Mr. Bradley's three motions to dismiss and his motion *in limine*. Order, ECF No. 329.

On February 6, 2026, Mr. Bradley filed a motion *in limine* to require the Government to disclose the order of their witnesses and to limit text message evidence to the exhibits identified to the Defendant. Mot. in Lim.

On February 27, 2026, the Government filed a memorandum in opposition to the motion *in limine*. Mem. in Opp., ECF No. 334 ("Mem. in Opp.").

## II. STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)

7

(citing *Luce*, 469 U.S. at 41 n.4). A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

### III.  DISCUSSION

On November 24, 2025, the Government provided Mr. Bradley with a preliminary exhibit list. The Government's list included 15 witnesses it intends to call, 18 witnesses it may call, and 18 text message exhibits.

Mr. Bradley has filed a motion *in limine* to require the Government to specify its witness order seven days prior to trial, and to limit the Government's text message evidence to the material on its witness list disclosed to the Defendant on November 24, 2025. *See* Mot. in Lim.

The Court will discuss each request in turn.

#### A.  The Witnesses

Mr. Bradley argues that the Government must disclose their witnesses and the order in which they will testify at least seven days before trial. He argues that the Court should use its authority under Federal Rule of Evidence 611(a) to control the "order of . . . presenting evidence" to require the Government to provide advance notice of witness order, otherwise the Defendant will be unable to prepare for the witnesses, will need to transport materials for every potential witness each day, and will be placed at a strategic disadvantage.

8

The Government responds that requiring a sequential witness list seven days ahead of trial would be an "unnecessarily extreme infringement on the Government's ability to put on its case." Mem. in Opp. at 1. The Government argues that it is "preparing for various contingencies" and the witnesses on its "may call" list are necessary to respond to the Defendant's potential objections. Instead, the Government expresses a willingness to meet and confer with defense counsel to ensure an efficient trial, and states they will provide defense counsel with a preliminary witness order by March 2, 2026.

The Court agrees.

The Government's proposal to provide defense counsel with a preliminary witness order by March 2, 2026, confirm its witness lineup forty-eight hours in advance of trial, and otherwise work with defense counsel sufficient to protect the Defendant's right to adequately prepare his defense without infringing on the Government's ability to construct its own case. Just as importantly, the Court intends and expects all witnesses to be identified before trial, even those they might call, but ultimately decide not to do so.

Accordingly, Mr. Bradley's motion *in limine* will be denied on these grounds.

### B. The Text Messages

Mr. Bradley asks the Court for an order stating that the Government may not introduce text messages in its case-in-chief beyond those identified in its November 24, 2025 exhibit list. He argues that "without confirmation" that the 18 exhibits are the only ones the Government will use, the defense "face[s] the prospect" of preparing for "thousands of pages of text messages that exist somewhere in discovery," which "creates an impossible preparation burden.

Mr. Bradley argues that because Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government to permit inspection of documents it "intends to use . . . in its case-in-chief at

9

trial," the "corollary" to this rule is that the Government case-in-chief must be restricted to the documents it identifies.

The Government responds that the Defendant's request is premature. The Government states it has no present intention to add additional text messages to its exhibit list, but argues it is impossible to know if circumstances will require the Government to do so. If the Government finds it necessary to add a new exhibit to its case-in-chief, they offer to raise the matter with defense counsel first. Finally, the Government asserts that they provided all text message evidence in its first production on June 8, 2021, giving the Defendant ample time to prepare.

The Court agrees.

Federal Rule of Criminal Procedure 16(a)(1) requires the Government to produce documents "which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." But "[t]he clear language of Rule 16(a)(1) [] does not require the Government to identify which documents fall in each category—it only requires the production of documents responsive to any category." *United States v. Nachamie*, 91 F. Supp. 2d 565, 569 (S.D.N.Y. 2000). The Court acknowledges that the production of a large number of documents makes it difficult to identify which documents the Government intends to use in its case-in-chief, but "a court has no license to rewrite the Federal Rules of Criminal Procedure" and "no such requirement [to identify these documents] now exists in the plain language of the Rule." *Id.* at 570. Because "the Government has complied with its obligations to produce, for inspection and copying, documents which are intended for use by the government as evidence in chief at the trial," the Government has satisfied the requirements of Rule 16(a)(1). *Id.* at 569-70.

In any case, the Government has indicated it will provide defense counsel with a preliminary witness order by March 2, 2026, and confirm that witness order forty-eight hours in advance of trial. The Court will exercise its discretion to ensure a fair trial if it becomes apparent that the parties are not acting in good faith, but the Court has no indication that such intervention is required at this juncture. Just as importantly, the Court intends and expects all exhibits to be marked in advance of trial, even those they might use, but ultimately may not seek to offer into evidence.

Accordingly, Mr. Bradley's motion *in limine* will be denied on these grounds.

## IV.   CONCLUSION

For the foregoing reasons, the motion *in limine* is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 13th day of March, 2026.

/s/ Victor A. Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE