**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 3:21-cr-00087 (VAB) |
| v. | : | |
| | : | |
| DENNIS A. BRADLEY, JR., | : | |
| | : | November 19, 2026 |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A NON-INCARCERATION SENTENCE**

Darnell D. Crosland, Esq.
CROSLAND LAW GROUP LLC
1200 Summer Street, Suite 202
Stamford, Connecticut 06905
Tel: (203) 921-1782
info@croslandlaw.com

Michael H. Sussman, Esq.
SUSSMAN & ASSOCIATES
1 Railroad Avenue, Suite 3, P.O. Box 1005
Goshen, New York 10924
Tel: (845) 294-3991
sussman1@sussman.law

Attorneys for Defendant Dennis A. Bradley, Jr.

## TABLE OF CONTENTS

**I. PRELIMINARY STATEMENT** .......... 1
**II. BACKGROUND** .......... 2
A. The Offense and the Rule 29 Ruling .......... 2
B. Eight Years, and What Followed the Verdict .......... 4
**III. THE GUIDELINES** .......... 5
A. The Calculation and the Defense Objections .......... 5
B. Loss .......... 5
C. Role and § 4C1.1 .......... 7
D. Even the PSR's Range Overstates the Offense .......... 9
**IV. THE § 3553(a) FACTORS SUPPORT A SENTENCE WITHOUT IMPRISONMENT** .......... 9
A. The Nature and Circumstances of the Offense .......... 10
B. The History and Characteristics of Dennis Bradley .......... 11
1. A life of service in Bridgeport .......... 11
2. The complainant asks the Court not to imprison him .......... 14
3. A father of two young daughters .......... 15
4. No record, a decade of therapy, and five years on release .......... 15
C. Mr. Bradley Has Already Been Punished .......... 16
D. Remorse .......... 17
E. Deterrence, Protection of the Public, and Just Punishment .......... 17
F. Unwarranted Disparities .......... 19
G. The Pending State Matter .......... 20
**V. THE PROPOSED SENTENCE** .......... 21
**VI. CONCLUSION** .......... 23

# I. PRELIMINARY STATEMENT

In March 2018, Dennis Bradley announced his campaign for the State Senate at a party he paid for himself. It cost $7,257.38. Connecticut's public-financing program, the Citizens' Election Program (the "Program"), allowed a candidate to spend $2,000 of his own money and required him to report it. His campaign reported nothing and received an $84,140 grant, and when a complaint was filed with the State Elections Enforcement Commission ("SEEC"), he denied that the party had been a campaign event. Presentence Report ("PSR") ¶¶ 33, 65, 68, 73. A jury found that to be wire fraud, and the defense does not ask the Court to take the verdict lightly. It asks the Court to see the offense for its actual size. No public money went into Mr. Bradley's pocket. The grant was spent on the campaign. And more than half of the loss figure behind the Guidelines range is a second grant that the State denied and never provided. PSR ¶ 77.

The punishment for that offense began long before today. Mr. Bradley has lived under investigation and indictment for eight years. He lost his seat in the State Senate. He lost the law license he spent fourteen years building into a practice for people who could not otherwise afford a lawyer. He stood in front of a television camera and apologized to the city he represented. He is forty-two, has no prior record, is now divorced, and is the father of two girls, ages six and one, who are with him every Wednesday and Thursday and every other weekend.

The question for the Court is how much more is necessary. The Probation Office calculates a range of 24 to 30 months, but itself suggests that the Court consider "whether a guideline sentence is more than necessary to meet the purposes of sentencing." PSR ¶ 161.[1] This Court sentenced the campaign's treasurer, who signed the same filings and then lied to a federal grand jury, to time served. ECF No. 308. Twenty people who have watched Mr. Bradley work in Bridgeport for years,

[1] The parties are not permitted to review Probation's final sentencing recommendation to this Court.

among them a homicide detective, a judicial marshal, and the City Clerk, have written to the Court, and each asks the Court to take into account Mr. Bradley's history of constructive community engagement. Maria Pereira, his political adversary, whose complaint began this case, explicitly asks the Court not to sentence Mr. Bradley to prison. "If I had any idea that Dennis Bradley would have been criminally prosecuted on felony charges by the federal authorities," she writes, "I would never have filed the [SEEC] complaint." She is "totally opposed to his being sentenced to serve any amount of incarceration." Ex. A (Pereira).

The defense proposes a sentence built for this offense: time served followed by supervised release or, alternatively, probation, with a bar on candidacy and on any role in the campaigns of others for the term of supervision, Probation Office review of any election filing, 320 hours of community service in Bridgeport, and restitution. That sentence keeps Mr. Bradley out of politics, under the Court's authority for three years, and at work repaying the Citizens' Election Fund (the "Fund") and the city. It is sufficient. A prison term would add nothing but the loss of a father to two small children, and it would be greater than necessary.

## II. BACKGROUND

### A. The Offense and the Rule 29 Ruling

The facts are set forth in the Presentence Report and in the Court's Ruling on the post-verdict motions, ECF No. 402. In February 2018, Mr. Bradley, then a thirty-four-year-old attorney and former President of the Bridgeport Board of Education, began a campaign for the 23rd Senate District. PSR ¶¶ 33, 135. He announced it at a party at Dolphin's Cove on March 15, 2018, and paid the $7,257.38 cost himself, from an account in the name of his law firm and an account held jointly with his mother. PSR ¶ 33. None of these funds came from a campaign account or were reimbursed.

PSR ¶ 34. Connecticut law limited a participating candidate's personal spending to $2,000 and required that it be disclosed; the campaign's filings did neither. PSR ¶¶ 26, 54–55.

A campaign volunteer, Tina Manus, brought contribution forms to the event after asking Mr. Bradley whether she should, and at least eight attendees contributed a total of $430. PSR ¶¶ 45, 48. Partway through the evening, after two attendees objected to the forms, Mr. Bradley put a stop to it and told Ms. Manus there was to be "no money tonight." PSR ¶ 49; Trial Tr. (Mar. 23, 2026) at 76. It was Ms. Manus who then raised the idea of changing the dates on the forms already collected. Mr. Bradley did not tell her to do so. His answer, as she recalled it, was "Up to you and Jessica. Figure it out. No money tonight." *Id.* at 77, 205. She went to her car and changed the dates herself, and she later testified that the decision not to tell SEEC the truth was "[m]y decision." *Id.* at 77, 207. In May 2018, Mr. Bradley and his treasurer, Jessica Martinez, signed the Program affidavit certifying compliance with the personal-funds rules, and on July 10, 2018, SEEC awarded the campaign an $84,140 primary grant. PSR ¶¶ 56–59, 65.

Maria Pereira filed a complaint on June 29, 2018, prompting an SEEC investigation. PSR ¶ 66; Trial Tr. (Mar. 19, 2026) at 40. On August 21, 2018, an e-mail sent to SEEC from Mr. Bradley's law firm and copied to him attached a letter over his name denying that the event was political or that donations had been collected. On October 17, 2018, Mr. Bradley told the SEEC Commissioners that there had been no requests for money. PSR ¶¶ 68, 73. Two days later SEEC denied the campaign's application for a general-election grant. PSR ¶ 77. Mr. Bradley won the election without it and served in the Senate from January 2019 to January 2023. PSR ¶ 20.

The jury convicted on all six counts. On September 4, 2026, the Court entered a judgment of acquittal on Counts Three, Four, and Six, which charged the campaign's electronic filings with SEEC, holding that the interstate replication of those filings was "merely a collateral process that

does not fall within the scope of the wire fraud statute." ECF No. 402 at 22. The convictions that remain are Count One (conspiracy), Count Two (the March 15 text message to Ms. Manus), and Count Five (the August 21 e-mail). *Id.* at 11–12, 15–16, 25–26. The Government has not appealed.

**B. Eight Years, and What Followed the Verdict**

SEEC opened its investigation in June 2018. The federal arrest followed in May 2021. Jury selection began in May 2022 and was halted when the Government took an interlocutory appeal; the mandate did not issue until August 2024, and trial did not begin until March 2026. PSR ¶¶ 6–7, 14. Throughout, Mr. Bradley lived in Bridgeport, reported to Probation as directed, appeared at every proceeding, returned from every trip the Court approved, and practiced law. PSR ¶ 18. He lost the 2022 Democratic primary with the indictment pending. His marriage ended in 2025. PSR ¶ 115.

After the verdict, he did not contest the professional consequences. By agreement with the Office of Chief Disciplinary Counsel, the Superior Court placed him on interim suspension effective July 17, 2026. Ex. B; PSR ¶ 130. Two days after entry of this order, he apologized publicly: "To the people of Bridgeport, I'm sorry." John Craven, *Former State Sen. Dennis Bradley Formally Apologizes to Bridgeport Following Temporary Suspension of His Law License* News 12 Conn. (July 12, 2026). He told the Probation Office that the case was the product of "a mixture of pride and ego," that this experience has made him a better father, and that he no longer has political goals. PSR ¶¶ 126–27.

## III. THE GUIDELINES

### A. The Calculation and the Defense Objections

Using the Manual effective November 1, 2026, the Probation Office calculates a total offense level of 17: a base offense level of 7, eight levels for an intended loss of $179,850, and two levels for role under § 3B1.1(c). PSR ¶¶ 85–95. With a criminal history category of I, the range is 24 to 30 months. PSR ¶ 142. The defense's objections of November 5, 2026 are attached to the Addendum to the PSR and incorporated here. Their effect is as follows:

| Position | Loss | Role | § 4C1.1 | Level / Range (CHC I) |
|---|---|---|---|---|
| PSR | $179,850: +8 | +2 | — | 17 / 24–30 months (Zone D) |
| Role objection alone | +8 | 0 | −2 | 13 / 12–18 months (Zone C) |
| Primary grant only ($84,140); no role | +6 | 0 | −2 | 11 / 8–14 months (Zone B) |
| Acquitted filings excluded, or loss measured under Connecticut law ($7,257.38); no role | +0 | 0 | −2 | 5 / 0–6 months (Zone A) |

### B. Loss

*The general-election grant.* More than half of the loss figure is a $95,710 grant that SEEC denied and never paid. PSR ¶ 77. The filing that sought it, the August 28, 2018 Carry Forward form, was charged in Count Six, on which the Court entered a judgment of acquittal. PSR ¶ 69; ECF No. 402 at 3, 16, 23. Relevant conduct "does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c). A Rule 29 acquittal is an acquittal, *Evans v. Michigan*, 568 U.S. 313, 318–19 (2013), and the guideline draws no distinction based on the ground on which the acquittal rests.

The Probation Office responds that because Count One "specifically references" $179,850, the acquitted filings "establish" the conspiracy. PSR ¶ 84; Addendum at 2. The defense recognizes that the question is arguable: the acquittal turned on the interstate-wire element, and the Court sustained the conspiracy count on a record that included the campaign's submissions to SEEC. ECF No. 402 at 11–12, 15, 20–23. But the exception cannot mean that acquitted conduct returns to the calculation whenever it is related to a count of conviction. The two Courts of Appeals to construe the provision have cautioned that "establishes" cannot be read to sweep in all relevant conduct, because that would make the amendment a nullity, and that where acquitted conduct does not establish the offense of conviction, "the court may not consider the conduct for Guidelines-calculation purposes." *United States v. Covington*, 180 F.4th 576, 594–95 & n.10 (4th Cir. 2026) (citing *United States v. Shafa*, 175 F.4th 1, 31 (1st Cir. 2026)). The Commission has left the line to the sentencing court. U.S.S.G. § 1B1.3, comment. (n.10).

The conspiracy the jury found was established by the events of March through May 2018. The Carry Forward form, filed three months after the application for the primary grant, added nothing needed to establish that offense. The same reasoning applies, with somewhat less force, to the April and May 2018 filings charged in Counts Three and Four. The Court may of course weigh all of these filings under § 3553(a); the question here is only what drives the advisory range.

*The primary grant.* If the primary grant alone is counted, the increase is six levels, not eight. U.S.S.G. § 2B1.1(b)(1)(D).

*Connecticut law.* The loss figure also overstates the harm when measured against the statutes that govern the public financing Program. A participating candidate's grant "shall be reduced by the amount of any personal funds that the candidate provides." Conn. Gen. Stat. § 9-705(i)(1); PSR ¶ 26. Where a committee that has already received a grant exceeds the Program's

expenditure limits, the candidate and treasurer are jointly and severally liable for the excess; and if SEEC determines that either knew of the excess, the committee receives no further grant and the candidate is deemed a nonparticipating candidate. Nothing in the statute requires the return of a grant already paid. Conn. Gen. Stat. § 9-711(a). SEEC's elections officer, called by the Government, testified that campaigns may amend their filings to correct "errors and omissions," including an expense left off a report, and that "[o]ur job is to get them to the grant." Trial Tr. (Mar. 18, 2026) at 47; Trial Tr. (Mar. 19, 2026) at 39.

The defense is mindful that the Court, in sustaining the jury's finding of materiality, observed that disclosure of the Dolphin's Cove expenses would have made Mr. Bradley ineligible for the grants he sought. ECF No. 402 at 28. The point here is different. Once the expenses came to light, what happened is what § 9-711(a) prescribes: the campaign received no further grant. The primary grant was spent on the campaign the Program exists to fund, and the PSR alleges no diversion to personal use. Measured by the reduction that § 9-705(i)(1) prescribes, the harm to the Fund was $7,257.38. Even if the Court does not adopt that figure as the Guidelines loss, it is a fair measure of the distance between the loss table and the conduct.

### C. Role and § 4C1.1

A role adjustment requires that the defendant "exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (internal quotation marks and alterations omitted). The question is not whether Mr. Bradley was the candidate. Every candidate is the person his volunteers look to, and if that sufficed, the adjustment would apply in every campaign case.

The Probation Office relies on Mr. Bradley's instructions to campaign staff about the details of the event, his text telling Ms. Manus to bring contribution forms, and the fact that Ms. Manus told him afterward that she had altered the dates. PSR ¶ 90. Giving consultants the time and place of a party is not supervising criminal participants. The text message is the wire of conviction in Count Two, which the Court sustained because a jury could find it "incident to an essential part of" the scheme, ECF No. 402 at 15, not because it directed anyone to falsify anything. And on the alteration of the contribution forms, the Government's witness testified that the idea was hers. It was she who asked, "What do you want me to do, change the dates on the forms?" and his answer was "Up to you and Jessica. Figure it out. No money tonight." Trial Tr. (Mar. 23, 2026) at 76–77. On cross: "He didn't say go change the forms, he said just go figure it out, right?" "Yes." *Id.* at 205. On redirect: "Whose decision was it to not tell the truth to the SEEC?" "My decision. I could have told the truth." *Id.* at 207.

The final PSR now records each of these points. PSR ¶ 49. Ms. Manus also testified that she told Mr. Bradley that night what she had done, and that at a later meeting she was told to talk to her lawyer rather than call SEEC herself. Trial Tr. (Mar. 23, 2026) at 79–80, 210. Hearing a volunteer's report of what she has already done, and telling her to consult counsel, is not organizing or supervising her decision to alter a document. It was the treasurer, not the candidate, who had authorized the collection of money that night, *id.* at 218, and when Ms. Manus was asked who besides herself was responsible for what followed, she named "[w]hoever did the filings," that is, "[t]he treasurer and deputy treasurer." *Id.* at 211.

Without the role adjustment, Mr. Bradley meets every criterion of § 4C1.1 and receives a two-level reduction as a zero-point offender. The Commission adopted that provision because zero-point offenders "have considerably lower recidivism rates than other sentenced individuals."

U.S.S.G. App. C, amend. 821 (Reason for Amendment). And where a zero-point offender's range falls in Zone A or B, "a sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1, comment. (n.9).

### D. Even the PSR's Range Overstates the Offense

The Second Circuit has held that "[w]here the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence." *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016). Here the loss table more than doubles the base offense level in a case in which no public money went into the defendant's pocket. The Commission has itself recognized that the table had drifted, raising every threshold this month to account for inflation since 2014. U.S.S.G. App. C, amend. 838.

The Probation Office's own data show how courts treat cases at this level. Of the 432 defendants sentenced nationally in the last five fiscal years under § 2B1.1 at offense level 17 and criminal history category I, nearly one in four received no imprisonment at all, and the median sentence for the group as a whole was 14 months, well below the bottom of the range. PSR ¶ 144. Those figures describe ordinary fraud defendants, most of whom took money for themselves.

## IV. THE § 3553(a) FACTORS SUPPORT A SENTENCE WITHOUT IMPRISONMENT

The Guidelines are advisory and are "not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Court must make "an individualized assessment based on the facts presented," *Gall v. United States*, 552 U.S. 38, 50 (2007), and impose a sentence "sufficient, but not greater than necessary" to serve the purposes of sentencing. 18 U.S.C. § 3553(a). *Gall* itself upheld a sentence of probation where the range was 30 to 37 months, observing that offenders on

probation are subject to conditions that "substantially restrict their liberty." 552 U.S. at 48, 59–60. The task is "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

**A. The Nature and Circumstances of the Offense**

The defense does not minimize the jury's verdict or the importance of the Citizens' Election Program. SEEC's statement to the Court describes a program that depends on the honesty of the candidates who participate in it, PSR ¶ 79, and nothing in this memorandum suggests otherwise. But the Court must sentence the conduct that occurred, and three things about it matter.

***No public money went to Mr. Bradley's personal use***. He paid for the event himself. The violation lay in exceeding the personal-spending limit and failing to disclose it; the grant that followed was spent on the campaign. There was no kickback, no straw donor, no bribe, and no *quid pro quo*. If the Government responds that the benefit was the Senate seat, the answer is that SEEC denied the general-election grant and he won without it. The seat was not bought with public money, and in any event, it is gone.

***The Program's safeguards worked***. A citizen complaint was investigated, and the second grant was withheld before a dollar of it left the Fund. SEEC's concern that "dishonest candidates might gain an unfair, and publicly financed, advantage" was answered here by SEEC's own process, and the candidate has since lost everything the campaign was meant to win.

***The alteration of the forms was Ms. Manus's decision***. She said so under oath. She agreed that she had told the FBI in January 2020 that Mr. Bradley had made clear there were to be no money and no forms collected that night; that "figure it out" could have meant telling SEEC the

truth; and that had SEEC been told, “they would have fixed it.” Trial Tr. (Mar. 23, 2026) at 187, 205, 207; PSR ¶ 49. A sentence that treats Mr. Bradley as the architect of the alteration would rest on a version of events the Government’s own witness did not give.

The Government will emphasize the August 21, 2018 letter to SEEC, Mr. Bradley’s October 17 remarks to the Commissioners, and the video of the event forwarded to the agency the next day, which omitted footage of the contribution forms. PSR ¶¶ 68, 73–76. The defense does not pretend those paragraphs are not in the report. The August 21 e-mail is Count Five. The October statements were made to a state agency eight years ago in a proceeding that ended two days later with the denial of the second grant. The Probation Office considered whether that conduct warranted an obstruction enhancement and declined to impose one, PSR ¶ 81, and the Government has not objected. These are the statements for which Mr. Bradley has apologized. They are part of the offense the Court is sentencing, not a reason to add to it.

**B. The History and Characteristics of Dennis Bradley**

***1. A life of service in Bridgeport***

Mr. Bradley was born in 1983, the son of an Army father who is now a pastor and a mother who worked as a tax preparer. PSR ¶¶ 106, 112. He graduated from Norwich University and the University of Massachusetts School of Law, where he received the St. Thomas More Award, “recognizing a student who has been a voice for ethics in the classroom and the courtroom.” Ex. A (Duncan); PSR ¶ 128. He came to Bridgeport in 2010 as a constituent liaison for Congressman Himes, was admitted to the bar in 2012, and opened his own practice. PSR ¶¶ 130–32. He served as President of the Board of Education, on the Board of Fire Commissioners, and on the NAACP Redress Committee. PSR ¶ 135; Ex. A (Marshall, Zingaro).

The letters in Exhibit A come from people who worked beside him for years and describe specific things they saw him do.

Michael Riley, a Bridgeport lawyer of twenty years' standing, writes:

> Dennis is, in the truest sense, a man of the people. He has devoted his practice to a population that is chronically underserved in Connecticut's courts: people without money, without connections, and often without anyone else willing to stand up for them. He has taken their cases, returned their calls, and treated them with the same seriousness and respect he would show any client.

Ex. A (Riley).

Jorge Cintron, a retired Bridgeport homicide detective with twenty-six years in law enforcement who was once cross-examined by Mr. Bradley in a murder trial, writes that "[w]hether someone needed free legal advice or a consultation, housing assistance, financial support, or access to social and legal services, Dennis was someone I could turn to for help or direction," and that "[e]veryone I referred to Attorney Dennis Bradley was extremely grateful for his assistance." Ex. A (Cintron).

Lydia Martinez, the City Clerk, who was one of the two people who confronted Ms. Manus about the contribution forms at Dolphin's Cove, PSR ¶ 49, confirms that "[h]e has done numerous *pro-bono* cases for those in need of legal assistance." Ex. A (Martinez).

Pastor Dexter Upshaw describes him "providing *pro bono* legal services to the church and members unable to afford representation" and, as a State Senator, helping to "secure essential funding for our youth summer and after-school programs." Ex. A (Upshaw).

Jonathan Charlestin, whose mother Mr. Bradley represented without charge after a contractor failed to perform, writes: "He had no obligation to become involved and did not stand to benefit financially from doing so. He saw that she needed help and chose to use his legal knowledge and time to assist her." Ex. A (Charlestin).

Attorney Gene Zingaro, who has “no political connection” to him, writes: “He volunteers his valuable time to help people when no one else will. That’s service.” Ex. A (Zingaro). Attorney Heidi Avila, often his opposing counsel, has “seen him take time with clients who were anxious, unfamiliar with the court system, and often without resources.” Ex. A (Avila).

Dr. Boka Nwajagu credits him with finding the state funding without which a Bridgeport youth arts program “would have folded up.” Ex. A (Nwajagu).

Norberto Caribe, a Deputy Chief Judicial Marshal, writes about his eighty-seven-year-old grandmother, who had seen then-Senator Bradley on television and wanted to meet him:

> One afternoon, Dennis came to my grandmother’s home to check on her and speak with her about her needs as one of his senior constituents. . . . She couldn’t believe Dennis Bradley had knocked on her door, he knew her name and he wanted to meet with her. After several moments of hesitation, she invited him inside, she made him coffee, and the two of them sat and talked about what seemed like anything and everything under the sun. . . . Dennis did not treat her like a number or just another constituent. He sat with her, listened to her, spoke with her, and made her feel important. By the end of that visit, he had become more than someone she had seen on television. In her eyes, he had become part of our family.

Ex. A (Caribe). Mr. Caribe, who works in the criminal courts every day, concludes: “I respectfully ask the Court to consider a sentence that does not include a term of incarceration.” *Id.*

Kelvin Ayala, a Bridgeport community leader, explains why this matters in a city like Bridgeport: “In our community, we don’t have many references of individuals who practice law, give us hope through civic action, and simultaneously roll up their sleeves to simply serve people.” Ex. A (Ayala). Rev. William McCullough, pastor of Russell Temple CME Church and Presiding Elder of the New York/New England District, writes that “Dennis genuinely loves people. He loves this city, and he cares deeply about what happens to its children and families,” and reminds

the Court that "the worst chapter of a person's life should not automatically become the title of their entire story." Ex. A (McCullough).

These are not the recollections of political allies. Mr. Caribe is a court officer. Mr. Cintron investigated more than 200 homicides and has testified many times for the prosecution. Mr. Zingaro has no political connection to Mr. Bradley.

What unites them is that each saw Dennis Bradley do something for someone else that no one required him to do and no one was watching.

***2. The complainant asks the Court not to imprison him***

One letter stands apart, because its author is no friend of Dennis Bradley. Maria Pereira drafted and filed the SEEC complaint that led to this prosecution. PSR ¶ 66; Trial Tr. (Mar. 19, 2026) at 40. She served with him on the Board of Education, where, in her words, "our relationship was contentious and combative as we were political adversaries." Ex. A (Pereira). Her letter is unsparing. She writes that he made "poor decisions," not mistakes, and that she "would never support him for any elected office again." *Id.* The defense submits it as she wrote it, criticisms included. She writes:

> If I had any idea that Dennis Bradley would have been criminally prosecuted on felony charges by the federal authorities, I would never have filed the complaint. I genuinely believed a civil penalty and a form of restitution would have been ordered if my complaint had any merit, however I never imagined a federal prosecution and conviction, potentially resulting in incarceration.

*Id.* Ms. Pereira tells the Court that she is "totally opposed to his being sentenced to serve any amount of incarceration"; that he "has frequently demonstrated incredible compassion and generosity in the Bridgeport community by assisting the most vulnerable amongst us"; and that the Court should give him the chance to learn from his decisions "not only for himself, but for his two lovely young daughters as they need their doting father." *Id.* It is not often that the person who set a

prosecution in motion, and who has every political reason to wish the defendant ill, asks the sentencing judge for leniency. What she expected when she filed, a civil penalty and restitution, is close to what the defense proposes: restitution, supervision, service, and exclusion from politics.

***3. A father of two young daughters***

Mr. Bradley has two daughters, ages six and one. He and their mother, from whom he was divorced in 2025, share custody; the girls live primarily with her and are with him every Wednesday and Thursday and on alternating weekends. PSR ¶¶ 115–16, 137; Separation Agreement ¶ 2.1 (furnished to the Probation Office). He pays $3,000 a month in child support, an amount set above the guidelines figure so that the mortgage on the girls' home is paid from it first. Separation Agreement ¶ 5.1. He told the Probation Office that this case "has made him a better father" and that he "now focuses on his children." PSR ¶ 126. His own father calls him "the son that every father dreams of having." Ex. A (Bradley Sr.).

A prison term would fall on two children who have done nothing wrong. A six-year-old and a one-year-old do not understand a father's absence as the punishment of someone else; they experience it as the loss of him. It would also put at risk the payment that keeps them in their home. The Second Circuit has long recognized that family circumstances of this kind may support a sentence below the range. *United States v. Galante*, 111 F.3d 1029, 1035 (2d Cir. 1997). The Probation Office anticipates the problem: its suggested prison programming for Mr. Bradley is a course on maintaining a relationship with one's children "even while incarcerated." PSR ¶ 162. Every purpose of sentencing can be served without creating that need.

***4. No record, a decade of therapy, and five years on release***

Mr. Bradley is forty-two. He has no criminal history points and no prior convictions and has never been incarcerated. PSR ¶¶ 98–101, 161. He has attended weekly therapy since 2016 and has

no history of substance abuse. PSR ¶¶ 121, 123. For more than five years on release he reported as directed and appeared at every hearing, and apart from the pending state matter addressed below his supervising officer confirms his compliance. PSR ¶ 18. His pastors write that the faith community "stands ready to support him" with "guidance, accountability, mentorship, and support." Ex. A (Thompson).

**C. Mr. Bradley Has Already Been Punished**

A sentencing court properly considers that a conviction "already visits substantial punishment on the defendant" through the loss of a professional career, and that in such a case "the need for further deterrence and protection of the public is lessened." *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009). "It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence." *Id.* at 141–42.

This prosecution has cost Mr. Bradley his career in public office: he lost the 2022 primary under indictment and has told the Probation Office he has no further political goals. PSR ¶ 126. It has cost him his profession: he practiced for fourteen years, his license has been suspended since July 17, 2026, and the disciplinary proceeding that follows a felony conviction may end in disbarment. Ex. B. He carries $331,176 in student-loan debt for a degree he cannot now use. PSR ¶ 139. And it has cost him his name. As his former appellate counsel writes: "Dennis has already lost a great deal. He has been under federal indictment since May 2021. He is no longer a state senator. His law license has been suspended, and he may never practice again. In Bridgeport, his name will be tied to this case for the rest of his life." Ex. A (Taubes).

Attorney Steven Cousins, a colleague, puts it directly: "the damage to his political career is done," and he does not "know that the interest of justice will be further served by meting any more punishment for him." Ex. A (Cousins).

The defense does not ask the Court to treat these losses as a substitute for a sentence. It asks the Court to count them in deciding how much more is necessary.

**D. Remorse**

Mr. Bradley went to trial and may appeal on legal questions, including the reach of the wire fraud statute that the Court addressed under Rule 29. For that reason, he did not discuss the offense at his presentence interview, PSR ¶ 83, and the defense does not seek an adjustment under § 3E1.1. That silence is the ordinary consequence of preserving his right to appeal, and it supports no adverse inference about the facts of the offense. *Mitchell v. United States*, 526 U.S. 314, 328–30 (1999). What the Court can weigh is what Mr. Bradley has done. He did not wait for sentencing to apologize; he did it in July, on television, in his own city, and without qualification: "To the people of Bridgeport, I'm sorry." He agreed to the suspension of his license rather than contest it. He told the Probation Office that the case was the product of "pride and ego." PSR ¶ 127. Those who know him believe the remorse is real. Mr. Riley wrote: "I believe his remorse is sincere." Ex. A (Riley). Pastor Upshaw, who has known him twelve years, noted: "He has accepted responsibility and acknowledged his wrongdoing." Ex. A (Upshaw). Rev. Dr. Vernon Thompson, a pastor and licensed family therapist, explained: "I believe he understands that redemption requires more than words." Ex. A (Thompson).

**E. Deterrence, Protection of the Public, and Just Punishment**

*Specific deterrence.* There is no realistic prospect that Mr. Bradley will commit another federal offense. He is a first offender in his forties, the offense arose during his first campaign for state office eight years ago, and the conditions proposed below would bar him from any role in any campaign and place any election filing under the Probation Office's review. Nor is a prison term needed to get his attention. For a man who has never served a day, federal supervision backed by

the threat of imprisonment is a real deterrent; as the Second Circuit has explained, "a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve." *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001).

*General deterrence.* The Government will argue that prison is needed to deter other candidates. Deterrence comes principally from the certainty of being caught and punished, not from the length of the sentence. Nat'l Inst. of Justice, U.S. Dep't of Justice, *Five Things About Deterrence* (2016). SEEC asks that conduct of this kind be "met with meaningful consequences." PSR ¶ 79. It does not ask the Court to imprison Mr. Bradley, and the consequences here have been meaningful by any measure. For candidates for public office, this case has already delivered its message. A sitting state senator was indicted, tried in public, convicted, turned out of office, suspended from the bar, and brought to apologize on television to the city he represented. Every candidate in Connecticut who follows the news knows what happened to Dennis Bradley. Whether he now spends two years in a federal prison or three years under federal supervision working for Bridgeport adds little to that lesson.

*Just punishment.* A sentence that holds Mr. Bradley to the consequences he has already suffered and adds restitution, years of supervision, a bar from politics, and meaningful service promotes respect for the law. Imprisonment would add this: it would remove a father from two small children, end his ability to earn what restitution and child support require, and take from Bridgeport the one thing every letter in Exhibit A says he has given it, his time and commitment to help those in greater need than him. The need to provide restitution is itself a sentencing factor, 18 U.S.C. § 3553(a)(7), and a man at liberty and working can pay it. As Mr. Zingaro writes, "He serves the community better on the outside than he does inside." Ex. A (Zingaro).

**F. Unwarranted Disparities**

The most telling comparison is within this case. Jessica Martinez, the treasurer, co-signed the Program affidavit, authorized the collection of money at Dolphin's Cove, gave false sworn testimony to SEEC, and lied to a federal grand jury. PSR ¶¶ 56, 71; Trial Tr. (Mar. 23, 2026) at 218. She pleaded guilty to one count of false declaration, and the Court sentenced her to time served with no supervision. ECF No. 308; PSR ¶ 3. Ms. Manus, who altered the forms, awaits sentencing. PSR ¶ 4. Pleas and cooperation are legitimate grounds for distinction. But two years in prison for Mr. Bradley, against time served for the treasurer who signed the filings, is a disparity that those grounds alone cannot explain.

Comparable cases point the same way. Former State Senator Ernest Newton was prosecuted for obtaining an $80,550 Citizens' Election Program grant in this same Senate district by submitting $500 in contributions from five people who had given nothing. *State v. Newton*, 330 Conn. 344, 348–51 (2018). After a jury convicted him on three counts, the trial court imposed six months' imprisonment, stayed pending appeal; the Supreme Court reversed, *id.* at 352, 372, and on remand he pleaded guilty and received an eighteen-month suspended sentence. *See* Brian Lockhart, *Bridgeport Councilman Newton Avoids Jail Time*, Conn. Post (Aug. 22, 2019). In *United States v. D'Souza*, No. 14 Cr. 34 (RMB), ECF Nos. 54, 58 (S.D.N.Y. Sept. 23, 2014), a defendant who made campaign contributions in the names of others, with a stipulated Guidelines range of 10 to 16 months, received five years of probation with eight months in community confinement, weekly community service, and a $30,000 fine. In this District, Judge Arterton sentenced Brian Foley, who concealed $35,000 in payments to a former Governor for campaign work and who cooperated with the Government, to three years of probation with three months in a halfway house, and the candidate, Lisa Wilson-Foley, to five months. *United States v. Foley*, No.

3:14-cr-65 (JBA), ECF Nos. 79, 89 (D. Conn. Jan. 12 & Mar. 30, 2015) (judgments); *see United States v. Rowland*, 826 F.3d 100, 106, 116 (2d Cir. 2016) (describing the payments). The defendants who have received substantial prison terms here for campaign-finance crimes were a repeat federal offender, *Rowland*, 826 F.3d at 105, 107 (30 months), and participants in the Donovan campaign scheme to trade legislation for cash, one of whom received 38 months for conduct the sentencing judge called particularly crass. *See* Press Release, U.S. Att'y's Office, D. Conn., *Campaign Worker Sentenced to 38 Months in Prison for Role in Illegal Contribution Scheme* (Aug. 27, 2013); Associated Press, *Ex-Donovan Aide Sentenced to 3 Years* (Aug. 27, 2013). Neither circumstance is present.

**G. The Pending State Matter**

Mr. Bradley was arrested by state authorities on October 6, 2026, on charges relating to absentee ballots in a July 2026 municipal primary. PSR ¶¶ 16–17, 103. On October 9, Magistrate Judge Spector found probable cause under 18 U.S.C. § 3148(b) on the basis of the state warrant affidavit and, on the joint recommendation of the Government, the Probation Office, and the defense, continued his release on a bond secured by his father's property. ECF No. 418. The charges are unproven, and he is presumed innocent of them. The defense anticipates that they will be resolved through Connecticut's diversionary programs, which end in dismissal, and objects to any reliance on the allegations here. Two additional points only. Every party agreed on October 9 that Mr. Bradley could safely remain in the community. And Judge Spector took under advisement whether to restrict his participation in campaign activity pending sentencing, *id.*; the conditions proposed below resolve that question for the full term of supervision.

## V. THE PROPOSED SENTENCE

The defense asks the Court to impose a sentence of time served followed by three years of supervised release, 18 U.S.C. § 3583(b)(2), or, in the alternative, three years of probation, 18 U.S.C. § 3561(c)(1). The PSR notes that a range in Zone D makes a defendant "ineligible for probation" under the Guidelines. PSR ¶ 153. That describes the advisory Guidelines, not the Court's authority: Mr. Bradley is statutorily eligible for probation on each count, PSR ¶ 151, and *Gall* affirmed probation from a higher range. Either structure keeps Mr. Bradley under the Court's authority longer than any prison term the Guidelines contemplate and carries the real prospect of imprisonment if he fails to comply. He proposes, and consents to, the following special conditions:

*1. No candidacy or campaign role.* For the term of supervision Mr. Bradley will not seek or hold elective office and will not serve as a candidate, treasurer, officer, consultant, or volunteer for any political committee or campaign. The Connecticut Superior Court imposed a comparable two-year bar on a former State Representative in a 2015 election-law case. *See* Associated Press, *Ex-Bridgeport Representative Pleads Guilty to Lying to Investigators* (Sept. 25, 2015) (former State Rep. Christina Ayala; one-year suspended sentence and two-year bar on running for office).

*2. Probation Office review of election filings.* Any filing Mr. Bradley is required to make with a state or federal election authority during the term will be provided to the Probation Office before it is submitted.

*3. 320 hours of community service in Bridgeport,* over three years, at organizations approved by the Probation Office: youth programs of the kind Dr. Nwajagu and Pastor Upshaw describe, and outreach to seniors of the kind Mr. Caribe's grandmother received. The Probation Office suggests 100 hours. PSR ¶ 167(1). Mr. Bradley proposes more than three times that. For a

man whose life has been public work, service is not a lesser punishment than confinement; it is the one that fits, and it returns something to the community the offense affected.

*4. Continued mental-health treatment and financial disclosure,* as the Probation Office suggests. PSR ¶ 167(2)–(3).

*5. Restitution.* Restitution is mandatory, and SEEC seeks $84,140. PSR ¶ 158. For the reasons in Part III.B, the defense has preserved its position that the loss the Fund sustained is the amount by which Connecticut law would have reduced the grant, $7,257.38. The defense recognizes that the Court may see the matter differently in light of its post-verdict ruling and does not belabor the point. Mr. Bradley will pay what the Court orders on the schedule the Probation Office proposes, PSR ¶ 167(5), and asks to be left in a position to earn it.

*Fine.* The defense asks that no fine be imposed, or that any fine be at the bottom of the range. The PSR concludes that Mr. Bradley can pay a fine because he reports a positive monthly cash flow. PSR ¶ 140. But that cash flow consists of $2,800 in wages and $3,000 in loans; without the borrowed money, his $3,000 child-support obligation alone exceeds his income. PSR ¶ 137. He has about $2,000 in the bank and $331,176 in student-loan debt, and his only substantial assets are three vehicles, which are better applied to restitution than to a fine. PSR ¶¶ 137, 139. A fine may be imposed only to the extent it will not impair the defendant's ability to make restitution, 18 U.S.C. § 3572(b), and what Mr. Bradley can pay should go first to SEEC and to his daughters.

*If the Court imposes imprisonment.* Should the Court conclude that some confinement is required, the defense asks that it impose the shortest term consistent with its judgment, to be served as far as possible in home detention or community confinement; permit self-surrender after the holidays; recommend designation as close to Bridgeport as possible; and continue release pending appeal under 18 U.S.C. § 3143(b). An appeal would present a substantial question on the reach of

the wire fraud statute, the question on which the Court granted acquittal on three counts, and five and a half years of appearances establish that Mr. Bradley is neither a flight risk nor a danger.

## VI. CONCLUSION

Dennis Bradley paid for his own campaign launch party, and his campaign failed to report it. No public money went to his personal use; the second grant was never paid; and the alteration of the forms was, by the Government witness's own testimony, her decision. For that he has spent eight years under investigation and indictment, lost his seat, his license, and his marriage, and apologized to his city. Of the twenty-one people who have written to the Court, the woman whose complaint began this case among them, not one asks that he be imprisoned. As one colleague puts it, "any mercy or leniency extended to him will not be squandered." Ex. A (Mitchell-Hoffler). A sentence of time served and supervised release, or probation, with a bar from politics, oversight of any election filing, 320 hours of service to Bridgeport, and restitution, punishes, deters, protects, and restores. It is sufficient. A term of imprisonment would be greater than necessary.

Dated: November 19, 2026
Stamford, Connecticut

Respectfully submitted,

THE DEFENDANT,
DENNIS A. BRADLEY, JR.

/s/ Darnell D. Crosland, Esq.
Darnell D. Crosland, Esq.
CROSLAND LAW GROUP LLC
1200 Summer Street, Suite 202
Stamford, Connecticut 06905
Tel: (203) 921-1782
info@croslandlaw.com

/s/ Michael H. Sussman, Esq.
Michael H. Sussman, Esq.
SUSSMAN & ASSOCIATES
1 Railroad Avenue, Suite 3, P.O. Box 1005
Goshen, New York 10924
Tel: (845) 294-3991
sussman1@sussman.law

Attorneys for Defendant Dennis A. Bradley, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2026, a copy of the foregoing Defendant's Sentencing Memorandum, together with its exhibits, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. A copy has also been provided by e-mail to Senior U.S. Probation Officer Winter Pascual.

/s/ Darnell D. Crosland, Esq.
Darnell D. Crosland, Esq.

## INDEX OF EXHIBITS

**Exhibit A** Letters in Support of Dennis A. Bradley, Jr. (21 letters, with index)

**Exhibit B** Order of Interim Suspension, Office of Chief Disciplinary Counsel v. Bradley, No. UWY-CV-26-6096127-S (Conn. Super. Ct. July 10, 2026)

United States v. Dennis A. Bradley, Jr., No. 3:21-cr-87 (VAB)
Defendant's Sentencing Memorandum

Letters in Support of Dennis A. Bradley, Jr.

| No. | Writer | Affiliation | Ex. A Page |
|---|---|---|---|
| 1 | Atty. Alexander T. Taubes | Attorney, New Haven | 3 |
| 2 | Atty. Michael Riley | Riley Law, LLC, Bridgeport | 4 |
| 3 | Rev. William McCullough | Pastor, Russell Temple CME Church, Bridgeport | 5 |
| 4 | Norberto Caribe | | 7 |
| 5 | Atty. Steven H. Cousins | Attorney, Monroe | 9 |
| 6 | Atty. Thomas K. Mitchell-Hoffler | Attorney, Waterbury | 10 |
| 7 | Jorge Cintron | Retired Detective, Bridgeport Police Department | 11 |
| 8 | Lydia N. Martinez | City Clerk, Bridgeport | 13 |
| 9 | Bishop Pastor Victor Gomez | | 14 |
| 10 | Jonathan Charlestin | | 15 |
| 11 | Sir Dr. Boka Nwajagu | Creative Youth Productions, Bridgeport | 16 |
| 12 | Kelvin Ayala | Community Leader and Business Advocate, Bridgeport | 18 |
| 13 | Rev. Dr. Vernon Thompson | Pastor; Licensed Marriage and Family Therapist | 20 |
| 14 | Pastor Dexter B. Upshaw Jr. | New Vision International Ministries, Bridgeport | 22 |
| 15 | Atty. Eugene J. Zingaro | Zingaro & Cretella, LLC, Newtown | 23 |
| 16 | Atty. Rashmi N. Patel | Law Offices of Rashmi N. Patel, LLC, Stamford | 25 |
| 17 | Prof. Dwight G. Duncan | Professor Emeritus, UMass School of Law | 32 |
| 18 | Dr. Rev. Dennis A. Bradley Sr. | Father | 33 |
| 19 | Rev. William J. Marshall | The City of Life Worship Center, Bridgeport | 35 |
| 20 | Atty. Heidi Avila | Attorney | 37 |
| 21 | Maria Pereira | SEEC Complainant | 38 |

*Page references are to the pages of this exhibit as filed (PDF pagination). Home addresses have been redacted pursuant to Fed. R. Crim. P. 49.1(a).*

# Attorney Alexander T. Taubes

470 James St., Suite 007, New Haven, CT 06513 | alextt@gmail.com | (203) 909-0048


October 6, 2026
*By E-Mail to Defense Counsel*

The Honorable Victor A. Bolden
United States District Judge
141 Church Street
New Haven, CT 06510

**Re: *United States v. Dennis A. Bradley, Jr.*, No. 3:21-cr-87 (VAB)**
**Letter in Support of Leniency at Sentencing**

Dear Judge Bolden,

I write to ask the Court to show Dennis Bradley mercy at sentencing.

I am a civil rights and criminal defense lawyer in New Haven, where I have had my own practice since 2019. The Court should know at the outset that I was one of Dennis's lawyers in this case. He retained me in 2023 to argue the government's appeal to the Second Circuit (No. 22-1207). That engagement ended in 2024. I do not represent him now, and I write only for myself.

The first thing I learned about Dennis's character came from a letter he wrote for someone else. In April 2020, early in the pandemic, the family of a man serving a state prison sentence asked Senator Bradley for help. He wrote to the Commissioner of Correction, pointed to the man's health problems, and urged that he be released. I learned of the letter a few weeks later, when I took on the man's case without charge. Speaking up for a man in prison is rarely good politics. Dennis did it anyway.

I came to know Dennis that year through community work in Bridgeport. Since then I have known him as a fellow lawyer, represented him, and become his friend.

I do not write to reargue the case. I do not minimize it.

But Dennis has already lost a great deal. He has been under federal indictment since May 2021. He is no longer a state senator. His law license has been suspended, and he may never practice again. In Bridgeport, his name will be tied to this case for the rest of his life.

I respectfully ask the Court to weigh those losses, along with the good I have seen him do, and to impose a sentence that does not send him to prison. I am glad to answer any questions.

Sincerely,

/s/______________________
Attorney Alexander T. Taubes

ATTORNEY MICHAEL RILEY
RILEY LAW, LLC
1087 BROAD STREET, BRIDGEPORT, CT 06604
PHONE: (203) 818-1888 FAX: (203) 663-8181
EMAIL: RILEY@RILEYUP.COM

October 6, 2026

The Honorable Victor A. Bolden
United States District Judge
United States District Court, District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

Dear Judge Bolden:

I write on behalf of Dennis Bradley, who is to appear before Your Honor for sentencing. I am an attorney licensed in Connecticut and have practiced for nearly twenty years. I write with full knowledge of the jury's verdict and the seriousness of the offenses. I do not ask the Court to overlook them. I ask only that the Court consider the man I have known across most of my career.

For the majority of my twenty years in practice, I have worked beside Dennis, in the same courthouses, on the same dockets, and often on behalf of the same kinds of clients. That vantage point has allowed me to see who he is when no one is keeping score.

Dennis is, in the truest sense, a man of the people. He has devoted his practice to a population that is chronically underserved in Connecticut's courts: people without money, without connections, and often without anyone else willing to stand up for them. He has taken their cases, returned their calls, and treated them with the same seriousness and respect he would show any client.

Dennis is a gifted orator and a natural advocate. Those talents could have been put to many uses. What I have watched him do, year after year, is direct them toward people who needed a voice in the courtroom and did not have one. I have learned a great deal from watching him work, and I am a better lawyer for it.

I understand that Dennis has publicly apologized to the people of Bridgeport and that his conduct carries consequences, including for his law license. I believe his remorse is sincere. I also believe that his capacity to do good, which I have seen firsthand for many years, has not left him. I look forward to the day he can return to the practice of law and resume serving the people who have relied on him.

I respectfully ask the Court to weigh these qualities in fashioning a just sentence. Thank you for your consideration.

Respectfully,

Michael Riley, Esq.

**Russell Temple**
Christian Methodist Episcopal Church
555 Connecticut Ave.
Bridgeport, CT 06607
Church: 203-333-9061 Fax: 203-336-6817
www.russelltemple.org russelltemplecmechurch@hotmail.com
Rev. William D. McCullough, Pastor Rev. William McCullough, Presiding Elder Bishop Ricky Helton, Presiding Prelate

**To Whom It May Concern**:
My name is **Pastor William McCullough**, Pastor of Russell Temple CME Church in Bridgeport, Connecticut. For the last 17 years, and as the Presiding Elder for the New York/New England District, I have had the privilege of serving the people of Bridgeport as a pastor, community leader, and advocate for educational equity. Much of my work has centered on bringing faith leaders, parents, educators, and community members together to fight for better opportunities for our children and a stronger future for our city.

It is through this work, and through many years of relationship, that I came to know **Dennis Bradley**.

Dennis and I have stood together around issues of **education reform, equity, and opportunity for the children of Bridgeport**. In those spaces, I have seen something in him that cannot always be captured by a résumé or a public record: **Dennis genuinely loves people. He loves this city, and he cares deeply about what happens to its children and families.**

I have watched Dennis interact with parents, community leaders, clergy, educators, and everyday citizens. I have seen his passion for people who sometimes feel forgotten and his desire to use his voice to advocate for those who do not always have access to the rooms where important decisions are made.

I am certainly aware of Dennis' convictions. I do not dismiss them, excuse them, or minimize their seriousness. But after spending my life in ministry, I also believe that **the worst chapter of a person's life should not automatically become the title of their entire story**.

I believe in accountability, but I also believe in redemption.

I believe people can learn.

I believe people can grow.

And I believe people deserve the opportunity to demonstrate that their future can be greater than their past.

The Dennis Bradley I have known over these years is more than the mistakes associated with his name. I know him as a man who has demonstrated compassion, intelligence, energy, and a genuine concern for others. I know a man who has cared about education and who has wanted children in Bridgeport—regardless of their neighborhood, income, or circumstances, or zip code—to have access to opportunities that can change the trajectory of their lives.

Our city is not perfect, and neither are the people who serve it. But I have always believed that strong communities are built when we hold people accountable while still leaving room for **grace, restoration, and second chances**.

As a pastor, I have preached those principles. As a community leader, I have advocated for them. And as a man of faith, I must be willing to live by them.

That is why I am willing to speak to Dennis' character.

Over the years that I have known him, I have seen his heart for people and his love for Bridgeport firsthand. I have witnessed his commitment to education and his desire to see people succeed. Those experiences are real, and they are an important part of his story as well.

I respectfully ask that Dennis be considered not only in light of where he has been, but also in light of **who he has been to this community, what he has contributed, what he has learned, and who he still has the capacity to become**.

I believe that accountability and grace can occupy the same space. I believe restoration is possible. And I believe that when a person is willing to move forward with humility and purpose, we should not permanently close the door to the possibility of a meaningful future.

I offer these words based upon Dennis Bradley **I have personally known, worked besides, and observed over these many years**.

**Respectfully,**

**Rev. William McCullough**

**Rev. William McCullough**
Pastor, Russell Temple CME Church
Bridgeport, Connecticut

10/06/2026

Honorable Judge:

I am writing to you on behalf of Dennis Bradley, whom I have known for several years. I understand that Mr. Bradley is before the Court for sentencing following his conviction at trial. I also understand the seriousness of the circumstances that have brought him before the Court. When I first learned of the arrest, I was genuinely disappointed. When I learned of the verdict, I was deeply saddened.

I am not writing this letter to excuse or minimize whatever mistakes Mr. Bradley may have made. Rather, I am writing because I believe that a person should be considered in the totality of who they are—not solely by the worst chapter of their life.

I first met Dennis shortly after the COVID-19 pandemic began in late 2019. I was introduced to him through my mother, who has always been very active volunteering and supporting people from our community who seek elected office. At the time, Dennis was both a defense attorney and a State Senator. I am employed by the State of Connecticut, Judicial Marshal Services. My current title is Deputy Chief Judicial Marshal, and I am assigned to the Bridgeport Judicial District.

What stood out to me was his intelligence and his ability to connect with people. As an attorney, he struck me as the type of person you would want in your corner if life ever took an unexpected turn. He represented people from many different walks of life and appeared willing to stand up for people who needed someone to advocate for them.

Dennis also had a personable nature. He could speak seriously about important matters, but he also knew how to make people laugh. He had a way of mixing seriousness with humor that made people comfortable around him. He was someone who could walk into a room and connect with people regardless of their background or circumstances.

One of my most treasured memories involving Dennis has nothing to do with politics or the courtroom. It happened at my grandmother's home a few years ago.

My grandmother is 90 years old now, but when she was about 87 years old, she would frequently see Dennis on television being interviewed by News Channel 12 reporters and she would tell my mother how handsome she thought he was and would often say that she wanted to meet him in person. I assume it was because he reminded her of one of her children who passed away many, many years ago. I decided to make it happen. I took down his number and made plans for him to drop by.

One afternoon, Dennis came to my grandmother's home to check on her and speak with her about her needs as one of his senior constituents. When he arrived, my grandmother opened her apartment door and was in complete shock to see him standing there. She was almost at a loss for words. She couldn't believe Dennie Bradley had knocked on her door, he knew her name and he wanted to meet with her. After several moments of hesitation, she invited him inside, she made him coffee, and the two of them sat and talked about what seemed like anything and everything under the sun.

It was a simple visit, but it meant an enormous amount to my grandmother.

I had not seen my grandmother that happy in years. Dennis did not treat her like a number or just another constituent. He sat with her, listened to her, spoke with her, and made her feel important. By the end of that visit, he had become more than someone she had seen on television. In her eyes, he had become part of our family.

My grandmother still talks about Dennis to this day.

I have chosen not to tell her about what has happened because I know how much she thinks of him, and I do not want to cause her unnecessary sadness or disappointment. I sincerely hope that she can see Dennis again before her time comes to leave this world.

That memory is one of the reasons I felt compelled to write this letter.

I recognize that Mr. Bradley is before the Court because of serious circumstances, and I respect the Court's responsibility to impose an appropriate sentence. But I respectfully ask the Court to consider the person I have known over the years—the attorney who advocated for people, the public servant who made himself available to the community, the intelligent and personable man who could make people feel heard, and the individual who took the time to visit an elderly woman in her home simply to see how she was doing.

People make mistakes. Sometimes those mistakes have serious consequences. But I respectfully believe that a person's mistakes should not automatically define the entirety of who that person is or who that person can become.

For that reason, I respectfully ask the Court to consider a sentence that does not include a term of incarceration. If the Court determines that probation is appropriate, I believe Dennis should be given that opportunity to demonstrate through his actions that this chapter of his life does not have to be the final definition of his character.

Probation would give him the opportunity to accept responsibility, comply with the conditions imposed by the Court, and prove to everyone, including himself, that he can use the remainder of his life to make better choices and contribute positively to the people around him.

I do not make this request lightly. I make it because I have personally witnessed another side of Dennis Bradley—one that I believe deserves to be considered before the Court determines his sentence.

I respectfully ask the Court for mercy and for the opportunity for Dennis to move forward without incarceration, under the supervision and conditions the Court deems appropriate.

Thank you for taking the time to consider my thoughts and my personal experience with Mr. Bradley.

Respectfully,

**Norberto Caribe II**

Bridgeport, Connecticut

(203) 449-8744

norty.caribe@gmail.com

**Steven H. Cousins, LLC**
Attorney at Law

**Steven H. Cousins**
324 Elm Street, Suite 201B
Monroe, CT 06468

October 8, 2026

The Honorable Victor A. Bolden
United States District Judge
United States District Court
District of Connecticut
141 Church Street
New Haven, Connecticut 06510

**Re: United States v. Dennis A. Bradley, Jr.**
**Case No. 3:21-cr-00087 (VAB)**

Dear Judge Bolden:

I have known Dennis Bradley for some time. He has referred me several cases over the years and I am grateful for his kindness to me for having sent this work.

I would like to speak for leniency on his behalf.

First, I know Dennis Bradley to be a kind person. I would also like to point out that the matter for which he may be sentenced is not a violent crime in any way.

I don't know that the interest of justice will be further served by meting any more punishment for him. I say this because the damage to his political career is done. I don't know that he will ever hold elective office again.

Therefore, I feel that there should be no further damage to his legal career for which he spent years to go to school to secure his degrees and to get admitted to the bar.

I think that the system should take into account that he is probably finished politically, but he should be allowed to continue to practice law to provide for himself, his family, and to serve his clients.

Thank you.

Sincerely,

Steven H. Cousins
Juris No. 309069

SHC: cv

Telephone (203) 445-0629 Facsimile (203) 268-8483 Email: stevencousins@att.net

**LAW OFFICES**
**THOMAS K. MITCHELL-HOFFLER**
**41 Holmes Avenue**
**Waterbury, Connecticut 06710**

**TEL: (203) 755-2274**
**FAX: (203) 596-7099**

**October 6th 2026**

**Dear Your Honor,**
**It is both an honor and a difficult responsibility to write this letter on behalf of my esteemed colleague and close friend, Dennis Bradley. I have known Mr. Bradley for over ten years. We first met in court, and from that moment, a genuine professional and personal friendship formed. I was immediately struck by his drive, intelligence, and natural charisma. Even as a young attorney, he demonstrated professionalism, diligence, and a sincere commitment to his work.**

**Throughout his career, Dennis has been a shining presence within the Connecticut criminal court system. He has consistently shown himself to be a supportive colleague—always willing to lend a hand, share his knowledge, and offer words of encouragement and positivity to those around him. His contributions to the legal community have been meaningful, and his dedication to service has never wavered.**

**I fully recognize that Dennis now finds himself in a difficult and unfortunate position. However, I firmly believe that this moment does not erase the years of integrity, hard work, and community impact he has demonstrated. I respectfully ask the Court to consider the totality of his character, his accomplishments, and the merit he has earned throughout his professional life. I am confident that any mercy or leniency extended to him will not be squandered.**

**Your Honor carries the weighty responsibility of determining an appropriate sentence. I do not seek to diminish that duty. Instead, I humbly implore the Court to view Dennis not solely through the lens of this circumstance, but through the broader truth of who he has been to his community, his colleagues, and his profession. He has been an exceptional friend, a dedicated public servant, and a young man capable of continued positive impact.**

**I will continue to support Dennis in his future endeavors, and I remain hopeful that he will be granted the opportunity to rebuild, contribute, and grow from this experience.**

**Respectfully submitted,**

**THOMAS K. MITCHELL-HOFFLER**

October 9, 2026

**To: Honorable Judge Victor Bolden.**

My name is Jorge Cintron, and I am a retired detective with 26 years of law enforcement experience. During my career, I worked with local, state, and federal law enforcement agencies, including the FBI, DEA, U.S. Secret Service, and Homeland Security, as a member of the Bridgeport Police Department's Homicide Unit. I successfully investigated more than 200 homicide cases. I also served as a SWAT team member and a certified hostage negotiator. I was recognized as Officer of the year by my colleagues in 2019.

Throughout my career, I testified many times in state and federal courts as an expert witness. My last position was as an Inspector, working directly under the Honorable Judge Robert Develin Jr, at the first ever created Office of the Inspector General, investigating police-involved shootings and custody deaths statewide. Although I retired five years ago, I continue to testify in cases and appeals related to my previous investigations.

During my career, I had the opportunity to work with Dennis Bradley professionally and personally, to include been cross- examined by him during a murder trial. I have witnessed firsthand his professionalism, efficiency, and dedication to helping others. My work in law enforcement taught me the importance of understanding and caring about the community we serve. Throughout my career, I often relied on then, Senator Dennis Bradley for guidance and assistance when helping members of the community. Whether someone needed free legal advice or a consultation, housing assistance, financial support, or access to social and legal services, Dennis was someone I could turn to for help or direction.

I have personally witnessed Dennis advocate for people in our community, including those who might otherwise go unheard and taken advantage of. I have seen him take the time to speak with people who approached him on the street, listen to their concerns, and offer assistance regardless of their background or circumstances. He treated everyone with respect and dignity. Everyone I referred to Attorney Dennis Bradley was extremely grateful for his assistance. He consistently demonstrated that he genuinely cared about people and wanted to make a positive difference in their lives.

Your Honor, I don't have first hand, or full details about Attorney Dennis Bradley's current and unfortunate circumstances, however I do have first hand knowledge of my experiences and circumstances I shared with him. My observations were of a man who is a pillar in the community, a strong character, integrity, and good moral values. He is respected and loved by many.

Outside of his professional responsibilities, I often saw Dennis spending time with his family, including his wife, children, father, and brother. It was clear to me that his family was an important part of his life and that he valued the time he spent with them.

After 26 years in law enforcement, I have learned the importance of judging people by their total actions, their treatment of others, and their willingness to help those in need. Based on my personal experiences with Dennis Bradley, I have found him to be dependable, resourceful, respectful, and compassionate. He is a needed advocate, mostly by the less vulnerable people of our community.

Your Honor, I respectfully submit this letter to share with you, my firsthand experiences and observations of Dennis Bradley's character. I hope the court will consider my perspective and the positive qualities I have witnessed throughout our professional and personal interactions.

Thank you for your time and consideration.

Respectfully,

**Jorge Cintron**
Retired Detective
Former Bridgeport Police Department Homicide Unit
26 Years of Law Enforcement Service 203-650-4731

# LYDIA N. MARTINEZ

## BRIDGEPORT CITY CLERK

BRIDGEPORT, CONNECTICUT 06604


October 9, 2026

U. S. District Court Judge Victor A. Bolden
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT 06510

Re: United States v. Dennis A. Bradley, Jr.

Dear Honorable Judge Bolden:

My name is Lydia N. Martinez, and I have known Attorney Dennis A. Bradley, Jr., both professionally and as a friend for over twenty years. He has always demonstrated deep empathy for the Bridgeport community and they in turn have loved and trusted him. During the entire time I have known him he has shown himself to be of good character and a dedicated community leader. As a matter of fact we see him as a great advocate for and representative of our community, especially those of low income or facing other challenges in life.

Throughout my many years in elective office, as a state legislator, member of the Bridgeport City Council, and Bridgeport City Clerk, I have always found Attorney Dennis A. Bradley, Jr., willing to go above and beyond to help resolve the difficult situations constituents often find themselves in. I can say unequivocally that Attorney Dennis A. Bradley's compassion has made a significant difference in the lives of countless Bridgeport residents. He has done numerous pro-bono cases for those in need of legal assistance.

In my interactions with Attorney Dennis A. Bradley Jr. I have found him to be an individual who was proud of his accomplishments in life. I would ask that you show leniency towards him in your sentencing. Our community needs Latino leaders, who love, help and care for others as Attorney Dennis A. Bradley Jr. does. I believe in second chances for those who deserve it. Dennis Bradley Jr. is young, bright, and can give his community many more years of personal and legal service. Thank you for your time and consideration.

Sincerely,

Lydia N. Martinez

Lydia N. Martinez
Office of the City Clerk
Bridgeport City Hall
Bridgeport, CT 06604

To whom it may concern.

The Following declaration is in Support of my Friend and lawyer Dennis Bradley.

I give a faithful testimony of lawyer Bradley and his great commitment of loyalty to His Community of the City of Bridgeport and another city areas.

We have a friendship of several years,where I attest to his effort in helping others Both in any situation related to his work and personally.treating everyone in the same way.

A Strong defender as mentioned,of his Community.and We are united by a friendship Of great respect. I will continue to pray for Him,his Family and his office.

Att. Bishop Pastor

Victor Gomez.

The Honorable Victor A. Bolden
United States District Judge
United States District Court
District of Connecticut

10/08/2026

**Re: Dennis Bradley**

Dear Judge Bolden:

I am writing to respectfully share a personal experience that has shaped my view of Dennis Bradley. I understand the seriousness of the matters before the Court, and my purpose is not to minimize those circumstances or to offer an opinion regarding the Court's findings. I simply hope to provide a perspective based on an act of kindness that Dennis extended to my family.

Several years ago, my mother found herself in a difficult situation after a contractor failed to fulfill his obligations to her. She needed legal guidance and assistance, and Dennis stepped in to help her pro bono. He had no obligation to become involved and did not stand to benefit financially from doing so. He saw that she needed help and chose to use his legal knowledge and time to assist her.

As her son, I have never forgotten that. What stood out to me was not simply that Dennis was able to help, but that he was willing to do so without asking for anything in return. It was a meaningful act of service to my mother at a time when she needed someone willing to advocate for her.

My purpose in writing is not to speak to every aspect of Dennis's professional or public life. I can only speak honestly about what I have personally witnessed. That experience showed me that Dennis has the capacity to use his abilities to make a positive difference in another person's life. I believe he is a man with significant potential who can continue to use his talents in a constructive and meaningful way.

I recognize that good deeds do not erase mistakes or diminish the seriousness of the matters before the Court. I respectfully ask only that the Court consider this experience, along with the other information before it, when evaluating Dennis as a whole person and determining an appropriate sentence.

Thank you for taking the time to consider my perspective.

Respectfully,

**Jonathan Charlestin**

Sir Dr. Boka Nwajagu
[redacted]
Bridgeport, CT 06605
October 13, 2026

To Whom It May Concern

Re: Mr. Dennis Bradley

I have known Mr. Dennis Bradley for at least ten years. My first encounter with him was when he was sharing an office with another lawyer who was handling a housing case for my wife and I. This particular lawyer would give us appointments and would not show up, or would be late to his office. This happened a few times, until Mr. Bradley went out of his way to rebuke him, and urged him to be more professional in his treatment of clients. My wife and I were very impressed that he would go out of his way and challenge his colleague to behave better, without our requesting such assistance.

Mr. Bradley later moved his office to another location. When my daughter needed a legal advice on family-related matters, I took her to see Mr. Bradley for consultation and advice. To our pleasant surprise, Mr. Bradley waived the required consultation fee for my daughter.

Creative Youth Productions is a youth-led nonprofit performing arts organization located in Bridgeport. For several years the organization has engaged and challenged our youths to be constructive leaders in the community. The Bridgeport Board of Education had provided some funds to support the program for a few years, and then stopped the funding. As the Chairman of the Board of Directors for the organization, I went with the Executive Director of the organization, Ms. Donnasue DeGuzman and attended one of the Board of Education meetings to make a passionate appeal for the restoration of their funding. Despite the passionate and desperate presentation we made, the Board of Education members still turned down our appeals for the restoration of funding for the Youth program. As the Chairman of the Board of Education at the time, Mr. Bradley was touched, and challenged the other members of the Board to go out of their comfort zones and seek alternative funding for the youth programs. He saw the importance of the program for our youth in the community, and he promised that he

would also take up the challenge. A few months later, Mr. Bradley was able to connect Creative Youth Productions with some funding from the state government in Hartford. Without this lifeline the program would have folded up. Creative Youth Productions will forever be grateful to Mr. Dennis Bradley for the lifeline connection he successfully fought for the youths. Such is the outgoing passion and love, Mr. Bradley has and demonstrates in very tangible ways for people and our community.

Because of Mr. Bradley's outgoing interest and concerns for our youth and the community, Creative Youth Productions is standing tall and flying high.

Sincerely yours,

Sir Dr. Boka Nwajagu

October 26, 2026

To: Honorable Judge Victor A. Bolden

My name is Kelvin Ayala and I am writing to express my support for Dennis Bradley Jr. as the Court considers an appropriate sentence in this matter. Dennis has been a stand-up individual and a meaningful presence in the Bridgeport community, where his commitment to public service and the well-being of others has left a lasting impression on those who know him and have worked alongside him. I believe it is important that the Court consider not only the circumstances that brought Dennis before it, but also the broader context of his life, his contributions to the community, and the relationships he has built through years of service.

I have known Dennis for over 10 years and he has always been an impactful leader especially for our youth and our most vulnerable senior population. I have witnessed first hand his personal contributions of time and resources. I've seen him bring hope and encouragement to many who have felt helpless in a tough city like Bridgeport, by sharing his knowledge and experiences. In our community, we don't have many references of individuals who practice law, give us hope through civic action, and simultaneously roll up their sleeves to simply serve people.

Although I am disappointed with his actions in this case, growing up in Bridgeport, I've witnessed my share of criminals that needed incarceration. While I recognize the seriousness of the conduct underlying Dennis's conviction, I believe there is an important distinction between acknowledging a serious lapse in judgment and concluding that incarceration is the necessary response. I respectfully ask the Court to consider whether the objectives of sentencing—including accountability, deterrence, and rehabilitation—can be achieved through a sentence that does not require imprisonment. A fair and proportionate sentence can recognize the seriousness of the offense while also allowing room for redemption and meaningful rehabilitation.

As someone who ran for State Representative in 2020, and qualified for state elections campaign grant funds, I was in awe of the many rules and guidelines I simply did not understand. In fact, I was audited by the state for campaign finance review immediately upon my campaign closure. I had assembled a team of highly educated individuals and when we would contact the State Elections Enforcement Committee (SEEC) office for clarification on rules around accounting, best practices, or simple filings, we were given vague answers at best. I see an opportunity for Dennis to serve the people in this state on legal matters to properly navigate SEEC procedures and guidelines. Someone of Dennis' capacity would have a larger impact statewide educating and working with civic organizations on navigating legal issues in our state political system citing his personal experience and serving as an example for future leaders statewide.

I understand that Bridgeport cynically has been a poster child for corruption and politics and yet this case jumps off the page as so much different from those cases of true malfeasance.
I respectfully urge the Court to consider Dennis's overall impact, his personal relationships, and the possibility of his continued positive contributions when determining his sentence. I am not asking the Court to overlook the offense or diminish the importance of the law; rather, I ask that the sentence reflect a thoughtful balance between accountability and the opportunity to move forward constructively. I believe that a sentence without incarceration, accompanied by appropriate conditions that the Court deems necessary, would provide meaningful consequences while preserving Dennis's ability to continue contributing to our community constructively.

Respectfully submitted,

Kelvin Ayala
Community Leader and Business Advocate
[redacted]
Bridgeport, CT. 06605
kelvin.ayala@ledbyusct.com

HUNTSVILLE
BAPTIST CHURCH

**Honorable Judge,**

I write to you as a pastor, community leader, and licensed Marriage and Family Therapist in support of Mr. Dennis Bradley as you consider an appropriate sentence in this matter.

At the outset, I wish to acknowledge that Mr. Bradley has accepted responsibility for serious mistakes. Accountability is an essential principle of both our justice system and our faith. As members of the Body of Christ, we do not excuse wrongdoing, nor do we seek to minimize the consequences of poor decisions. Rather, we believe that true accountability requires an individual to honestly confront their actions, accept responsibility, and commit to meaningful change.

While Mr. Bradley's mistakes should not be overlooked, I respectfully ask the Court to also consider the totality of his character, his history of service, and his potential for rehabilitation. Throughout his years in public life, he has contributed significantly to the Bridgeport community through his support of youth, educational initiatives, and civic engagement. As a well-educated African American leader, he has served as an example to many young people seeking to overcome challenges and pursue opportunities for success.

As both a pastor and a Marriage and Family Therapist, I have witnessed firsthand the transformative power of counseling, therapy, and intentional self-reflection. Rehabilitation is most effective when individuals are willing to examine the underlying factors that contributed to poor decision-making and commit themselves to personal growth. I am encouraged that Mr. Bradley has expressed a commitment to participating in therapy and counseling as part of that process.

Counseling provides individuals with an opportunity to develop greater self-awareness, strengthen personal accountability, improve decision-making skills, and address patterns of thinking and behavior that may have contributed to past mistakes. Through this work, individuals often emerge with a deeper understanding of themselves, their responsibilities, and the impact of their actions on others. Genuine rehabilitation is not simply about serving a sentence; it is about doing the difficult

internal work necessary to become a better citizen, leader, father, mentor, and member of the community.

Mr. Bradley has committed to engaging in that process. In my conversations and observations, I believe he understands that redemption requires more than words. It requires humility, accountability, counseling, personal growth, and a willingness to repair the harm that has resulted from one's actions. I believe he is prepared to undertake that journey.

Our faith teaches that while accountability is necessary, restoration should remain possible. We believe individuals should be held responsible for their conduct, but we also believe society benefits when people who have acknowledged their mistakes are given the opportunity to learn, grow, and use their experiences to help others avoid similar missteps.

Should the Court see fit to provide Mr. Bradley with an opportunity for rehabilitation, the faith community stands ready to support him. As pastors, elders, counselors, and community leaders, we are prepared to provide guidance, accountability, mentorship, and support as he works to restore trust and dedicate himself to service. I firmly believe that his future contributions to the community can be meaningful and impactful, particularly as he shares the lessons learned from this chapter of his life.

I respectfully ask the Court to consider not only the offense before it, but also Mr. Bradley's demonstrated history of service, his commitment to counseling and personal growth, the strong support system available to him, and his sincere potential for rehabilitation and continued service to the people of our community.

Thank you for your thoughtful consideration and for your continued service in the pursuit of justice.

Respectfully submitted,

*Rev. Dr. Vernon S. Thompson*

**Reverend Dr. Vernon S. Thompson, Sr.**

**Pastor, Community Leader, Dual Doctorate in MFT**

Oxford, North Carolina

NEW VISION INTERNATIONAL MINISTRIES
Pastor Dexter B. Upshaw Jr. • Senior Pastor & CEO
Bishop Derek L. Calhoun • Overseer & Co-Founder
Bishop Vaughn M. McLaughlin • Co-Founder

October 27, 2026

Dear Judge Bolden:

My name is Dexter B. Upshaw Jr., Senior Pastor of New Vision International Ministries in Bridgeport, Connecticut. I have known Dennis Bradley for 12 years through my pastoral role.

I recognize the seriousness of his conviction. He has accepted responsibility and acknowledged his wrongdoing. While I cannot speak to his political activities, I can attest to his positive impact within our church community.

Dennis was an active and committed member of New Vision for several years. He consistently offered support, from writing grants to volunteering at church clean-ups, and generously contributed his time and resources.

Dennis was also generous with his professional skills, providing pro bono legal services to the church and members unable to afford representation. His assistance made a significant difference for families facing legal challenges.

As a State Senator, Dennis helped secure essential funding for our youth summer and after-school programs. This support provided dozens of young people with safe, structured opportunities for academic and entrepreneurial growth. Throughout my years of knowing him, Dennis has engaged with our congregation in constructive and meaningful ways, consistently seeking to help others.

As a pastor, I am mindful of human imperfection. While some mistakes carry greater consequences, accountability should allow for redemption. Genuine remorse should always lead to restoration.

I respect the responsibility of your office in determining Dennis Bradley's sentence. I ask the Court to consider his record of service to our community in your decision.

Thank you for your time and consideration,

Pastor Dexter B. Upshaw Jr.
Senior Pastor, New Vision International Ministries
pastordexter@nvim.org

Zingaro & Cretella, LLC
Attorneys at Law

**Eugene J. Zingaro** | **Donald J. Cretella**

30 Church Hill Road
Unit 201
Newtown, CT 06470

681 State Street
2nd Floor
New Haven, CT 06511

October 29, 2026

Dear Honorable Victor Bolden,

I am writing this letter on behalf of Attorney Dennis Bradley, whom I have known professionally for 15 years. I have been a member of the Connecticut Bar, in good standing, for 30 years. I am a member of the federal bar and a former officer in the Marine Corps.

I am acutely aware of both the offenses he has been convicted of and the circumstances around the same. I have no political connection to Attorney Bradley.

A good portion of my practice is criminal defense. I have said before that sometimes good people commit crimes. It doesn't mean they should be characterized as criminals. Dennis Bradley fits that description.

He is a good man. Who made a mistake.

Your Honor, that bears repeating. Dennis Bradley is a good man, and I have witnessed countless incidents where he has chosen to help others over his own interests. I know for a fact he has been committed to both the young and the elderly constituents in his jurisdiction. He has worked tirelessly on behalf of the underprivileged. A good example of that is the work he did on St. Mark's after-school program or as the NAACP redress attorney.  He volunteers his valuable time to help people when no one else will. That's service.

I have always found Dennis Bradley to be an honest person. A hard worker, he has served his community admirably and deserves credit for that. However, the type of person Dennis is, he

would never ask for credit. To people like Dennis, service is expected. No gold stars are given out. I share those sentiments.

In weighing the competing interests between the government's sentencing argument and leniency, I would ask that you consider that, because of his background, he is very likely to be rehabilitated. He serves the community better on the outside than he does inside. It seems to me that incarcerating Bradley is punishing him for punishment's sake. That's not criminal JUSTICE. That would be just appealing to the masses. That would be just headlines. Respectfully, Your Honor, that type of thinking has no place in this hearing. Incarcerating Mr. Bradley shows adherence to a sentencing philosophy that is outdated.

Please consider a fully suspended sentence.

Should Your Honor wish to hear this in person, I would be honored to appear in your court and stand shoulder to shoulder with Dennis Bradley.

Very Truly Yours,

Eugene J. Zingaro, Esq.

LAW OFFICES OF
*RASHMI N. PATEL, LLC*
ATTORNEY AT LAW

1234 SUMMER STREET 4TB
FLOOR STAMFORD,
CONNECTICUT 06905
TELEPHONE (203) 977-2406
FACSIMILE (203) 978-9041
rashmi@rpatellaw.com

November 1, 2026

**The Honorable Victor A. Bolden**
United States District Judge
United States District Court
District of Connecticut
New Haven, Connecticut

**Re: United States v. Dennis A. Bradley Jr.**
**Criminal Case No. 3:21-cr-00087**
**Sentencing Scheduled for December 3, 2026**

Dear Judge Bolden:

I write to Your Honor with the utmost respect for this Court, a profound appreciation for the seriousness of the proceedings before it, and a heart that is considerably heavier than I can adequately express. Throughout my twenty-two years practicing law in Connecticut, I have written countless letters, advocated for individuals facing life-altering circumstances, and stood beside clients during some of the most difficult moments of their lives. Yet, as I sit down to write this letter on behalf of Attorney Dennis Bradley, I find myself struggling to articulate the depth of what I feel, because this is not simply a letter concerning a fellow attorney or professional colleague, but rather someone who has been an integral part of my personal and professional life for approximately twenty years. Dennis has been one of my closest friends, a trusted colleague, an extraordinary mentor, a source of personal strength, and someone whom I consider part of my family. It is difficult to capture the significance of such a relationship in a letter, particularly when the person I am writing about now faces circumstances that may profoundly change his life and the lives of those who love him.

I understand that Dennis stands before this Court following a serious federal conviction, and as an attorney and an officer of the court, I respect the judicial process, the jury's verdict, and the solemn responsibility Your Honor bears in determining an appropriate sentence. I do not write to challenge those proceedings, minimize the seriousness of the offenses, or suggest that Dennis should be exempt from accountability. Rather, I write to offer a deeply personal and firsthand account of the man I have known, respected, admired, and loved as a friend for the better part of two decades, with the sincere hope that my perspective may assist the Court in understanding the entirety of the person who stands before it. I respectfully ask Your Honor to consider not only the circumstances that have brought Dennis before the Court, but also the life he has lived, the

relationships he has nurtured, the people he has helped, and the positive influence he continues to have upon those fortunate enough to know him.

I have been practicing law in Connecticut for approximately twenty-two years, primarily in the areas of immigration, family law, criminal law, and personal injury, and throughout my career, I have had the privilege of working alongside many talented attorneys. However, very few individuals have had the lasting professional influence upon me that Dennis has had. What began as a professional relationship gradually developed into a friendship built upon mutual respect, trust, and genuine affection, and over time, Dennis became someone whose guidance and encouragement helped shape the foundation of my legal career. As I developed my immigration and family law practice, he was someone I could consistently turn to for advice, perspective, encouragement, and reassurance, particularly during periods when I was navigating the challenges of building and expanding my practice. He generously shared his knowledge and experience, helped me approach difficult professional decisions with greater confidence, and encouraged me to recognize abilities within myself that I sometimes struggled to appreciate. When I sought to expand into personal injury law, Dennis was instrumental in teaching me an area of practice that required a different understanding of litigation, case development, and client advocacy, and his willingness to devote his time and attention to my professional growth is something for which I remain deeply grateful.

What has always distinguished Dennis in my eyes is not simply his knowledge of the law, but his willingness to share that knowledge and invest in the success of others. The practice of law can be extraordinarily demanding, particularly when one is responsible for guiding individuals and families through circumstances that may forever alter their lives, and there are moments when even experienced attorneys question their judgment or feel overwhelmed by the weight of their professional responsibilities. Dennis understood those challenges and was someone I could call when I needed guidance, a second opinion, or simply the reassurance that I was moving in the right direction. He never made me feel inadequate for asking questions or treated my professional uncertainties as weaknesses, but instead encouraged me, challenged me, and helped me develop the confidence necessary to become a stronger and more capable attorney. There is an enormous difference between someone who occasionally provides professional advice and someone who genuinely invests in another person's success, and Dennis has consistently demonstrated the latter in his relationship with me. When I reflect upon the attorney I have become and the practice I have spent more than two decades building, I recognize that my career has been shaped by years of hard work, personal sacrifices, difficult cases, and countless professional experiences, but I would be remiss if I failed to acknowledge the meaningful role Dennis played in that journey. His mentorship was never a fleeting professional courtesy; it was a continuing investment in my growth, and the lessons he shared with me have influenced how I approach my work, how I represent my clients, and how I continue to develop my practice.

Although Dennis's influence upon my professional life has been substantial, it is our personal relationship that makes this letter especially emotional and difficult to write. Over the course of twenty years, Dennis has become far more than a colleague or professional mentor; he has become one of my closest friends and someone I consider an extension of my own family. He has attended family gatherings, participated in important celebrations, met members of my extended family, and shared experiences that have become part of the fabric of my life. He has

been welcomed into my family not because of his profession, his accomplishments, or any public position he may have held, but because of the person we have come to know and care about. Our friendship has endured through different stages of our lives, through professional successes and disappointments, through personal milestones, and through circumstances that tested our strength in ways neither of us could have anticipated. Twenty years is a significant period of time to know someone, and it is long enough to see a person beyond the image presented in a courtroom, a professional setting, or the public eye. It is long enough to witness their strengths, their imperfections, their struggles, and their humanity, and it is certainly long enough to understand whether a friendship is built upon convenience or upon something genuine and enduring.

My friendship with Dennis has never been dependent upon what he could do for me professionally, nor has it depended upon the circumstances of his life being easy or favorable. It has been built upon mutual respect, loyalty, affection, and the understanding that when life becomes difficult, true friends do not simply disappear. Dennis has been there for me during some of the most painful and vulnerable moments of my life, including the loss of my father, an experience that forever changed me and left an emptiness that words cannot adequately describe. Losing a parent is not simply the loss of someone you love, but the loss of a presence that has shaped your identity, your sense of security, and your understanding of family, and during that profoundly difficult period, Dennis was there for me. His support meant more than I can adequately convey because it came from a place of genuine care and friendship, at a time when professional accomplishments, titles, and everyday responsibilities seemed insignificant compared to the grief I was experiencing. Similarly, when my mother was ill, Dennis remained a source of support during another period of fear, uncertainty, and emotional strain. Anyone who has watched a parent struggle with illness understands the helplessness that can accompany those experiences, and it is during such moments that the people who stand beside us become especially meaningful. Dennis did not have to be part of those deeply personal chapters of my life, and he could easily have remained a colleague or professional acquaintance who offered occasional words of sympathy, but instead he became someone whose presence mattered to me and my family in ways that I will never forget.

I have often believed that the true measure of friendship is not found in the celebrations we attend together, the professional successes we share, or the enjoyable moments that naturally accompany a longstanding relationship, but rather in the people who remain when life becomes painful, uncertain, and difficult. Dennis has remained a constant presence in my life through those experiences, and just as he has supported me during some of my darkest moments, I have tried to be present for him during his own. That is what twenty years of genuine friendship means to me, and it is why I cannot separate my understanding of Dennis's character from the countless personal experiences that have shaped our relationship. He has been someone I could depend upon when I needed encouragement, someone who understood my professional struggles, someone who knew my family and cared about the circumstances affecting us, and someone whose friendship extended far beyond the ordinary boundaries of a professional relationship.

Your Honor, I recognize that Dennis has been known to many people in different capacities, including as an attorney, a former elected official, a professional colleague, and a public figure, but the Dennis I know extends far beyond any title or position. I know him as a friend, a mentor,

and a man whose personal relationships have been an important part of his life. Dennis has always possessed a remarkable ability to connect with people, and he is charismatic, engaging, personable, and capable of making those around him feel welcomed and included. His personality naturally draws people toward him, but what has meant the most to me is not his charisma alone; it is the personal connection we have developed and the loyalty he has demonstrated throughout our friendship. I have known Dennis during periods of success and happiness, and I have known him during periods of extraordinary personal difficulty, and through those experiences, I have come to appreciate the many dimensions of the person he is. He is not simply an attorney or a former public official, but also a father, a brother, a son, a mentor, and a friend whose life is connected to the lives of many others. These relationships are not incidental details, but meaningful parts of the human being whose future is now before this Court.

I do not suggest that being loved by one's family or friends excuses criminal conduct, nor do I suggest that professional accomplishments or personal generosity should erase the consequences of a conviction. However, I believe that these relationships and experiences are important when a court is called upon to consider the history and characteristics of an individual. In my experience, Dennis has demonstrated the capacity to encourage others, share his knowledge, develop meaningful relationships, and remain loyal to people through difficult circumstances, and those are qualities I have experienced personally over many years. I respectfully ask Your Honor to consider those aspects of his life alongside the serious matters that have brought him before the Court.

Perhaps one of the most important things I can share with Your Honor is that my relationship with Dennis has not existed only during the easier or more successful periods of his life. I have remained extremely close to him throughout these criminal proceedings, attended portions of his trial not as his attorney or in any professional capacity, but simply as a friend who wanted him to know that he was not alone, and continued to communicate with him, spend time with him, and maintain the same close relationship that has connected our lives for approximately twenty years. In fact, just last week, I had dinner with Dennis and his brother, and although it was a simple evening together, it carried considerable emotional significance for me in light of everything Dennis is facing. Sitting together reminded me that beyond the court proceedings, legal arguments, public attention, and uncertainty surrounding his future, there remains a human being with family relationships, friendships, and a life that has meaning to those around him.

What has affected me most deeply throughout these proceedings is the manner in which Dennis has carried himself in my presence. I have watched someone I care about face circumstances that would leave many individuals overwhelmed with fear, anxiety, uncertainty, and despair, yet in my personal interactions with Dennis, I have been struck by his composure, his positive outlook, and his resilience. He has demonstrated a remarkable ability to remain calm in the face of circumstances that would understandably be emotionally overwhelming, and I have found myself genuinely admiring the strength he has shown. Having practiced law for more than two decades, I understand the legal process, the uncertainties of litigation, and the potentially devastating consequences that can follow a criminal conviction, but I can say with complete sincerity that if I were standing in Dennis's position, facing the possibility of losing my freedom and being separated from the people I love, I do not know whether I would possess the same strength and

composure. I do not know whether I could remain as positive or as resilient, and watching him navigate this extraordinarily difficult period has given me an even deeper appreciation for the personal strength I have observed in him.

I recognize, of course, that composure is not a substitute for accountability, nor does it establish what a person may be experiencing privately, and I would never presume to speak for Dennis's internal thoughts or feelings. I can only tell Your Honor what I have personally witnessed, which is that even during one of the most difficult periods of his life, Dennis has continued to demonstrate resilience, warmth, and a connection to the people who care about him. There is something profoundly difficult about watching someone who has been a source of strength in your own life confront circumstances in which he needs the strength and support of others. For years, Dennis was someone I could turn to when I needed guidance, encouragement, or reassurance, and now, as he faces one of the most consequential moments of his life, I hope that my friendship can provide even a small measure of the support he has given me over the years. I attended his trial because I cared about him, I have continued to spend time with him because I care about him, and I am writing this letter because, after twenty years of friendship, I believe it is important that Your Honor hear from someone who knows Dennis as a person rather than only through the circumstances of this case.

Your Honor, I want to be especially clear that I do not take the seriousness of Dennis's conviction lightly. As an attorney, I have devoted my professional life to a legal system that depends upon respect for the rule of law, accountability, and the integrity of judicial proceedings, and I understand that the Court must consider the nature and circumstances of the offenses, the need for just punishment, deterrence, respect for the law, and the other purposes of sentencing. I also understand that Dennis's professional background and former position in public office make the issues before this Court particularly serious, and I do not ask Your Honor to disregard those considerations. I recognize that friendship does not entitle anyone to preferential treatment and that the consequences of criminal conduct cannot simply be set aside because an individual has people who love and support him. Nevertheless, I believe that our system of justice recognizes the importance of individualized sentencing for a reason, and that a person's history, characteristics, relationships, and capacity to contribute meaningfully to others are important parts of understanding the individual before the Court.

I have spent much of my career advocating for individuals whose lives cannot be adequately described by the allegations, charges, or legal circumstances they face, and that experience has reinforced my belief that accountability and compassion are not mutually exclusive. A sentence can recognize the seriousness of an offense while also acknowledging the humanity of the person being sentenced, and I respectfully ask Your Honor to consider Dennis through that broader lens. I understand that the Court must make its determination based upon the applicable law, the circumstances of the offenses, and the purposes of sentencing, but I sincerely hope that the Court will also consider the longstanding relationships Dennis has developed, the positive influence he has had upon others, and his capacity to continue making meaningful contributions to his family and community.

It is extraordinarily painful for me to contemplate the possibility that Dennis may be incarcerated, and while I understand that my personal sadness cannot determine the appropriate

sentence, I would be less than truthful if I did not acknowledge how deeply that possibility affects me. I think about the conversations we have shared over the years, the guidance he has provided, the family gatherings he has attended, and the difficult moments through which we have supported one another, and I find it difficult to imagine someone who has been such a consistent presence in my life facing the loss of his freedom. I also think about the people closest to him, including his family, whose lives would undoubtedly be affected by a period of incarceration, and I hope that those human consequences will be considered as part of the Court's individualized sentencing determination. I fully appreciate that the Court must balance these considerations against the seriousness of the offenses and the broader purposes of sentencing, but I respectfully ask Your Honor to consider whether those purposes can be fulfilled through a sentence that allows Dennis to remain connected to his family and community, subject to meaningful accountability and whatever conditions the Court deems appropriate.

My request is not that Dennis be spared accountability, but rather that the Court consider whether accountability can be achieved without a substantial period of incarceration. I believe that Dennis continues to have the ability to make a positive difference in the lives of others, and I know this because he has made a positive difference in mine. His guidance helped shape my career, his friendship helped sustain me through personal loss, his encouragement helped me develop confidence in myself, and his presence became part of my family life. Those contributions cannot undo the conduct underlying his conviction, but they are meaningful parts of his history and character, and I hope the Court will consider them when determining an appropriate sentence.

After twenty-two years of practicing law, I have learned that there are moments when the legal profession requires us to set aside our personal feelings and focus entirely upon the law, but there are also moments when our humanity requires us to speak sincerely about the people who have profoundly influenced our lives. This is one of those moments for me. I am not writing this letter because Dennis is a former state senator, because he is an attorney, or because of any professional benefit I might receive, nor am I writing because I believe that his accomplishments should place him above the law. I am writing because, for twenty years, Dennis Bradley has been someone I have trusted, respected, relied upon, and considered family. I am writing because he was there for me when my father died, because he supported me when my mother was ill, because he helped me build my career and become a more confident attorney, and because he has been part of my family's celebrations and stood beside me through life's hardships. I am also writing because I have continued to stand beside him during these proceedings and have personally witnessed a resilience that has moved me deeply.

There are people who enter our lives for a season, and there are people whose influence becomes woven into the very fabric of who we are, and Dennis belongs unmistakably in the latter category. I cannot imagine telling the story of my professional career without acknowledging his mentorship, I cannot reflect upon some of the most difficult moments of my personal life without remembering his friendship, and I cannot contemplate the possibility of his incarceration without feeling profound sadness for someone who has meant so much to me and to those who love him. I understand that this Court must make a decision based upon the law, the facts, and the purposes of sentencing, and I respect that responsibility, but I respectfully ask Your Honor, when considering the appropriate sentence, to remember that the man standing before the Court is

more than the conduct for which he has been convicted. He is a father, a son, a brother, a mentor, a colleague, and a friend who has helped shape the careers of others, developed meaningful relationships, and remained a significant presence in the lives of people who care deeply about him.

If the Court determines that a sentence involving probation, home confinement, or another appropriate noncustodial alternative would satisfy the purposes of sentencing, I respectfully ask Your Honor to give that possibility serious consideration. I make this request not to minimize the gravity of the conviction, but because I believe that Dennis's history, relationships, and capacity for positive contribution deserve meaningful consideration alongside the other factors before the Court. I sincerely hope that whatever sentence is imposed will recognize both the seriousness of the offenses and the possibility for Dennis to continue contributing positively to the lives of those around him.

Your Honor, I have spent considerable time reflecting upon what I wanted this letter to convey, and ultimately, it is something very simple: for twenty years, Dennis Bradley has been an important and meaningful part of my life. He has helped me become the attorney I am today, shared in my family's happiness, stood beside me during personal tragedy, and remained a trusted friend through the many challenges life has presented. I have known him during moments of success and moments of uncertainty, as a mentor, colleague, friend, and member of my extended family, and I have continued to know and care about him throughout the difficult proceedings that have brought him before this Court. My friendship with Dennis is not conditional upon the outcome of this sentencing, and whatever happens, I will continue to care about him and his family, but I would be less than truthful if I did not acknowledge how deeply the prospect of his incarceration affects me.

I respectfully ask Your Honor to consider the full measure of the man I have known for two decades, to recognize the meaningful relationships he has built, and to exercise whatever leniency the Court determines is appropriate under the law. I hope that the Court will consider a sentence that recognizes the seriousness of the offenses while also allowing Dennis the opportunity to continue being present for his family, to contribute positively to others, and to move forward with his life in a responsible and meaningful way.

Thank you, Your Honor, for taking the time to read this letter and for considering my personal perspective during this profoundly important moment in Dennis's life.

Respectfully submitted,

**Attorney Rashmi N. Patel**
Law Office of Rashmi N. Patel
Stamford, Connecticut
203-977-2406
rashmi@rpatellaw.com

[redacted]
Chestnut Hill, MA 02467

November 2, 2026
*Submitted to Defense Counsel for Consideration at Sentencing*

The Honorable Victor A. Bolden
United States District Judge
United States District Court for the District of Connecticut
141 Church Street
New Haven, CT 06510

Re: ***United States v. Dennis A. Bradley, Jr., No. 3:21-cr-87 (VAB)***
**Letter in Support of Leniency at Sentencing**

Dear Judge Bolden:

I understand that Dennis A. Bradley, Jr., a friend and former law student of mine, is scheduled to appear before you for sentencing on December 3, 2026. I write respectfully to ask the Court to extend mercy and compassion to him at this difficult moment.

I have known Dennis for nearly twenty years, since he was a student at Southern New England School of Law, the predecessor institution of UMass School of Law, where I taught from 1990 until my retirement and where I now serve as Professor Emeritus. I came to know him well during law school, where he was esteemed by his teachers and classmates alike. Knowing Dennis and his family has enriched my life, and we have remained in touch over the years.

I am not in a position to comment on the charges or the jury's verdict, and I do not seek to minimize the seriousness of the matter before the Court. I can speak only to the man I have known. When Dennis graduated in 2009, he received the St. Thomas More Award, recognizing a student who has been a voice for ethics in the classroom and the courtroom. In the years since, he has advocated for criminal justice reform and represented many clients pro bono. In all his dealings with me, he has been honest and upright.

Dennis is a man of faith and a devoted father to his two young daughters, ages six and one. I understand that he has acknowledged his wrongdoing, including by publicly apologizing to the people of Bridgeport. He has already suffered serious consequences: he is no longer a state senator, his law license is suspended, and his professional reputation has suffered profoundly.

I continue to think highly of Dennis, and I believe he has much good yet to contribute to his family and community. I respectfully ask the Court to take these considerations into account in determining a just and proportionate sentence, one that affords him a meaningful opportunity to rebuild his life and remain present for his young children, to the extent the Court deems appropriate.

Thank you for considering my perspective. I would be pleased to provide any additional information that might be helpful to the Court.

Respectfully yours,

Dwight G. Duncan

Dwight G. Duncan
Professor Emeritus
UMass School of Law
Cell: 617-270-7057
Email: dwightgerardduncan102@gmail.com

November 03, 2026

**The Honorable Victor A. Bolden**

United States District Judge
United States District Court
District of Connecticut

Re: Letter of Support for my Son, Dennis Anthony Bradley Jr.

Dear Judge Bolden:

I respectfully write to you, Judge Bolden, for the second time as the father of Dennis A. Bradley Jr, who is currently awaiting sentencing before your court. I understand the seriousness of the circumstances surrounding my son's case, and at the same time there are many things that I don't quite understand in relation to most of the charges as presented to the jury. I am not writing to excuse my son from any wrongdoing or to minimize the seriousness of the offense. Rather, I am writing as a father who loves his son and sincerely hopes that the Court will consider his character, his family circumstances, his father's role, as he is the father of two young girls ages 5 years old and 1 year old.

My son is an important part of our family. As his father, I have always wanted to see him become a successful, responsible, productive and respectful individual. Although this situation has brought tremendous emotional and financial pain to our family. My entire family and I remain committed to supporting him and helping him all the way to the end.

I believe that my son has learned a lot from this terrible experience and he has the ability to make meaningful changes in his life. I am committed and prepared to continue providing him with guidance, encouragement, and accountability. Making sure that he continues to pursue opportunities that will help him become a better person.

I sincerely hope and pray that the court will consider a sentence that allows my son the opportunity to demonstrate rehabilitation, responsibility, and personal growth. One of my favorite verses in the Bible is **Romans 8:28** which states, **"And we know that all things work together for good to them that love God, to them who are the called according to his purpose."** I know as a man who preaches the Word of God that my son Dennis Jr. has a special calling to serve The Lord, and without any doubts, this experience has brought him closer to Jesus and ultimately carry out his calling.

Lastly, Your Honor, I want to let you know that Dennis Jr. is the son that every father dreams of having. He is very loving, funny, nurtured, respectable, a young man with no malice entirely given out to his community, donating thousands and thousands of dollars to the Bridgeport most needed families. I submit this letter with humility, respect and sincere confidence that you will make the decision with love and justice.

Thank you, Your Honor, for taking the time to consider my perspective as a father.

Respectfully submitted,

Dr. Rev. Dennis A. Bradley Sr.

# ***The City Of Life Worship Center***

629 Noble Avenue Bridgeport Ct 06608
203-808-0818
lifesculture@gmail.com

October 27th 2026

Attorney Dennis Bradley
853 Fairfield Ave,
Bridgeport, CT 06604

Dear Board Of Sentencing

My name is William J. Marshall, and I serve as a local spiritual leader here in the city of Bridgeport. I also served with Attorney Bradley On The Board Of Fire Comissioner's. I'm respectfully writing this letter in support of Attorney Dennis Bradley as he faces sentencing. Having known him for nearly 20 years through the communities that he served people that helped through his practice (pro bono) and the countless constituents that he advocated for. I asked the court to consider the contributions he's made to our community, his capacity for continued service, and the possibility of extending mercy.

Attorney Bradley has contributed positively to his community along with the people he has served in our city and state. My respect for him is grounded in his consistency and unwavering care for the people he served and still serve. I recognize the seriousness of this proceeding and respect the courts responsibility to uphold the law. My appeal does not diminish that responsibility or any harm connected with this matter. I asked that his record of service be considered alongside the circumstances before the Court, with room for accountability, rehab rehabilitation, and the opportunity to contribute again.

With humility, I appeal for the greatest leniency, the law permits, and if legally available inappropriate, an outcome without incarceration. I hope the court will consider an alternative that allows him to meet his obligations, address the consequences of this matter and continue making constructive contribution to society.

I also wish to express my hope that he may retain the opportunity to practice law, subject to any appropriate safeguards and requirements. To the Court extent, professional discipline is before the appropriate authority, I respectfully asked that an alternative to disbarment be considered, consistent with protecting the public and maintaining the integrity of the profession.

As a spiritual leader in the community that I've served for nearly 30 years I believe that accountability and compassion can exist together. People must face the consequences of their actions, yet they can also grow, make amends and serve with renewed purpose. My hope is that Atty Dennis Bradley will have that opportunity.

Thank you for considering my perspective and for the care with which you weigh this matter. I respectfully ask that your decision give meaningful consideration to mercy, his history of service and his potential for future good.

Respectfully,

William J. Marshall

William J. Marshall

Senior pastor and founder of

The City Of Life Worship Center

1 Church In 2 Locations

627-29 Noble Avenue

Bridgeport Ct & 313 Meriden Rd

Waterbury Ct

October 7, 2026

The Honorable Victor A. Bolden

United States District Judge

United States District Court

District of Connecticut

141 Church Street

New Haven, Connecticut 06510

Re: United States v. Dennis A. Bradley, Jr.

Case No. 3:21-cr-00087 (VAB)

Letter in support of sentencing

Dear Judge Bolden:

I am an attorney admitted to the Connecticut bar and have practiced in general practice for twenty-three years. I have known Dennis Bradley professionally for thirteen years, and I write from direct observation of his work with clients.

Mr. Bradley's practice has been marked by a genuine concern for his clients. I have seen him take time with clients who were anxious, unfamiliar with the court system, and often without resources. I have seen him in court explaining the legal process to his clients with professionalism and fairness, always having the best interests of his clients in mind.

As a lawyer, he has been exceptional in the work I have seen him perform in court and various settlement mediations. He has always been diligent in meeting deadlines, and he has always been respectful with opposing counsel and court staff. He has been a very helpful colleague, and while working together, often on opposite sides of matters, he has always been polite, kind, and non-adversarial. Even in matters that could not be resolved amicably, Mr. Bradly has always been a cordial and kind person.

I do not write to minimize the seriousness of this case or the Court's responsibility for sentencing Mr. Bradly. I ask the Court to consider his history of service to the people, very often people of limited financial means. I respectfully ask the Court to consider that history in determining a just sentence.

Respectfully submitted,

Heidi Avila, Esq.

Maria H. Pereira

[redacted]

Bridgeport, CT 06610

11/8/2026

Honorable Judge Victor A. Bolden

141 Church Street

New Haven, CT 06510

11/8/2026

Dear Honorable Judge Bolden,

I am the complainant that drafted and filed the State Elections Enforcement Commission (SEEC) complaint against Dennis Bradley which ultimately resulted in his conviction.

If I had any idea that Dennis Bradley would have been criminally prosecuted on felony charges by the federal authorities, I would never have filed the complaint. I genuinely believed a civil penalty and a form of restitution would have been ordered if my complaint had any merit, however I never imagined a federal prosecution and conviction, potentially resulting in incarceration.

Although I recruited him to run on my Board of Education slate in 2015, once elected, he became firmly entrenched with the worst of the worst to include Mayor Ganim & Democratic Town Committee Chairman Mario Testa, ultimately betraying those of us who were instrumental in his election to the school board, which ultimately lead directly to a plethora of poor decisions. You are the company you keep.

Dennis Bradley & I served on the school board together where our relationship was contentious and combative as we were political adversaries.  He can absolutely be narcissistic, impulsive & flawed, and I would never support him for any elected office again, however I am totally opposed to his being sentenced to serve any amount of incarceration. He also has a totally different side to him where he has frequently demonstrated incredible compassion and generosity in the Bridgeport community by assisting the most vulnerable

amongst us. He has taken when he should have not, but he has also given generously to those in need when he was not required to.

Dennis Bradley did not make "mistakes," he made "poor decisions" and I recognize there is an absolute difference, however I have always believed the point of making "poor decisions" is that hopefully we learn from them and evolve into more thoughtful, reflective human beings who contribute to our community and society positively. Please provide him with such an opportunity not only for himself, but for his two lovely young daughters as they need their doting father.

In closing, I wrote this letter of my own free will and am asking this court to demonstrate leniency in its deliberations, judgement and sentencing of Dennis Bradley.

Respectfully Yours,

Maria Pereira

Order of Interim Suspension
Office of Chief Disciplinary Counsel v. Bradley, No. UWY-CV-26-6096127-S
(Conn. Super. Ct. July 10, 2026)

| | | |
|---|---|---|
| DOCKET NO. UWY-CV-26-6096127S | : | SUPERIOR COURT |
| OFFICE OF CHIEF DISCIPLINARY COUNSEL | : | J.D. OF WATERBURY |
| VS. | : | AT WATERBURY |
| DENNIS A. BRADLEY | : | |

# ORDER

The Court hereby finds that the Respondent, Dennis A. Bradley, was found guilty by a jury on March 27, 2026 of one count of conspiracy to commit wire fraud and five counts of wire fraud and that such crimes are serious crimes pursuant to § 2-40 (a) of the Connecticut Practice Book.

Accordingly, it is hereby ORDERED, pursuant to the agreement of the parties, that:

1. Pursuant to § 2-40 (g) of the Connecticut Practice Book, the Respondent, Dennis A. Bradley, Juris No. 431717, is placed on interim suspension effective as of July 17, 2026, until further order of the court.

2. The Office of Chief Disciplinary Counsel ("OCDC") shall immediately notify the Chief Clerks of all Judicial Districts, Probate Court Administration, Workers' Compensation Commission and Assigned Counsel of Office of Chief Public Defender of the Respondent's suspension.

3. The Respondent shall not deposit, disburse, withdraw, or transfer any funds from any clients' funds, IOLTA, or fiduciary accounts.

4. The Respondent shall comply with Practice Book § 2-47B (Restrictions on the Activities of Deactivated Attorneys).

5. The Respondent's failure to comply with this order shall be considered misconduct and may subject the Respondent to additional discipline.

THE COURT

DATE: 7/10/2026

BY ____________________
Welch, J.